# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

TYSON MANKER, on behalf of himself and
all others similarly situated, and NATIONAL
VETERANS COUNCIL FOR LEGAL
REDRESS, on behalf of itself, its members,
and all others similarly situated,

                  Plaintiffs,

v.

RICHARD V. SPENCER, Secretary of the
Navy,

                  Defendant.

Civil Action No.
3:18-cv-372 (CSH)

**NOVEMBER 15. 2018**

## RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**HAIGHT, Senior District Judge:**

Plaintiffs bring this class action on behalf of Navy and Marine Corps veterans who were allegedly denied discharge upgrades by the Naval Discharge Review Board in a manner violative of the Administrative Procedure Act and the Fifth Amendment. Plaintiffs move this Court to certify "a proposed class consisting of all Navy, Navy Reserve, Marine Corps, and Marine Corps Reserve veterans of the Iraq and Afghanistan Era who: (a) were discharged with less than honorable discharges[;] (b) have not received discharge upgrades to Honorable; [and] (c) have diagnoses of PTSD, TBI, or PTSD-related conditions, or records documenting one or more symptoms of PTSD, TBI, or PTSD-related conditions at the time of discharge, attributable to their military service." Doc. 12 at 1. This Ruling resolves the motion.

# I. STANDARD OF REVIEW

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). The Court may "accept the complaint allegations as true in a class certification motion." *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).

"[A] district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). However, "[r]ule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted). "In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008).

A court must then determine whether one of three conditions listed under Rule 23(b) is met. Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(2), [Doc. 12-1 ("Pls. Mem.") at 15], which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360–61.

## II. FACTUAL BACKGROUND

The following is derived from Plaintiffs' complaint, [Doc. 1 ("Compl.")], allegations of which are taken as true for the purposes of this Ruling.

Upon discharge, military personnel receive a certification characterizing their service, e.g., "Honorable" or "Dishonorable," which affects their eligibility for veterans' benefits and services. Compl. ¶¶ 6–7. Veterans may apply to a review board, such as the Naval Discharge Review Board ("NDRB"), to upgrade their discharge characterization. *Id.* ¶ 9. In 2014, then-Secretary of Defense Chuck Hagel instructed the NDRB and other boards to give "special" or "liberal" consideration to applications from veterans diagnosed with post-traumatic stress disorder ("PTSD") and to consider PTSD and PTSD-related conditions as "potential mitigating factors in the misconduct that caused" a lesser characterization than "Honorable." *Id.* ¶¶ 11–12; *see also* Doc. 1-1 ("Hagel Memo"). Congress codified the "liberal consideration" policy in 2016. *See* 10 U.S.C. § 1553(d)(3)(A)(ii) (2016); Compl. ¶ 13.

Notwithstanding the policy change, the NDRB granted discharge upgrades in only 15 percent of cases in which PTSD was alleged to have been a factor in characterization. *Id.* ¶ 180. This is in stark contrast to rates, 45 percent and 37 percent, respectively, by the Army Discharge Review Board and Air Force Discharge Review Board. *Id.* ¶ 180. Plaintiffs allege that the NDRB inconsistently applies the policy as first set forth by the Hagel Memo, often without sufficient explanations to back up its decisions denying an upgrade. *Id.* ¶¶ 183–86. Moreover, the NDRB fails to timely publish or publish at all these decisions despite legal obligations to make this information public. *Id.* ¶ 188. The lack of clear precedent, in terms of both quality and quantity, causes confusion about the NDRB's standards for upgrading characterizations. *Id.* ¶ 189.

In the case at bar, it is not clear whether the NDRB denied Named Plaintiff Tyson Manker's application to upgrade his discharge characterization from the Marine Corps notwithstanding his PTSD diagnosis, which under the Hagel Memo should have worked in his favor. *Id.* ¶¶ 26, 58, 60–61, 84–94. In addition to failing to provide adequate explanations, the NDRB's decision also made multiple factual errors and misapplied decision-making rules. *Id.* ¶¶ 84–94.

The other Named Plaintiff, the National Veterans Council for Legal Redress ("NVCLR"), is a non-profit that assists veterans with less-than-Honorable discharges, such as John Doe, and educates the public about veterans issues. *Id.* ¶¶ 96–101. Like Manker, Doe also developed PTSD from his time at war but was denied an upgrade discharge by the NDRB. *Id.* ¶¶ 118, 127, 140, 146. The NDRB most recently denied Doe an upgrade in a 2017 decision that acknowledged his PTSD status, but nonetheless stated that it did not excuse or mitigate the misconduct that led to his characterization. *Id.* ¶ 147.

Plaintiffs file this action against Defendant Richard V. Spencer, in his official capacity as United States Secretary of the Navy, to challenge the NDRB's characterization upgrade decision-making procedures, which are allegedly in violation of the Administrative Procedure Act and the Fifth Amendment's due process protections. *Id.* at 3–4.

### III. DISCUSSION

Pending before the Court is Plaintiffs' Motion for Class Certification. Doc. 12. They seek certification of a proposed class of "all Navy, Navy Reserve, Marine Corps, and Marine Corps Reserve veterans who served" between October 7, 2001, and the present, and who:

> (a) were discharged from the Navy, Navy Reserve, Marine Corps, or Marine Corps Reserve with less-than-Honorable statuses, including General and Other-than-Honorable discharges but excluding Bad

Conduct or Dishonorable discharges;

(b) have not received upgrades of their discharge statuses to Honorable; and

(c) have diagnoses of PTSD, [traumatic brain injury ("TBI")], or other related mental health conditions, or records documenting one or more symptoms of PTSD, TBI or other related mental health conditions at the time of discharge, attributable to their military service under the Hagel Memo standards of liberal or special consideration.

Pls. Mem. at 16.

## A.     Standing and Exhaustion

Defendant asserts that the Court cannot even consider class certification because it lacks jurisdiction to grant injunctive relief sought by Plaintiffs. Doc. 19 ("Def. Mem.") at 9. Specifically, Defendant asserts that this Court lacks jurisdiction because Plaintiffs cannot establish Article III standing—they purportedly cannot show an injury in fact nor can this Court provide the relief sought. *Id.* at 9–10; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (outlining elements of standing: injury in fact, causation, and redressability). Defendant also argues that the Court should not consider this case because Plaintiffs have not exhausted administrative remedies. Def. Mem. at 14–15.

"A motion for class certification is not an occasion for examination of the merits of the case." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999), *overruled by In re IPO*, 471 F.3d 24, 42 (2d Cir. 2006) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). Since *Claridad* and *Eisen*, this rule has evolved to recognize that class certification analysis may sometimes require a Court to resolve a merits dispute. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (noting "rigorous analysis" of Rule 23 requirements will often entail "some overlap

with the merits of the plaintiff's underlying claim").  "If any factual disputes arose as to any of the requirement elements of Rule 23, such questions could be resolved at this early stage of the proceedings."  *Butto v. Collecto Inc.*, 290 F.R.D. 372, 379–80 (E.D.N.Y. 2013) (clarifying what remains of the *Caridad* decision, including legal proposition that it is improper for a court to assess merits unrelated to a Rule 23 requirement).  However, the Court is limited when answering merits dispute within the context of determining class certification.  *See Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

This Court understands its responsibility at this stage to resolve factual disputes if they concern one of the requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure.  However, to the extent a merits issue does not involve a Rule 23 requirement, resolution of the issue at this time is neither necessary nor appropriate.  The Court also cautions that any factual determinations made in this ruling are not "binding on the trier of fact in its determination of the merits."  *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

Defendant seems to frame standing as a jurisdictional issue that ought to be resolved immediately by raising merits disputes within his argument regarding lack of standing, e.g., when contending there is no injury in fact.  However, he cites no precedent that the Court *must* decide on standing before class certification when these issues are not interdependent.  *See* Def. Mem. at 13–14 (citing cases standing for proposition that sometimes a court may need to resolve mixed questions of merits and class certification at the certification stage).  Indeed, this Court granted parties' joint

request to allow Defendant to file his answer to Plaintiffs' complaint, in which he would presumably first raise defenses like jurisdictional ones, until *after* the class certification issue was resolved. *See* Doc. 10 at 1 ("Parties wish to resolve issues regarding class certification prior to briefing the Defendant's Answer, Motion to Dismiss, or other responsive pleading."); Doc. 11. Defendant will have the opportunity to raise such defenses and other issues outside of this present motion. The Court thus declines to address issues that are wholly unrelated to class certification at the moment. Accordingly, the Court will address factual disputes raised by Defendant's standing and exhaustion arguments only when and if they arise in the Court's Rule 23 analysis, detailed *infra*.

**B.    Rule 23(a) Requirements**

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the conditions, *all* of which must be met, to certify a class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court will examine each of these requirements in detail, and then, if satisfied, proceed with a Rule 23(b) analysis.

**1.    Numerosity**

The first factor for class certification is numerosity, which refers to the prerequisite that the proposed class of plaintiffs must be so large that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). See also *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d. Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience

of joining all members of the class make use of the class action inappropriate."). "Numerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Defendant does not appear to contest that Plaintiffs' proposed class satisfies the numerosity requirement. Def. Mem. at 18. However, it is the Plaintiffs' affirmative burden to demonstrate all class action factors, and so the Court will examine Plaintiffs' arguments. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs submit that the NDRB has denied more than 85 percent of applications from hundreds of veterans with PTSD since issuance of the Hagel Memo. Pls. Mem. at 17. These applications were improperly subjected to the "presumption of regularity in governmental affairs," which unfairly disadvantaged them *Id.* at 17–18. Plaintiffs also cite additional statistics concerning the number of Navy and Marine Corps veterans with less-than-Honorable discharges and those with PTSD, TBI, or related diagnoses. *Id.* at 18.

The Second Circuit presumption for numerosity has been met. Even if the NDRB denied 85 percent of only a hundred PTSD-affected Navy and Marine Corps veterans' applications, there would be at least eighty-five applicants who may have a claim. *See Pennsylvania Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120 (holding forty members meets the presumption for numerosity). Joinder would likely be burdensome and impracticable.

### 2. Commonality

The commonality prong asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw.*

*v. Falcon*, 457 U.S. 147, 157 (1982)).  This requirement goes beyond having "suffered a violation of the same provision of law."  *Dukes*, 564 U.S. at 350.  Rather, the claims of the class "must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  What matters is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.*

As Plaintiffs point out, "for the purposes of Rule 23(a)(2), [e]ven a single [common] question will do."  Pls. Mem. at 19 (quoting *Dukes*, 564 U.S. at 359 (internal quotation marks omitted)).  Nonetheless, Plaintiffs offer five potential common questions. Pls. Mem. at 19–21.  These questions concern, in brief, whether Defendant acted arbitrarily and capriciously without supporting evidence, frustrated class members' ability to prepare successful applications, failed to maintain important records, improperly practiced a policy of presuming regularity in government affairs, and demonstrated a systemic institutional bias against class members.  *Id.*  Defendant maintains the answer to all these questions is "no." Def. Mem. at 19–22.  He asserts that "Plaintiffs have provided no evidence establishing commonality or typicality about the claims in this case that would make class certification appropriate."  *Id.* at 21.

Before delving into the commonality analysis, the Court finds it appropriate to first examine Defendant's injury-in-fact argument.  Deciding on whether class members have suffered the "same injury" necessarily asks whether there is an injury in the first place.  Defendant contends that the Hagel Memo did not apply to Named Plaintiffs at the time of their applications, so "no injury in fact to the Plaintiffs or the purported class []is traceable to the actions of the Defendant."  *Id.* at 10–11.  Plaintiffs believe otherwise and point to multiple alleged facts that suggest the Hagel Memo did

apply, or, at least, the NDRB referred to the Hagel Memo during the relevant time period. Doc. 25 ("Pls. Reply") at 3.

On the basis of the limited facts known to the Court so far, Plaintiffs have demonstrated an injury in fact that is a "concrete and particularized harm" to a "legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The proposed class of veterans appears to have suffered an injury—a denied upgrade of their discharge certification—which, in turn, affected their eligibility for benefits like the GI Bill program, and, ironically, PTSD treatment from the Department of Veterans Affairs. Compl. ¶¶ 7–8, 62–63. Moreover, their injury seems traceable to the Department of the Navy's alleged misapplication of the Hagel Memo and related policy. Defendant acknowledges that the "NDRB referenced the Hagel Memo without indicating how or to what extent it was applying the memo's guidance." Def. Mem. at 11. Defendant also acknowledges that the NDRB began applying the liberal consideration standard after Congress codified the standard in December 2016, but Under Secretary Andrew Kurta had to issue "clarifying guidance" in August 2017. *Id.* at 6–7; *see also* Doc. 12-2 ("Kurta Memo"). All of this seems to suggest, at the very least, internal confusion within the NDRB about the Hagel Memo's applicability during and after the consideration of applications from veterans with PTSD, raising the common question of when exactly veterans were legally entitled to a more generous review standard. Defendant appears to point to issuance of the Kurta Memo as the operative date, [Def. Mem. at 7], whereas Plaintiff believes it to be much earlier, [Pls. Reply at 3]. At this point of litigation, the evidence that Plaintiff has presented before discovery, e.g., invocation of the Hagel Memo in NDRB decisions and implementation of *de novo* review for previously denied applications, is enough to suggest the actual operative date could have been before the Kurta Memo, and thus, the proposed class may have

suffered an injury in fact traceable to the Defendant during the relevant time period.

Returning to the heart of parties' commonality arguments, the Court first looks at Defendant's contention that Plaintiffs have failed to satisfy the burden of proof to show commonality, and so their proposed common questions must be answered in the negative. Def. Mem. at 19–22. Defendant is correct when asserting that Plaintiffs "must be prepared to prove that there are in fact [ . . . ] common questions of law or fact." Def. Mem. at 19 (quoting *Dukes*, 564 U.S. at 350). However, Defendant misunderstands the evidentiary burden at this stage. In his analysis of each of Plaintiffs' proposed questions, Defendant is in effect contending that Plaintiffs must be able to provide evidence in support of their answers to the proposed questions at the class certification stage. That is only one way of approaching the commonality question. *Dukes*, 564 U.S. at 352–354 (describing *Falcon*'s two ways of bridging the conceptual gap between an individual's claim and the existence of a class suffering the same injury). Moreover, although applied to Rule 23(b)(2), the Supreme Court has stated that class certification "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). This is because the purpose of class certification is "not to adjudicate the case; rather it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Id.* at 460 (citations and internal quotation marks omitted). *See also In Re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 90 (D. Conn. 2009) ("[T]he pertinent legal inquiry at class certification is not whether the plaintiffs have proven [] the merits . . . but rather whether class-wide impact may be proven by evidence common to all class members." (citing *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 636 (D. Kansas 2008) (internal quotation marks omitted))).

The Court accordingly turns to whether resolving Plaintiffs' proposed common questions will result in common answers that are "central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. That appears to be so. Plaintiffs' questions challenge the NDRB's *procedures* and standards in place when evaluating applications from PTSD-affected veterans, not the NDRB's denials themselves. This approach strikingly echoes the Supreme Court's approval of a way by which courts can approach the commonality issue: "if the employer 'used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a).'" *Dukes*, 564 U.S. at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)). For example, one of Plaintiffs' allegations is that the NDRB presumed regularity in government affairs, which biased the proposed class because of the "widespread systemic irregularities in mental health treatment and administrative separation processes within the Navy and Marine Corps." Pls. Mem. at 20. Finding common answers to Plaintiffs' questions would consequently aid resolution of class members' claims "in one stroke," e.g., by helping to determine whether the NDRB's adjudication process under presumed regularity indeed disadvantaged them even though such veterans were supposed to have been entitled to a more generous standard. *See Dukes*, 564 U.S. at 350. The centralized decision-making process, in which one panel of five members decides on all applications for discharge upgrades, also favors one lawsuit for all class members over multiple lawsuits for multiple members. *See* Pls. Mem. at 25.

Defendant stresses that the discharge process is a highly individualized review, with the outcome dependent upon the applicant's unique circumstances. Def. Mem. at 22. However,

Plaintiffs are not challenging the outcome of any individual case. Rather, they are challenging the general policies that allegedly disadvantage the proposed class members' applications, regardless of their applications' individual merits. The low approval rates of discharge upgrades by the NDRB, in contrast to those of their counterparts in the Army and the Air Force, suggest a systemic difference in overall practice by the NDRB. *See* Compl. at 181. Plaintiffs' proposed questions home in on this systemic difference by asking what exactly was the NDRB's policy and how did it differ from the guidance that the NDRB should have followed. There may well be applications from PTSD-affected veterans who would still be denied an upgrade under a "liberal consideration" standard, but the merits of any individual NDRB characterization review is not at issue in this lawsuit. The *process* is what is at issue.

Defendant also points out that there are varying due process rights that apply to the different ways a service member can separate from the Navy or Marine Corps. Def. Mem. at 23. For example, a Sailor or Marine who "meets requisite service requirements or is recommended for an other than honorable discharge" will go through an administrative separation board or a Board of Inquiry. *Id.* Plaintiffs do not appear to argue this point, and indeed, their grievances are aimed at the NDRB, not any other adjudicatory board. This can be remedied by narrowing the proposed class definition. Accordingly, the Court will revise the proposed class definition, in part, to limit the class to those who "have not received upgrades of their discharge statuses to Honorable" from the NDRB only, to avoid a blanket inclusion of those denied upgrades to Honorable from all Navy records-correction boards.

With this limitation in place, the proposed class of members fulfill the requirements of the commonality prong. They share the "same injury" of being subject to the NDRB's purportedly unfair

review process for characterization upgrade applications. A single lawsuit on their behalf would answer the questions raised by Plaintiffs, and likely other questions, common to all members' individual claims and conclude with a result appropriate for all members.

### 3. Typicality

Typicality is similar to commonality and asks if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

As with commonality, typicality helps determine "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. "Typicality requires that the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016); *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]ypicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."). The "mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons . . . is insufficient to establish his standing to litigate on their behalf of all possible claims of discrimination against a common employer." *Falcon*, 457 U.S. at 159 (discussing a class action brought by a Mexican-American employee against employer for racially discriminatory hiring and promoting practices). A plaintiff must show more for a court to infer that his treatment was typical of the defendant's practices. *Id.* at 158. "When it is alleged that the same unlawful conduct was directed at or affected

both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Plaintiffs present two veterans' experiences as representative of the NDRB's general treatment of certification upgrade applications from those with PTSD, TBI, or PTSD-related conditions. Named Plaintiff Manker had presented evidence to the NDRB of his PTSD diagnosis, but the NDRB's rejection of his application purportedly failed to apply the "liberal consideration" standard. Compl. ¶ 86. Doe, a member of Named Plaintiff NVCLR, also developed PTSD from his military service, but was denied an upgrade from the NDRB for each of his three applications. *Id.* ¶ 146.

The Court has examined the NDRB "Discharge Review of Decisional Document[s]" for Manker and Doe. Docs. 1-3, 1-4, 1-5. It is arguably unclear from the NDRB's explanation of their denials what standard is being used nor when PTSD would mitigate misconduct. For example, the NDRB concluded that although Manker "may feel that PTSD was the underlying cause of his misconduct, the record reflects willful misconduct that demonstrated he was unfit for further service." Doc. 1-3 at 8. Manker, who was discharged for drug use and failing to prevent two junior Marines from using drugs, allegedly turned to illegal substances to soothe his PTSD symptoms. Compl. ¶¶ 54–56. This all occurred before Manker's PTSD diagnosis. *Id.* ¶¶ 60–61. It seems quite plausible to the Court that someone could suffer symptoms or decline to seek treatment for a yet-to-be-diagnosed condition, and indeed, this is something that the Hagel Memo acknowledged, especially for Vietnam veterans who served before PTSD was recognized as a legitimate medical condition, as a reason to implement a "liberal consideration" policy. Doc. 1-1 at 1 ("Quite often, however, the records of Service members who served before PTSD was recognized, including those

who served in the Vietnam theater, do not contain substantive information concerning medical conditions in either Service treatment records or personnel records."). And yet, the NDRB's decision appears to use a stricter standard that seems to disbelieve that Manker could have suffered from PTSD without an official diagnosis and that his PTSD could have influenced his "willful" actions.

The two NDRB explanations for denying Doe's applications, attached as exhibits to the Complaint, also include the same or similar lines about how, despite the applicant's belief, PTSD did not excuse his "willful misconduct." *See* Docs. 1-4 at 4, 1-5 at 6. Along with other similarities between Manker and Doe's experiences, this suggests that the NDRB may have used the same standard to decide on applications for certification upgrades, but it was likely not the "liberal consideration" standard that Plaintiffs allege should have been used instead. This is also the chief contention of this class action suit. Manker and Doe both allegedly suffered the same injury of having been subject to the NDRB's usage of an incorrect standard, which is also the injury that they allege applies to proposed class members. Resolution of their claims would seem to resolve class members' claims because all of the claims arise from the NDRB's general policies and practices. *See Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (explaining the typicality requirement is met when named plaintiffs and the proposed class suffer from the same unlawful conduct). Hence, Plaintiffs' claims are typical of the class. For this reason too, the Court rejects Defendant's argument that review of certification upgrades is too individualized for a class-wide resolution. As explained *supra*, Plaintiffs' claims challenge the general policies allegedly disadvantaging both Named Plaintiffs' and the proposed class members' applications, regardless of their applications' individual merits. The Court is satisfied that the legal arguments Named Plaintiffs would be making are those that other proposed class members would be making as well because they have suffered the same

injury from the NDRB, and thus finds that Plaintiffs have satisfied the requirements of the typicality prong.

### 4.    Fair and Adequate Representation

The fourth and final requirement of Rule 23(a) states that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The rule "'serves to uncover conflicts of interest between named parties and the class they seek to represent,' as well as the 'competency and conflicts of class counsel.'"  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (quoting *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997)).  "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Payment Card*, 827 F.3d at 231 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

> To assure vigorous prosecution, courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive. To avoid antagonistic interests, any fundamental conflict that goes to the very heart of the litigation, must be addressed with a structural assurance of fair and adequate representation for the diverse groups and individuals among the plaintiffs.

*In re Payment Card*, 827 F.3d at 231 (2d Cir. 2016) (citations and internal quotation marks omitted). The Court should also consider whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec.Corp.*, 222 F3.d 52, 60 (2d Cir. 2000) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1991)).

Named Plaintiffs appear to have adequate incentive to pursue claims on behalf of the class,

fulfilling the "vigorous prosecution" requirement. They seek fairer adjudication procedures, under which they believe they would qualify for certification upgrades. A change in procedures would benefit both Named Plaintiffs and proposed class members by at least affording them the belief that their applications will be held up to the correct standards. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 171 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (explaining the "vigorous prosecution" requirement is met when plaintiffs "stand to benefit from any class-wide injunctive relief that may be ordered").

Defendant's arguments with respect to the adequate representation prong are mainly aimed at the second requirement of having no antagonistic fundamental interests. He claims that Plaintiffs, by seeking judicial intervention, delay proposed class members from receiving relief because they would otherwise get relief from immediately re-applying to the NDRB. Def. Mem. at 24. This claim has two fatal weaknesses. First, this assumes that the NDRB has already remedied its review process, a fact that the parties dispute. Pls. Reply at 9–10; Def. Mem. at 24. Second, even if it were true the NDRB process was already fixed, Defendant has not explained how Plaintiffs' and proposed class members' interests are fundamentally antagonistic to one another. Plaintiffs seek relief in the form of having the NDRB adhere to the proper procedures and standards—a fundamental interest of both Plaintiffs and class members. "In this regard, the interests of the class members are identical." *Marisol A v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (discussing how interests of children in the custody of the child welfare system and of those outside the system were identical because plaintiffs sought "broad based relief" requiring improvement of all of the system's services). The Court fails to see how interests would be in conflict here. If the Plaintiffs ultimately prevail, then class members will benefit from a properly reformed NDRB review process. If the Defendant

prevails, then class members will have confidence that their upgrade applications are being reviewed fully and fairly.

As for the qualifications of counsel, the Court is satisfied. Plaintiffs' attorneys, Yale Law School's Veterans Legal Services Clinic and Jenner & Block LLP, have had significant experience litigating class actions, some on behalf of veterans, and litigating individual veterans' claims against military review boards. *See* Docs. 12-2, 12-3. The Court finds that Plaintiffs have adequately fulfilled the fair and adequate representation requirement. Accordingly, Plaintiffs have met the prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.

## C.    Rule 23(b)(2) Requirements

The Court has concluded that the four requirements of Rule 23(a) are satisfied, and so it now turns to the second step as detailed in Rule 23(b). Although Rule 23(b) allows for three different types of class actions, Plaintiffs seek class certification under only one of them: Rule 23(b)(2). Pls. Mem. at 15. Rule 23(b)(2) allows for class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court will thus only apply a Rule 23(b)(2) analysis.

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 360–61 (2011). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory

-19-

remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* at 360 (internal citation omitted).

Plaintiffs seek injunctive relief, asking the Court on behalf of the class to direct "measures sufficient to ensure that Defendant establishes constitutionally and statutorily compliant adjudication procedures," and "measures sufficient to ensure that Defendant meaningfully and consistently applies its own procedural standards in considering the effects of class members' PTSD when determining whether to upgrade their discharge statutes." Compl. at 41. Defendant contends that such injunctive relief is unneeded because the NDRB is already following the proper policy, and, in any case, class-wide relief is inappropriate for the individualized nature of the NDRB review process. Def. Mem. at 25. These issues have been addressed *supra*; the parties dispute whether the NDRB is currently following policy as set forth by the Hagel Memo, and Plaintiffs are challenging the general procedures governing the NDRB's evaluation of upgrade applications, not individual determinations. The Court agrees with Plaintiffs that "[w]hile the outcome of any single NDRB proceeding may depend to some extent on individual facts, Defendant's [alleged] systemic failure to apply its own official standards is a general course of conduct uniting the proposed class." Pls. Mem. at 33. The injunctions sought would provide relief to each member of the class because, although they would not guarantee each member an upgrade to an "Honorable" disposition, they would ensure that their applications are being reviewed under the standard that both Plaintiffs and Defendant say applies to the NDRB. Accordingly, the Court finds that Plaintiffs have met the threshold for a class action under Rule 23(b)(2).

# IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification, [Doc. 12], is GRANTED.

In accordance with Rule 23(c)(1) of the Federal Rules of Civil Procedure, the Court certifies the following class:

Veterans who served during the Iraq and Afghanistan Era—defined as the period between October 7, 2001, and the present—who:

> (a) were discharged from the Navy, Navy Reserves, Marine Corps, or Marine Corps Reserve with less-than-Honorable statuses, including General and Other-than-Honorable discharges but excluding Bad Conduct or Dishonorable discharges;
>
> (b) have not received upgrades of their discharge statuses to Honorable from the NDRB; and
>
> (c) have diagnoses of PTSD, TBI, or other related mental health conditions, or records documenting one or more symptoms of PTSD, TBI, or other related mental health conditions at the time of discharge, attributable to their military service under the Hagel Memo standards of liberal or special consideration.

The representatives of the class will be all Named Plaintiffs, and class counsel will be the Yale Law School's Veterans Legal Services Clinic and Jenner & Block LLP.

This order may be altered or amended before final judgment.  Fed. R. Civ. P. 23(c)(1)(C).

The Court also reminds parties of its [14] previous order, directing Defendant to file a responsive pleading within **30 days** of this decision and parties to exchange initial disclosures and

file a proposed schedule for remaining deadlines within **45 days** of this decision.  A proposed

interim schedule is due within **30 days** if either party appeals this decision.


      It is SO ORDERED.

Dated: New Haven, Connecticut
       November 15, 2018



                                         */s/ Charles S. Haight, Jr.*
   .                                      CHARLES S. HAIGHT, JR.
                                         Senior United States District Judge