```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT

_____
TYSON MANKER, ET AL.,           )
               Plaintiffs,      ) No: 3:18-CV-00372-CSH
                                )
      v.                        ) FEBRUARY 5, 2019
RICHARD V. SPENCER,             )
               Defendant.       ) 10:50 a.m.
_____ )
                        141 Church Street
                        New Haven, Connecticut



                   SCHEDULING CONFERENCE


B E F O R E:

         THE HONORABLE CHARLES S. HAIGHT, JR., U.S.D.J.
```

```
                              Official Court Reporter:
                              Tracy L. Gow, RPR
                              tracy_gow@ctd.uscourts.gov
                              (203) 910-0323
```

```
 1   A P P E A R A N C E S:

 2   For the Plaintiffs:

 3        MICHAEL J. WISHNIE, ESQ.
          JONATHAN PETKUN - Law Student Intern
 4        Jerome N. Frank Legal Services
          Yale Law School
 5        127 Wall Street
          New Haven, CT 06511
 6        203-432-4800
          Email: michael.wishnie@ylsclinics.org
 7
          NICOLE TAYKHMAN, ESQ.
 8        JEREMY H. ERSHOW, ESQ.
          Jenner & Block LLP
 9        919 Third Avenue
          New York, NY 10022
10        212-891-1600
          Email: ntaykhman@jenner.com
11               jershow@jenner.com

12   For the Defendant:

13           DAVID CHRISTOPHER NELSON, AUSA
             U.S. Attorney's Office-NH
14           157 Church St., 25th Floor
             New Haven, CT 06510
15           203-821-3700
             Email: David.C.Nelson@usdoj.gov .
16

17   Also Present:
             *LT. CMDR JONATHAN DOWLING
18

19
     *Present via telephone
20

21

22

23

24

25
```

1          THE COURT:  Well, be seated, please.  Good morning,

2     everyone.  This hearing was scheduled for 10:30, and it's a

3     little beyond 10:30.  And I held off because there may be

4     some people who wish to participate and have not yet appeared

5     by telephone, or whatever arrangements were made.  But a time

6     comes when I think that, really, that the hearing should

7     start, so it is starting.  And if other people who would like

8     to be here, they can make arrangements as we go along.

9     That's fine.  They're welcome at any time.

10          But I do understand that I can begin this hearing,

11    which I think is an important hearing in an important case.

12    All cases, of course, are important, but this one certainly

13    is.

14          And my understanding, and you'll correct me if I'm

15    wrong, is that the Plaintiff Class -- using that phrase to

16    indicate that this Court has certified a class by a prior

17    opinion -- but my understanding is that the Plaintiff Class

18    is presently represented by attorneys who are actually

19    present in court, live and and in color.  And let's call the

20    role just for the sake of the record and for my own

21    edification.  Will counsel appearing for the Plaintiff Class

22    simply identify themselves now?

23          MR. WISHNIE:  Good morning, Your Honor.

24          THE COURT:  Good morning.

25          MR. WISHNIE:  Michael Wishnie, Jerome N. Frank Legal

1    Services Organization, Yale Law School.  With me today is

2    John Petkun, law student intern.

3           MR. PETKUN:  Good morning, Your Honor.  I'd also

4    like to briefly, with permission, introduce the two named

5    Plaintiffs in this case.

6           THE COURT:  Yes.

7           Your Honor, that'd be Mr. Tyson Manker, a former

8    Marine and Iraq War veteran.  And he's also joined by Mr.

9    Gary Monk, who is the executive director of the National

10   Veterans Council for Legal Redress.

11          THE COURT:  Very good.

12          MS. TAYKHMAN:  Good morning, Your Honor.  Nicole

13   Taykhman, Jenner & Block, also for the Plaintiffs.

14          THE COURT:  Good morning.

15          MR. ERSHOW:  And, Your Honor, good morning.  My name

16   is Jeremy Ershow.  I'm also from Jenner & Block and also on

17   behalf of the class.

18          THE COURT:  Very good.  And as for the Defendant,

19   the Secretary, who represents the Defendant?  Yes, you have

20   risen, sir.  I take that as an indication of your

21   representation.  Tell me your name for the record.

22          MR. NELSON:  Yes, Your Honor.  My name is David

23   Nelson with the U.S. Attorney's Office for the Defendant.

24          THE COURT:  Good morning, Mr. Nelson.  Tell me, have

25   you been paid recently?

1              MR. NELSON:  Just last week.

2              THE COURT:  Just last week.

3              THE COURT:  I know you were furloughed; isn't that

4     right?

5              MR. NELSON:  Yes, Your Honor.

6              THE COURT:  And have you gotten the backpay or

7     whatever it was?  Have you been "made whole," as we'd say in

8     law?

9              MR. NELSON:  Yes.

10             THE COURT:  Good.  Well, let's hope that keeps up,

11    although --

12             MR. NELSON:  Knock on wood.

13             THE COURT:  Knock on wood, indeed.  Well, I suppose

14    we can all tune in to the State of the Union address and all

15    these mysteries will be revealed, maybe even resolved -- who

16    knows?  But I'm glad that you were made whole financially so

17    you can be here today.  And let's hope you can stay with us

18    for a while.  I imagine you feel the same way.

19             MR. NELSON:  Yes, I do, Your Honor.

20             THE COURT:  Good.  All right, then.  It was said to

21    me before I came out that one of the participants in the

22    hearing may need some interpreters' assistance.  And I see

23    someone, who I don't usually see, who's waiving her hands in

24    such a way that suggests to me that what I'm saying is being

25    interpreted.  And if that's so, the interpreter is welcome

1    and the beneficiary of her efforts is welcome.

2          And if that benediction on my part is necessary to

3    assure the purity of this record, I have just made it and

4    will proceed accordingly.

5          Now, this is -- it's a conference, really.  I think

6    that's the best way to put it.  It's not a hearing on a

7    motion.  Motions may come in this case, but that is not the

8    order of business today.  Let me just briefly indicate to you

9    what I understand, what I perceive the order of this

10   conference to be, in significant part at least.  And it seems

11   to me useful to do that, because, in my experience, a hearing

12   in court has a better chance of achieving something useful if

13   at the beginning of the hearing it becomes apparent that both

14   counsel and the Court understand what the case is about and

15   what's happening or supposed to happen during the hearing.

16   We try to start from that advantage of mutual comprehension.

17          And it seems to me -- and, again, counsel will speak

18   for themselves in a moment -- but it seems to me that the

19   stage is set in significant measure for this conference by

20   the Rule 26(f) report, which the parties did execute under

21   date of December 21st of 2018.  It's at Document 36 in the

22   file.

23          And what emerges from that report is a significant

24   dispute between the parties about pretrial discovery in the

25   case.  That dispute is cast in rather stark terms.  It is the

1   Plaintiff Class's view that a considerable amount of pretrial

2   discovery is both appropriate and necessary.  The details are

3   given on page 11, paragraph F-1 of the report, and it

4   contains a non-exclusive listing of categories of information

5   as to which the Plaintiff Class says it is entitled to

6   discovery.  And it casts a broad net over all aspects, or

7   certainly a great many aspects of the policies, procedures

8   and practices engaged in by the Defendant, Secretary of the

9   Navy, in this case in the context of discharge upgrade

10  applications.

11          That's what the case is about, with a particular

12  reference to the incidence -- the affliction of members of

13  the Navy and the Marine Corps, who assert that they are or

14  have been adversely affected by PTSD, post-traumatic stress

15  disorder, and TBI, traumatic brain injury.  And the Class,

16  the Plaintiff Class, makes broadly stated criticisms of the

17  manner in which their discharge files and actions have been

18  conducted by the Defendant.  There is prominent mention made

19  of the memorandum issued some years ago now, by the then

20  Secretary of Defense, Mr. Hagel.  I'm old enough to remember

21  Mr. Hagel, although he hasn't been in that office for a while

22  and his successors have issued a number of memoranda of their

23  own, purportedly for the stated purpose of clarifying

24  Mr. Hagel's initial memorandum.

25          But that memorandum and the -- lies at the heart of

1    the case, and the discovery is prayed for as appropriate and

2    necessary by the Plaintiff Class is a considerable amount of

3    information falling within that general subject, you see.

4         The discovery dispute revealed by the report is cast

5    in stark terms, because the Defendant's position, Mr. Nelson

6    tells us, is this is an APA case -- Administrative Procedure

7    case -- and because that is so, under governing law in the

8    Supreme Court and the Second Circuit, there is no need for a

9    26(f) report at all and no discovery.

10        It's a dramatic dispute, because on the one hand

11   it's a great deal of discovery, and on the other no discovery

12   at all.  And the reason that that position is put forward is

13   because, in the Secretary's view, the administrative record

14   constitutes the only appropriate source of facts for the

15   reviewing court -- which is what I am, in one regard at

16   least -- the only thing that should properly be considered by

17   the Court when the Court comes to perform its judicial

18   function, whatever function that may be.

19        We've got to address at this hearing and they

20   there'll be an opportunity for counsel the submit further

21   case law if you wish to, but we have to address this dispute

22   -- a great deal of discovery to significantly expand the

23   factual record, or no discovery at all and the administrative

24   record is the Alpha and Omega, the beginning and the end of

25   that factual background upon which the Court -- sitting as a

1   court of equity, because the only relief sought is an

2   injunction -- will decide the case.

3         And the only thing I've done to prepare myself for

4   this subject in preparation for this hearing is to read some

5   of the cases that counsel have already cited.  There are two

6   cases in the Supreme Court:  *Florida Power*, at 470 United

7   States 729; and *Citizens* at 401 U.S. 402.

8         But then there is the decision of the Second Circuit

9   in *National Audubon*, which is reported at 132 F.3d 27 [sic].

10   And the Second Circuit deals with the Supreme Court cases and

11   then delivers itself -- if I may say so without

12   disrespect -- an opinion which has about it some of the

13   Delphic qualities that sometimes one detects in decisions of

14   the Courts of Appeals.

15         It is said at the beginning of that opinion that if

16   the case is brought under the APA, the administrative record

17   is what is the factual record to be paid attention to.  But

18   then the Second Circuit goes on to say, but there are

19   circumstances where the administrative record was expanded

20   and other things had been considered.

21         And then having said that, the opinion sweeps back

22   and says, but that's rather rare.  And then there's a

23   reflection, a rumination on what makes it rare.

24         And that sort of opinion, intended, of course, by

25   the Court of Appeals to guide and instruct District Courts,

1    has certain Delphic qualities about it, because you read it

2    and you say to yourself, Well, what are they really saying

3    here?  Or what is the point?  What am I really supposed to do

4    with this?

5         So I'm going to need the help of counsel on that

6    particular point.  And this is not a motion.  No one is

7    making a motion where you have ten minutes to make a motion

8    and reply, whatever.  I don't like to hold counsel to strict

9    time limits, even for arguing motions, because I rely on the

10   assistance of counsel, particularly counsel of good quality

11   that appears in this case for both the Plaintiff Class and

12   for the Defendant Secretary represented by our United States

13   Attorney's Office here in Connecticut.

14        So, I encourage and will gratefully receive whatever

15   arguments and contentions that counsel wish to submit on this

16   issue, and there will not be any strict time limits.  You may

17   say whatever you feel you should say to me, even if

18   ordinarily the right of reply would have been exhausted.

19   There is no time limit on these things.  I'd much prefer to

20   have you leave this hearing not knowing, perhaps, whether

21   you're going to win or not, but thinking, at least, that

22   you've said everything that you really wanted to.

23        There is some reasonable limit to that.  If you're

24   still here saying what you really want me to hear at six

25   o'clock this evening, I'll probably bring the hearing to a

1  halt.  But don't be concerned about feeling that you have no

2  further opportunity to say what you really think needs to be

3  said.

4          And sitting here this morning, you may hear your

5  adversary say something that you hadn't anticipated and you

6  say to yourself, But that's outrageous.  You wouldn't say

7  that out loud, but you might think it and you've got to say

8  something about it.  And if you don't have an opportunity to

9  say something about it, you'll go home and be rude to someone

10 who you shouldn't be.

11         So, now I've reached that point of grace where I'm

12 going to stop talking.  Some of you may have thought that was

13 never going to happen.  Well, it just happened.  And I'm

14 going to hear first from the Plaintiff on the point that I've

15 identified and any other point which, to use Robert's Rules

16 of Order, may properly come before the meeting.

17         And the purpose of the meeting is to get where we

18 need to go in this case as promptly but as appropriately as

19 we can.

20         Where are we going in this case?  How are we going

21 to get there?  It's an important case.  The Secretary is

22 charged with not behaving as he should have done, and that's

23 important to him.  And it's important to Mr. Manker and to

24 the members of the Class, who he represents with the other

25 representative Plaintiff, for intensely personal and

1    important reasons.

2           So -- and here you all are in court.  So where are

3    we going in this case next?  How do we get there?  What is

4    the fair way to get there?  What is the appropriate way to

5    get there under governing appellate authority, Delphic or

6    otherwise?  And having set that stage, I withdraw from it,

7    exit left -- the Court entered right -- and let me hear first

8    from counsel for the Plaintiff Class.

9           MR. PETKUN:  Good morning, Your Honor.

10          THE COURT:  Good morning.

11          MR. PETKUN:  I promise we'll have this wrapped up by

12   a quarter to 6, the absolute latest.

13          Your Honor, extra record discovery is appropriate

14   here.  In fact, it is necessary; because without it, the

15   Court simply cannot provide meaningful judicial review.

16   Admitting, Your Honor, that the opinions of the Second

17   Circuit's case of *National Audubon* is somewhat Delphic, I do

18   think that it stands for a certain identifiable principle,

19   which is stated in the line that reads, The reviewing court

20   -- I'm sorry -- that extra record discovery is appropriate in

21   cases where the reviewing Court simply cannot evaluate the

22   challenged action on the basis of the record before it.

23          And, Your Honor, I think this is backed up by the

24   similarly Delphic, I think perhaps more authoritative Supreme

25   Court, in *Camp v. Pitts*, in which they hold that extra record

1   discovery can also be appropriate in APA cases when a failure

2   to explain the administrative action serves to frustrate

3   effective judicial review.

4          THE COURT:  Which case is that?

5          MR. PETKUN:  Your Honor, that is the *Camp v. Pitts*,

6   411 U.S. 138.  And I have a copy of that for Your Honor, if

7   you'd like.

8          THE COURT:  No, that'll do.

9          MR. PETKUN:  Your Honor, the Defendant is correct to

10  say that, generally speaking, in APA cases, under local and

11  federal rules, and under Supreme Court and other case law,

12  discovery -- extra record discovery is -- generally does not

13  occur in these cases.  However, this is not your typical APA

14  case, Your Honor.  What's at issue here is a nationwide class

15  action involving the general policies, practices and

16  procedures of the Navy Discharge Review Board.

17         These general policies, practices and procedures are

18  unlikely to be reflected in any one individual's discharge

19  upgrade decision; and yet, Defendant argues that in this case

20  the administrative record consists of just that, of just two

21  decisions from the NDRB.  We simply do not believe that that

22  is sufficient for the Court to provide meaningful judicial

23  review.

24         Your Honor, I think we can also see this principle

25  at play in recent District Court opinions from this very

14

```
 1   circuit -- for example, in a string of immigration cases
 2   involving undue delay.  These are cases where what is at
 3   issue is not a discrete event -- a discrete agency action
 4   based on an individual administrative record; rather, what is
 5   at issue is an agency's general course of conduct.
 6          Similarly, here I think what we are -- what
 7   Plaintiffs are challenging is the NDRB's general course of
 8   conduct, which would be reflected in a broad array of
 9   materials outside of any individual administrative record,
10   Your Honor.
11          THE COURT:  Have you put in a brief in this case
12   citing the District Court cases you've just referred to?
13          MR. PETKUN:  No, Your Honor, we have not.  I do have
14   one of these cases before me, Milanes v. Chertoff from the
15   Southern District of New York.
16          THE COURT:  If I asked you for a brief, do you think
17   you could give me one?
18          MR. PETKUN:  Your Honor, certainly we could.  We'd
19   be happy to brief this legal question more fully.
20          THE COURT:  Okay.  I'll ask you, if I feel like it,
21   at the end of the hearing.
22          MR. PETKUN:  Excellent, Your Honor.  There's nothing
23   that Yale law students like more than an opportunity to write
24   a brief, Your Honor; so please assign us homework, just not
25   too much.
```

1           Your Honor, I think that to underline my point,

2    though, what we are challenging here is not individual

3    discharge upgrade decisions.  If that were the case, then we

4    would be happy to let judicial review go forward on the basis

5    of just a couple administrative decisions.  However, we are

6    challenging much broader practices.  Some of these practices

7    may not even be committed to writing, and that's why we

8    believe that extra record discovery is appropriate in this

9    case, Your Honor.

10          THE COURT:  What do you envision?  Depositions?

11          MR. PETKUN:  Yes, Your Honor.  We ask simply for the

12   information that would allow the Court to provide meaningful

13   judicial review, particularly for anything that would shed

14   light on the NDRB's general practices with respect to

15   individuals with PTSD, TBI, and other conditions.  I think

16   this could consist of written materials -- for example, any

17   policy memos in possession of Defendant; any training

18   materials or quality control review-type materials that may

19   be in possession of the Government.

20          However, not everything -- not all practices are

21   committed to writing, we suspect.  If that's the case, then

22   we would also ask for depositions and interrogatories from

23   Government officials who may be able to speak to how these

24   practices actually play out on the ground, Your Honor.

25          THE COURT:  Depositions from Government officials.

1    Maybe your thinking hasn't gone this far, but have you any

2    present notion of what individuals you might a little bit

3    later on wish to depose?

4         MR. PETKUN:  Your Honor, our thinking has gone

5    somewhat down that road, and we would be prepared to file

6    initial disclosures.  But that being said, of course, these

7    are early days and we do not know all of the individuals who

8    we would like to depose.  But we believe individuals within

9    the Department of the Navy may have information about how DOD

10   policies are actually implemented on the ground.

11   Furthermore, individuals within the Department of the Navy

12   and the Naval Discharge Review Board may have information

13   about how personnel on the board were trained, how individual

14   decisions were reviewed for quality control -- assurance.

15   And they may also have information on, for example, the scope

16   of the Class, Your Honor.

17         This is a large Class.  We, as Plaintiffs, are not

18   able to identify all members of the Class and exactly the

19   scope of the potential problem.  We believe the Government

20   may have some information that would help us do that, as

21   well, Your Honor.

22         THE COURT:  Okay.

23         MR. PETKUN:  Your Honor, we believe that the

24   information that we have asked for here, which would be

25   written materials, potentially interrogatories and

1    depositions, would help the Court to meaningfully review the

2    lawfulness of the NDRB's actions, written large.  Their

3    actions with respect to the class of individuals of PTSD and

4    other conditions who come before the board, Your Honor.

5              THE COURT:  Okay.

6              MR. PETKUN:  I believe that is all that I have to

7    share with you with respect to this legal question of

8    discovery, Your Honor, but I'm happy to answer any questions

9    that you have.

10             THE COURT:  Not at present.  What other matters

11   should properly come before this meeting?  I'm not looking

12   for things to do.  But we're all here, we might as well

13   attend to other matters if we can usefully address them now,

14   or if this is really all that needs --

15             MR. PETKUN:  Well, Your Honor, I believe that in the

16   26(f) report we've don't only argue that discovery is

17   appropriate here.

18             THE COURT:  Yeah.

19             MR. PETKUN:  We have also set forward our vision of

20   a timeline for discovery and submission of materials.

21             THE COURT:  Yeah.

22             MR. PETKUN:  And my colleague from -- my co-counsel

23   here would be happy to speak to those timeline issues, Your

24   Honor.

25             THE COURT:  Well, I think, you know, the timeline

1    issues really depend, it seems to me, on the scope of

2    permissible discovery; or, indeed, whether there's going to

3    be discovery at all in this administrative record case, as

4    the Defendant perceives it to be.

5            So, yes, I see that there are some efforts made to

6    discuss discovery timelines, and there should be.  That's

7    what a 26(f) is supposed to do -- to be.  But those timeline

8    questions, seems to me, depend entirely on the threshold

9    question of whether there should be discovery at all and what

10   it should consist of.

11           So I don't see it would profit us to get into

12   precise time limits and scheduling for discovery yet.  Let's

13   see what's going to be discovered, if anything, and then we

14   can worry about timelines.

15           Does that strike you as sensible?

16           MR. PETKUN:  Yes, Your Honor, that does strike us as

17   sensible.

18           THE COURT:  And so say you all?  Yes?

19           MS. TAYKHMAN:  Your Honor, I did just want to make

20   one additional point.

21           THE COURT:  Please.

22           MS. TAYKHMAN:  The parties had agreed back in June

23   in our joint stipulation -- it's Document Number 13 -- to

24   exchange initial disclosures, and both parties had said that

25   they did not anticipate fact discovery to take more than nine

```
1   months.  So at least as of June, the Government did seem to
2   anticipate that there would be fact discovery and the
3   exchange of initial disclosures.  So I just wanted to add
4   that, that it does seem like the Government's position has
5   since changed.
6           THE COURT:  Well, that's a needle which Mr. Nelson
7   will either pluck free or address.
8           MS. TAYKHMAN:  Sure.
9           THE COURT:  Okay.  Anything further to submit from
10  the Plaintiff Class on this point?
11          MR. PETKUN:  No, Your Honor.  Thank you.
12          THE COURT:  All right.  Then let me hear from you,
13  Mr. Nelson.  What does the Secretary think about all of this?
14          MR. NELSON:  Thank you, Your Honor.  Let me start
15  off by addressing Plaintiffs' counsel's points and then
16  address the Court's questions about what would be adequate
17  and fair.
18          THE COURT:  Yeah.
19          MR. NELSON:  The question the Court considered when
20  it certified the Class was whether there was adequacy of
21  representation -- that is to say, whether the named
22  Plaintiffs could adequately represent the Class.  In an APA
23  action, the question before the Court is:  Was the
24  Secretary's actions arbitrary and capricious?  Presumably, in
25  choosing their Class members and the representative Class
```

1    members, and in the validation by the Court, we now have

2    individuals who will adequately represent the Class, whose

3    record adequately will show the Class.

4        This is an APA case.  It's stated right in the draft

5    -- or the 26(f) report.  It's pled as an APA case.

6        As the Court pointed out, the Second Circuit law

7    does suggest that absent some sort of strong showing or

8    something missing in the record, you would not engage in

9    extra judicial disc -- or extra record discovery.

10       So what do we have?  Attached to the Plaintiffs'

11   Complaint as Exhibits 3 to 5 are the administrative agency

12   decisions.  So when we look at the Plaintiffs' 26(f) report,

13   what they say -- and they cite the *National Audubon* case --

14   is we need extra record discovery, Judge, because we don't

15   have the agency decision.  But that doesn't make sense,

16   because it's literally attached to their Complaint.

17       That all being said, I would like to really rather

18   focus on the questions the Court asked:  Where are we going?

19   How do we get there?  What's fair and appropriate?

20       And in some ways, if there had not been the pressure

21   of the shutdown, causing the parties to sort of get this in

22   right before the Government closed, maybe we would have

23   gotten there without even the Court's intervention.  But here

24   we are.

25       We don't have the administrative record.  It hasn't

1    been produced to the Plaintiff yet.  So what we're here,

2    right, as the Court alluded to, is we're traveling to

3    Apollo's Oracle in Delphi in trying to figure out what we

4    should do.  I don't think we need to make that step even

5    today.  My suggestion to the Court, and to figure out what

6    would be fair and appropriate, would be to produce the

7    administrative record; give the parties time to look at the

8    administrative record and see if there isn't extra record

9    discovery required or if the administrative record can,

10   indeed, stand on its own.

11        It may be -- and I don't want to tip my hand one way

12   or the other, but I'm an officer of the court.  It may be

13   that when we all look at the judicial record -- the

14   administrative record -- pardon me -- that both Plaintiffs

15   and I agree, Well, you know, we just don't have the answer to

16   question X; and, so, maybe we'll need an interrogatory or

17   Request to Admit or a deposition.  It may be -- and, again,

18   that I take the position, Look, Judge, we have enough here,

19   and the Plaintiffs take the position, Look, Judge, we just

20   don't have anything here, we need all this discovery.

21        But it seems to me that we're trying to figure out

22   an answer to what's fair and appropriate without actually

23   knowing what we have in the record and without the parties

24   taking a position on that.  And that's a function of the way

25   this case has been litigated.  We did the Class certification

1    first.  We didn't go into a Motion to Dismiss stage, which

2    we'd still like to file that Motion to Dismiss.  We're happy

3    to produce the administrative record while that Motion to

4    Dismiss is pending.  I think it would be -- I think we'd lose

5    time, Your Honor, if we said -- if I were to stand up here

6    and say, Well, let's brief the Motion to Dismiss and let's

7    let the Court do the Motion to Dismiss until -- and then

8    we'll do the record afterward.

9         Why don't we allow the Defendant to file the Motion

10   to Dismiss, produce the administrative record, and let the

11   parties decide and argue to the Court based on that

12   administrative record, Gee, now we have the record, we know

13   we have the administrative decision because it was attached

14   to the Complaint, let's take a look and see, Do we need more

15   discovery?  If so, what would be the limited focused extra

16   discovery we need in accordance with the Second Circuit case

17   law, which I agree is not helpful, but -- but, certainly, it

18   makes more sense, Your Honor, if you have the record to look

19   at first.

20        If you're trying to decide what extra record

21   discovery we need and no one has even seen if the record is

22   good or bad, that seems to be a really hard decision.

23        So I think, to answer the Court's questions of

24   what's just and fair, my proposal would be -- you know, if I

25   were to write the order, essentially, or propose the order --

1    let's give the Defendant 90 days to produce the record.  If

2    the Court would enter, perhaps, a confidentiality order,

3    because I'm sure there's some stuff in there that, given the

4    nature of this case, would probably be -- we'd want to

5    protect, given that there's mental health records and things

6    along that line.

7            Let's enter such an order, produce the record, and

8    then order the parties to come back and say, Look, this is

9    what we think is missing from the record, This is why we

10   think the record is good; and now, this is the limited

11   discovery we propose, as opposed to, right now what's being

12   proposed is just broad ranging discovery into all the way the

13   military controls this aspect of its operations.  And that's

14   not really what the APA is for.

15           Even in most APA cases, Your Honor, when the Court

16   finds that there's been an administrative -- pardon me -- an

17   arbitrary and capricious action, the Court usually will

18   remand to the agency with directions to follow the Court's

19   order, or to follow the own agency's order.  So what the

20   Plaintiffs are proposing is not even going to get us to a

21   point that makes sense when the Court has to rule on the

22   merits.

23           My proposal would be to give us 90 days to produce

24   the record, during which we'd also file the Motion to

25   Dismiss.  If the parties want to come back and they have then

```
1   a targeted plan on discovery, let's argue about that targeted
2   plan rather than arguing about it in the abstract.
3        THE COURT:  And your contemplation is, I gather,
4   that the order to produce the full administrative record
5   would be properly addressed to the Defendant Secretary?
6        MR. NELSON:  Yes, Your Honor.
7        THE COURT:  Yeah.  And you said 90 days.  Was that
8   based on your experience, which indicates to you that perhaps
9   the Secretary might be able to do it within 90 days?
10        MR. NELSON:  Well, one better, Your Honor.  I
11   actually asked.  I didn't want to come up here and propose a
12   date that I wasn't rather sure of.  And, so, I asked Lt.
13   Cmdr. Dowling, who would have been participating on the phone
14   had we not had the technical issues, you know, could it get
15   done in 90 days, and his answer was yes.
16        THE COURT:  You asked the client, in other words?
17        MR. PETKUN:  Yes.
18        THE COURT:  That was a sensible thing for you to do.
19   Ninety days.  All right.  Okay.
20        LT. CMDR. DOWLING:  Your Honor, this is Lt. Cmdr.
21   Dowling.  The technical issue was resolved, and I am on the
22   line.
23        THE COURT:  Very good.  All right.  A voice -- a
24   voice suddenly was heard.  And just state your name again for
25   this expanding record; would you, sir?
```

1          LT. CMDR. DOWLING:  Lt. Cmdr. Jonathan Dowling,

2     Agency Counsel.

3          THE COURT:  All right.  Spell your last name.

4          LT. CMDR. DOWLING:  D-O-W-L-I-N-G.

5          THE COURT:  All right.  That was useful.  That was a

6     dramatic -- a voice -- a voice was heard.  Good.  That's very

7     useful.

8          And then, Mr. Nelson, if I follow your thinking,

9     although the report, the 26(f) report, I think, or somewhere

10    in the record there's an indication that the Defendant

11    contemplates making a Motion to Dismiss.

12         MR. NELSON:  Yes, Your Honor.

13         THE COURT:  That's so, yeah.  But is it -- I just

14    want to make sure I understand your position.  But that would

15    be held in abeyance or not done right away.  We would go

16    through the production of the administrative record and what

17    further contentions may be made in respect of that submission

18    before a possible Motion to Dismiss the Complaint.  Do I

19    understand you correctly on that?

20         MR. NELSON:  I would tend to leave that to the

21    Court's discretion, Your Honor.  If the Court feels that this

22    case would be better moved forward by doing the production of

23    the administrative record and simultaneously filing a Motion

24    to Dismiss, we can do that.  If the Court feels that it would

25    rather deal with this issue first as a threshold issue, we'd

1    defer to the Court, as well.

2         THE COURT:  I would not presume to speak to that.

3    I'm not paid to, and I'm not going to.  You must decide what

4    you want to do.

5         MR. NELSON:  Well, I think --

6         THE COURT:  And if you don't want to tell me now,

7    that's fine.

8         MR. NELSON:  I think, Your Honor, it's always

9    certainly, I think, easier when you're a Government counsel

10   and you're managing multiple cases to have only one thing

11   going on in one case at the time.  So if it were up to me

12   personally, I would produce the administrative record, let

13   the parties review it, file the Motion to Dismiss.  And while

14   the Motion to Dismiss is pending, the parties can perhaps

15   come back before the Court and either say, We agree that

16   there's this limited amount of discovery needed, or We

17   disagree and we're still sort of at where we are now, or We

18   agree that there's no discovery needed.  And I can't know

19   that without knowing the administrative record and speaking

20   to opposing counsel.

21        THE COURT:  Okay.  Well, I say nothing further on

22   that subject.  If a time comes when you think that the

23   Secretary would be well-advised to make a Motion to Dismiss,

24   you will give that advice and probably make a Motion to

25   Dismiss.  And if you do, and when you do, it'll probably be

1    opposed, and then I'll consider it.

2            If I have to wait for the Motion to Dismiss in this

3    case, I have two or three other motions in two or three cases

4    which I can work on.

5            All right.  That's fine.  Is that your submission in

6    response to the subject we've dealt with so far?

7            MR. NELSON:  Yes.  Yes.

8            THE COURT:  All right.  Good.  Fine.

9            MR. NELSON:  Thank you, Your Honor.

10           THE COURT:  Okay, Mr. Nelson.

11           Well, any response?

12           MR. PETKUN:  Yes, Your Honor.  Thank you.

13           Your Honor, the Defendant -- Defendant's counsel has

14   stated that they cannot speak to the full contents of the

15   administrative record at this point; however, in the 26(f)

16   report on page 13, they make it extremely clear what they

17   view as the contents of the administrative record.

18           They argue that the administrative record in this

19   case consists simply of two decisions from the NDRB,

20   particularly those from Mr. Manker and from apparently

21   Mr. Doe, who is a member of the organizational Plaintiff

22   NVCLR.  Your Honor, those two decisions from the NDRB, those

23   two records, are simply going to be insufficient for the

24   Court to provide meaningful judicial review of the challenged

25   actions.

1          Your Honor, nowhere in those records -- and these

2    records from the NDRB, many of them are publicly available on

3    the Internet.  They can be read by anyone.  When you peruse

4    that website, Your Honor, it's immediately clear that the

5    NDRB does not, generally speaking, reflect in those decisions

6    on its general practices whether -- whether or not it has any

7    biases against individuals with PTSD, whether or not it is

8    fully implementing guidance from the DOD.  These broader

9    questions of law, Your Honor, are not going to be reflected

10   in individual decisions from the NDRB.

11          Your Honor, another thing that I want to say is

12   that I think part of what you're hearing here is a factual

13   dispute between Plaintiffs and Defendants about what

14   constitutes the administrative record.  And, in fact, in a

15   Second Circuit case, *Dopico v. Goldschmidt* -- that is, 687

16   F.2d 644, Your Honor -- the Second Circuit held that extra

17   record discovery in APA cases is particularly appropriate

18   when there is a factual dispute over what constitutes the

19   administrative record.  I think that's exactly what's

20   happening here, Your Honor.  And that's only more reason to

21   provide extra record discovery at this point.

22          Your Honor, I also want to speak to this proposal of

23   90 days.  Plaintiffs do seek to be as reasonable as possible,

24   Your Honor; however, I struggle to see how Defendant would

25   use 90 days when they've already made clear what they see as

1  the full boundaries of the administrative record.  They see

2  it as just two records from individual discharge

3  adjudications.  Those are already in the possession of

4  Defendant.  So I struggle to see how they would put 90 days

5  to use in order to produce just those two records, Your

6  Honor.

7         And, finally, I believe that this timeline is

8  inconsistent with a joint stipulation from both parties that

9  then resulted in an order from Your Honor.  This was Document

10 Number 14, dated June 5, 2018, in which the parties

11 stipulated -- and Your Honor ordered -- that parties would

12 complete a proposed discovery plan and file initial

13 disclosures within 45 days of the Court's Class certification

14 order.  In fact, in mid-November, Your Honor did certify the

15 Class.  We are now -- of course, due to no fault of the

16 Defendant -- we have -- more time has transpired because of

17 the Government shutdown, but we are well past that 45-day

18 mark now, and we believe it is time to move forward with this

19 26(f) plan, Your Honor.

20         THE COURT:  All right.  I'll hear you, Mr. Nelson,

21 but let me put an additional question to you while I still

22 think of it, and it's this.  The question is whether or not

23 the -- within the context of what the administrative record

24 in this case should consist of, does the fact that it has

25 been certified as a Class action make any difference in the

1    proper resolution of that question?

2            And I'll say to you, sort of an explanation for the

3    question I just put to you, that when I heard that whether

4    the administrative record should be the sum total of the

5    facts in this case, it made me think of a different kind of

6    case, which all District Judges have their share of.  I'm

7    thinking of the ERISA -- all caps, E-R-I-S-A -- kind of case,

8    where a Defendant insurance company has issued a disability

9    policy, and the Plaintiff -- because it ends up in court, as

10   they so often do -- claims that he or she was disabled, it

11   covered disability, and the insurance company that the

12   employer arranged to cover its ERISA obligations has

13   improperly refused to pay disability, or having started to

14   pay disability, has stopped paying it.

15           And the Defendant insurance company invariably says

16   that the only source of facts that the District Court can

17   look at is the administrative record.  We all hear the phrase

18   "administrative record" lots of times.  And we hear it in

19   that kind of case.  And the insurance company likes to limit

20   the judicial review to the administrative record, because

21   that's the record which persuaded the physicians hired for

22   the purpose, by the insurance company, to say this person is

23   not disabled.

24           And there's a lot of case law in the Circuit, and in

25   the District Courts as well, about whether or not that

1 | administrative record in an ERISA case should be expanded for
2 | additional sources of information.  And the Circuit has
3 | addressed that a number of times, and I thought of it
4 | preparing for this hearing because there is a -- one starts
5 | with the assumption or the feeling that the administrative
6 | record is what should be the limit of factual exposition, so
7 | that one of the first things the Court of Appeals has to
8 | decide is whether the District Court was right or wrong in
9 | expanding the record beyond the administrative record for
10 | additional sources of information.

11 | And sometimes the Court of Appeals thinks it's right
12 | to do that, and other times it thinks it's wrong.  But the
13 | distinction I would draw between that case and this one is
14 | that, in the typical ERISA case, it's one person claiming a
15 | disabling condition and having that claim rejected by one
16 | insurance company, all for the benefit, or whatever, of a
17 | single employer.  It's a one-person, one-claim case.

18 | And this case before us started off with two people,
19 | but now it's been certified as a Class.

20 | And I know you dealt with it in your opening
21 | submission.  I'm -- I'm -- well, I suppose I don't -- I'd
22 | give it away if I suggest that I'm not wholly persuaded yet,
23 | and the reason that -- that's really why I'm going on in this
24 | fashion.

25 | The argument that you made was that because the

1 Class certification order held -- correctly, in my view; it

2 was my order -- that these two individuals were sufficient

3 Class representatives, that sets a boundary on the extent to

4 which the facts should be demonstrated on the basis of

5 administrative records, just those two people.

6          Well, if it was just one of those people and it was

7 an ERISA case, you'd talk about whether, in the context of

8 that particular case, the administrative record should be

9 expanded or not.  But now it's a certified Class action, and

10 the question I'm putting to you now is whether that changes

11 the mix, changes the -- that's not quite the right phrase --

12 whether that is an additional circumstance which has an

13 effect upon the sufficiency in law of the administrative

14 record in respect of the two representatives, and would

15 preclude and foreclose under the APA administrative record

16 rule, which is really your submission in this case, whether

17 it would foreclose and preclude any discovery with respect to

18 any other members of the Class, either of a systemic or

19 systematic approach taken by the Secretary or some other

20 aspect of the case which impacts upon not just the two named

21 representatives -- Mr. Manker and his colleague -- or others,

22 as well.

23          A long-winded way of asking you a short question:

24 Doesn't the Class certification make a difference?

25          MR. NELSON:  Yes and no, Your Honor.

1              THE COURT:  Okay.  Good.  Good answer.

2              MR. NELSON:  No, and let me start with the no.

3    Class certification in a Class action does not change the

4    fundamental underlying lawsuit which is brought.  For

5    instance, if this is a tort action or a products liability

6    action, and it became a Class action products liability case,

7    we're still litigating the underlying question of, Was that

8    product defective?  Correct?

9              When we have an APA case, the idea of the Class

10   action is to not resolve every single individual case -- as

11   we suggested would have been the appropriate place, but we

12   lost the argument -- was not to resolve and consider every

13   single individual case and what happened in every single

14   individual case.  It was, Did the Secretary do the right

15   thing vis-a-vis these two people? -- Right? -- Were the

16   decisions arbitrary and capricious?  That a Class exists does

17   not change the fundamental underlying nature of the APA.

18             Where I think Your Honor is right, and where I sense

19   that Your Honor is troubled by, it's easy for me to imagine

20   if the Court were to find that the Secretary was arbitrary

21   and capricious as to these two individuals, what would be the

22   appropriate remedy?  And it's easy for me to imagine that I

23   would have a very difficult argument.  And I don't want to

24   commit myself to anything right now, Your Honor, but in the

25   context of this discussion in this conference, it's easy for

1   me to imagine saying, Well, if we're considering what

2   injunctive relief you should order post-finding, should the

3   Plaintiffs win, then I might be asking, Gee, Judge, we should

4   do some discovery to see what the remedy should be, given

5   that it's not just two people.

6           But in terms of the idea of the Class action

7   fundamentally altering what the record review should be, I

8   don't think so.  I don't think so, because it doesn't change

9   the APA.  I still think, though, however, if there are things

10  we identify in the record that are missing once the record

11  has been produced, I think that would be a more appropriate

12  time to consider it.

13          I'd also like to address the Plaintiffs' point.

14  Whether there's a fundamental flaw in the way the Secretary

15  goes about things or whether there's an unspoken policy, any

16  of these things that the Plaintiffs hope to prove or hope to

17  explore through discovery, it ultimately doesn't matter.  If

18  there's a fundamental flaw in the training such that the

19  decisions are arbitrary and capricious, they are arbitrary

20  and capricious.  Right?  It doesn't matter.  I can't get up

21  and say to the Court, Well, Judge, you know, I know they

22  messed this up, but they tried really hard.  That's not going

23  to get me there.  If there's an unspoken policy but the

24  decisions are arbitrary and capacious, I still lose.

25          So that discovery doesn't answer this question as to

1    whether the Secretary followed its own policies and

2    procedures and acted in such a manner that was either logical

3    or arbitrary and capricious.  That's not going to answer

4    those questions, and that doesn't necessarily change the

5    answer to those questions.

6           Even if the people in Mr. Manker's, the named

7    Plaintiff's, panel were just, let's say, terrible human

8    beings and didn't like him.  If it's arbitrary and

9    capricious, I lose.  Right?  Because if they can't justify

10   their behavior in the written record, I lose.  Whether there

11   was bad training, whether there was an unspoken policy -- all

12   these thing that the Plaintiffs are proposing don't change

13   the fundamental question of, Is the ultimate decision

14   arbitrary and capricious?  If the record doesn't support

15   their decision, it's arbitrary and capricious.

16          So I don't think the Class action changes it.  I

17   think that where the Court's essence of being troubled is how

18   will -- how would -- if I was the judge, How would I fashion

19   a remedy?  And I think that's right.  If we get to a point

20   where we're at a remedy stage, I think we might need

21   post-merit judgment decision discovery to see, Okay, well,

22   what is the Secretary doing for training, so that the Court

23   can say, Well, I'm not going to order them to cross Ts and

24   dot Is if they're already doing.  I think I'm going to have

25   to structure my injunction to do it in such a way that is

1    more effective.

2            But none of this changes the underlying question,

3    which is whether these two individuals, Manker and Doe, were

4    treated arbitrary and capriciously.  This idea of what

5    training they did for the other boards for these other

6    people, that doesn't matter.  The whole point of the Class

7    action was to pick two people where we could determine --

8    "we" meaning all of the people in this courtroom -- where we

9    could determine, Is the Secretary doing this right?

10           If the idea was to do everyone else and look at what

11   all the other boards were doing, this wouldn't be the type of

12   Class action it would be.  We wouldn't have certified them as

13   representative parties for the Class.

14           The Plaintiffs, in some ways -- if they have picked

15   good Class representatives, and this is -- it makes me

16   somewhat uncomfortable, I have to admit, to say.  If they had

17   picked good Class representatives and we -- whether we didn't

18   train good, whether there was an unspoken policy, whether we

19   just got up to bat that day and swung and missed.  If we were

20   arbitrary and capricious for these two Plaintiffs, there's

21   going to be nationwide consequences for the Navy and the

22   Marines.  And if they weren't arbitrary and capricious,

23   there's not going to be those consequences.

24           But that doesn't change any of the other decisions.

25   Right?  That doesn't change the scope of the discovery.  That

1    doesn't change the record.  It's whether the Secretary did

2    the right thing, was justified in its action, or whether they

3    were arbitrary and capricious as to these two people.

4         Discovery about what other boards did, discovery

5    about training, that doesn't change the fact.  If the Court

6    were to find that these people were trained to the best of

7    government ability but they still didn't get it right here,

8    my understanding of the APA is that I lose.  Right?  The

9    Defendant loses in that case.  If the Court were to find

10   that, Look, we've done all these depositions and these were

11   the greatest people in the world and there was -- the

12   unspoken policy was to help them out as much as possible, but

13   they're still arbitrary and capricious on this decision, I

14   lose.  I can't get up and say, Judge, these are good people,

15   they tried hard.  That doesn't get me there under the APA.

16        So I don't think the Class action really changes

17   this.

18        I think -- I agree with you, Your Honor, that there

19   is this part of it post-merits decision, if it were to go

20   against the Government, where probably we would need to come

21   back and I would at least need to offer what we have been

22   doing so that the Court could see how it should structure its

23   judgment.  Yep, I would agree there.

24        That at least, analytically, as I sit here right

25   now, without, you know, making concession on February 5th,

1    that seems logical to me as I stand here right now.  I don't

2    want to concede that, but that would be my argument as to

3    that.

4              THE COURT:  Good.  Any further -- yes?  Any further

5    comment?

6              MR. PETKUN:  May I respond, Your Honor?

7              THE COURT:  Yes, certainly.

8              MR. PETKUN:  Thank you, Your Honor.

9              I have three points, Your Honor.  First, I think

10   that Your Honor is right to point out that there is something

11   about the nature of discovery that changes with Class

12   certification.  In particular, part of what -- part of the

13   information that we're asking for here would be information

14   about the scope of the Class, in order to understand the

15   extent of the potential problem.  That is information that

16   simply would not exist within individual records, and that's

17   the sort of information that is always going to be involved

18   in a Class action, Your Honor.

19             Another point, Your Honor, is that although the

20   Defendant is correct that the nature of the claims do not

21   change with Class certification, I would submit that, given

22   the nature of the claims in this lawsuit, these claims were

23   never going to be fully reflected in individual

24   administrative records for individual applicants to the NDRB.

25   We're talking about general policies and practices and

1     procedures.  We're talking about potentially secret,

2     unconstitutional policies of bias against individuals with

3     PTSD.  It would boggle the imagination if the NDRB were to

4     simply state those explicitly in an individual decisional

5     record.

6          The last thing I would say, Your Honor, is that

7     Defendant's counsel makes this point that if the Class

8     representatives are adequate, then their administrative

9     records should be sufficient for judicial review in this

10    case.  But it's a nonsensical position to say that the

11    adequacy of the Class representation depends upon the

12    Defendant's behavior.  That would mean that the NDRB or any

13    government agency could avoid Class actions altogether by

14    writing intentionally inadequate decisional records.

15         That's not the case.  Adequacy representation does

16    not depend on the behavior of the Defendants; rather, all

17    that we have said is that the Class representatives have

18    claims that are typical of the Class, that they are adequate,

19    that they represent the interests of a Class adequately.

20    That does not mean that their individual decisional records

21    is going to be sufficient for the Court to review the

22    challenged action.

23         THE COURT:  Right.  Is there something you can't

24    stand?

25         MR. NELSON:  No, no.  I just didn't know if the

1    Court had any other additional questions.

2              THE COURT:  No, I don't.  I don't.  All right.

3              Well, then, look.  I said early on that I'd rely on

4    counsel for their assistance in this matter, and that is

5    appropriate on my part, because these have been excellent

6    presentations.  If there are any Yale law school students

7    present in court, well, this is an example of why in the

8    honest-to-goodness courtroom it's more exciting.  It's

9    different from sitting in class, isn't it, listening to even

10   the great teachers as you're frantically trying to take notes

11   and capture in your notes everything that the professor says

12   in his lecture, or her lecture?

13             But this is different.  This is where it's really

14   at.  And here are fine lawyers trying to persuade a District

15   Judge with such arguable abilities as he or she may not have

16   as to how an important case should be decided.  This is what

17   you're studying to get ready to do.

18             And the additional assistance I'm going to require

19   of counsel will take this form:  First of all, I want the

20   transcript of this hearing to be ordered and submitted to the

21   Court.  I'm not quite sure what the arrangement is, as far as

22   paying for the transcript is concerned, except to say I'm not

23   going to do it.  But I need it.  It's for the assistance of

24   the Court.  And, consequently, whoever pays for it, it will

25   be a taxable cost to abide the event.

1        If this were an ordinary civil case, the order I

2    would make would be to have the expense of a hearing like

3    this be divided initially equally between the two parties,

4    but as a taxable cost to abide the event.  I'm not quite sure

5    what the situation here is, and I don't inquire into it

6    further.  But I do make the direction that this transcript be

7    prepared and furnished to the Court with copies to counsel,

8    and I do not make the direction that we treat it as an urgent

9    matter of daily copy, as if this were a criminal trial to a

10   jury.  But I think that this case, for a number of reasons

11   previously alluded to, must be given a priority as far as

12   moving it along is concerned.

13       So I will rely on counsel to confer with our good

14   court reporter and have the transcript prepared and filed as

15   promptly as the circumstances may allow.

16       And then after it's in hand and two weeks after

17   counsel receive it, I want each side to submit a brief.

18   Cases have been referred to, cited in this argument, and

19   we've made notes of them and so forth.  But this particular

20   issue has not been fully briefed yet.  There have been

21   comments made and compliments exchanged between the parties

22   about it.  But some cases were referred to, and I think that

23   the most useful thing counsel can do now is to get the

24   transcript and then submit briefs arguing for your perception

25   of where we should go next and how we get there and

1   criticizing what the -- your adversary says.

2          I mean, I think the issues have been very well

3   articulated, identified by able counsel this morning.  So I

4   will maximize the benefit your efforts do for me by getting a

5   transcript; two weeks after you have it, put in briefs.  And

6   I suppose that when you read the other side's brief, that may

7   provoke or arouse you to an extent where you would want to

8   put in a reply.  And if you feel you must, that's all

9   right -- a week later.

10          I'm going to make these directions of further

11   proceedings in a text order, which we'll file and send to

12   you.  And I know that it's going to -- it's going to delay

13   things a bit, but I'm doing it because I think it's the best

14   way I can get the advantage of your own submissions and

15   arguments.  And I want to do everything that this District

16   Court can to get this one right.

17          And I don't care if the Second Circuit is properly

18   referred to as a Delphic Oracle or not.  The case may very

19   well go there, and I want to give the Court of Appeals a good

20   product, and you folks can help me do that.  So you're going

21   to.  And that's how you're going to do it.  I will give you a

22   little order explaining all that.  And then I will compose

23   myself with as much patience as I can and await your further

24   submissions.

25          Anything else to usefully come before this meeting?

1   No?  Silence.  Even the absent voices.

2          MR. PETKUN:  Nothing from Plaintiffs, Your Honor.

3          THE COURT:  Anything further?

4          MR. NELSON:  No, Your Honor.

5          THE COURT:  Very good.  Then the decision is

6   reserved.  A scheduling order will issue.  Thank you for your

7   attendance here this morning, and the case is continued.

8          (Proceedings concluded, 12:04 p.m.)

9

10

11          COURT REPORTER'S TRANSCRIPT CERTIFICATE

12   I hereby certify that the within and foregoing is a true and

13   correct transcript taken of the proceedings in the

14   above-entitled matter.

15

16

17                      /s/  Tracy L. Gow
                         Tracy L. Gow, RPR
18                       Official Court Reporter

19

20

21

22

23

24

25