UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYSON MANKER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> RICHARD V. SPENCER, Secretary of the Navy, <br><br> *Defendant*. | No. 3:18-cv-00372-CSH <br><br><br> March 11, 2019 |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' REQUEST FOR DISCOVERY**

Only discovery beyond the proposed administrative record will enable the Court to meaningfully review Plaintiffs' class-wide allegations concerning Defendant's general course of conduct. Defendant's arguments against extra-record discovery mischaracterize the nature of Plaintiffs' claims and misconstrue the purpose of class action certification. Extra-record discovery is necessary to allow for review of Defendant's practices and procedures with respect to discharge upgrade applications brought by veterans with post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), and other related mental health conditions, evidence of which is unlikely to be contained in the administrative records of two individual class members.

Furthermore, the merits of the class-wide claims do not rise and fall on the merits of the individual outcomes of NDRB decisions for a single named plaintiff and one other member of the class, as Defendant suggests. Rather, this case concerns a general course of conduct that systematically discriminates against veterans with PTSD, TBI, and other related mental health conditions. That system-wide discrimination cannot fully be reflected in any single decisional record, but will be evidenced by the aggregate, class-wide effects of Defendant's policies,

1

procedures, and practices. Finally, many of Defendant's arguments are inapposite because Plaintiffs agree there has been a final agency decision in the individual cases of Tyson Manker and John Doe and do not contend that Defendant engaged in bad faith.

Extra-record discovery is urgent, and its necessity should not be understated. Men and women who have already bravely served the nation are stigmatized and deprived of essential—and for a large number of veterans, life-saving—health and disability benefits due to improperly assigned discharge statuses that Defendant has failed to correct. This Court should move the case towards resolution by granting Plaintiffs' request for discovery now, rather than waiting for the Defendant's proposed administrative record, which will necessarily be deficient.

I.  **The Administrative Record Defendant Proposes to Produce Will Be Insufficient.**

Extra-record discovery is necessary in this case because there is no administrative record sufficient for the Court to review and adjudicate the merits of Plaintiffs' claims. Contrary to Defendant's assertion, Plaintiffs do not argue that there was no final agency decision.[1] *Cf.* ECF No. 52 ("Def. Discovery Br."), at 4. Rather, Plaintiffs' claims concern Defendant's general course of conduct in evaluating discharge upgrade applications by veterans with PTSD, TBI, and related mental health conditions—including the implementation of and adherence to policies and procedures. *See* Compl. ¶¶ 218–21, ECF No. 1; *Manker v. Spencer*, No. 3:18-CV-372 (CSH), 2018 WL 5995486 (D. Conn. Nov. 15, 2018) ("Class Certification Ruling"), at *9 ("Plaintiffs' claims challenge the NDRB's procedures and standards in place for evaluating applications from PTSD-affected veterans, not the NDRB's denials themselves."). Evidence of all of these practices and procedures will not be found in the administrative records of Tyson Manker and

---

[1] Plaintiffs also did not raise "bad faith," as Defendant points out. *See* Def. Discovery Br. at 8. "Bad faith" is but one exception to the APA "record rule," and the exception is not necessary for or determinative of the appropriateness of extra-record discovery.

one other class member. Specifically, evidence of aggregate outcomes of discharge upgrade applications by veterans with PTSD, TBI, and related mental health conditions, and of implicit biases against those veterans, both of which would reflect the NDRB's treatment of the class as a whole, would not be discernable from two individual decisions alone.

The case law Defendant relies on does not undermine the principle that discovery is warranted where, as here, a plaintiff's claims rest on a defendant's general course of conduct. *See* ECF No. 51, ("Pl. Discovery Br.") at 3. Defendant cites *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985), for the proposition that discovery is improper in cases where "the agency has not considered all relevant factors," but this is not such a case. *See* Def. Discovery Br. at 2. Plaintiffs challenge the methods and systemic practices under which the consideration takes place. Furthermore, there is a significant difference between denying discovery in cases where the record is deemed to be "complete regarding Defendants' rationale," *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004), and cases raising allegations of systematic discrimination. *See* Def. Discovery Br. at 3. Here, extra-record discovery is both necessary and appropriate to complete the record and to provide evidence of Defendant's general course of conduct.[2] This evidence could include written materials, responses to interrogatories, and deposition testimony regarding the implementation of Defendant's policies, practices and procedures related to discharge upgrade applications. *See* Report of the Parties' Planning Meeting, ECF No. 36, at 11; Pl. Discovery Br. at 1.

II. **Class Action Review is Not Limited to the Merits of Two Class Members' Claims.**

---

[2] Furthermore, Defendant's proposed remand is inappropriate for two reasons. First, Plaintiffs do not claim that additional explanation or findings in the adjudications will resolve the merits of the individual claims.  Second, remand exposes class members to the same systematically biased, general course of conduct Plaintiffs challenge, without ensuring any of the enduring changes in practices and procedures that Plaintiffs seek.

The error in Defendant's argument stems from one fundamental mistake: Plaintiffs bring claims focusing on Defendant's *policies, practices, and procedures*—not the merits of any individual applications. Defendant incorrectly suggests that the issue in this case is limited to "whether the defendant's decisions regarding the lead plaintiffs were arbitrary or capricious." Def. Discovery Br. at 8 (emphasis omitted). But limiting review to the merits of the claims of Tyson Manker and one other class member is contrary to both case law governing class actions and the purpose of Rule 23(b)(2) class actions. Extra-record discovery is necessary to produce evidence of Defendant's pattern and practices in handling discharge upgrade applications for veterans with PTSD and related conditions, which will assist this Court in evaluating Plaintiffs' claims and determining the appropriate scope of injunctive relief.

Decisions involving Rule 23(b)(2) class actions consistently demonstrate that courts' review of claims in these class actions is not limited to the cases of individual named plaintiffs. In *Damus v. Nielsen*, the Court authorized discovery in an APA class action by granting depositions of officials from each of the offices at issue while indicating that these "depositions should [not] address the merits of individual determinations . . . ." 328 F.R.D. 1, 13 (D.D.C. 2018). Far from limiting discovery to the cases of the individual named plaintiffs, the Court in *Damus* also required the defendant to produce a sample of decisions from over 1,000 relevant agency determinations. *Id*. at 5. In *Marisol A. v. Giuliani*, the Second Circuit affirmed certification of a class of children involved in New York City's child welfare system, despite variation among their individual claims, in part because a common question existed of "whether defendants systematically have failed to provide . . . legally mandated services." 126 F.3d 372, 378 (2d Cir. 1997). The class action settled after "more than two years of intensive discovery" with the agency committing to active and systemic reform of the foster care system. *Joel A. v.*

4

*Giuliani*, 218 F.3d 132, 137 (2d Cir. 2000). Similarly, in *Baby Neal for & by Kanter v. Casey*, the Third Circuit, in requiring certification of a class of children in a state welfare system alleging claims of deficient care, noted that the lower "court would not need to assure that every child received an 'appropriate' case plan . . . . Instead, the court would assure that the DHS had an adequate mechanism for generating and monitoring appropriate case plans." 43 F.3d 48, 63 (3d Cir. 1994); *see also Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 561 (N.D. Cal. 2007) (certifying a nationwide class action against the Secretary of Human and Health Services for failing to provide Medicare Part D benefits and enroll beneficiaries, noting that "[b]ecause this case seeks only injunctive relief and not individualized damages or benefits awards, the Court's focus will be on Defendant's actions (or inactions) and not individual plaintiffs."). Rule 23(b)(2) does not limit review to the facts of the named plaintiffs' individual claims only. Rather, the class action mechanism provides for efficient and economical review of the evidence common to the class members' claims—here, evidence of the NDRB's general course of conduct with respect to discharge upgrade applications for veterans with PTSD and related conditions.

Decisions in "pattern-or-practice" cases similarly demonstrate that courts' review of a defendant decisionmaker's general practices rather than individual decisions alone is not novel. "[A]t the liability stage of a pattern-or-practice trial" in employment discrimination cases, "the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 360 n.46 (1977)*; see also Penk v. Or. State Bd. of Higher Educ.*, No. 80-436, 1985 WL 25631, at *12-13 (D. Or. Feb. 13, 1985) (explaining that "the inference of discrimination created by statistics," and evidence of general practices and procedures may allow the court to "award prospective relief, such as injunctive relief" prior to "individual determinations" of liability), *aff'd*, 816 F.2d 458 (9th Cir.

1987). Similarly here, Plaintiffs seek injunctive relief to ensure that the NDRB has an adequate mechanism for fairly and lawfully adjudicating class members' discharge upgrade applications.

Defendant's position also misapprehends the significance of class certification. When this Court certified a class, "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [named plaintiffs]." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). Defendant's argument that Plaintiffs "are very much challenging decisions regarding specific 'individual discharge upgrade[s],'" Def. Discovery Br. at 8, suggests that if Tyson Manker received a discharge upgrade, any other class member would automatically be entitled to an upgrade regardless of the underlying facts of his or her discharge. The Plaintiffs established commonality of the class because the Defendant's general course of conduct applies to all class members, not because of the merits of individual class members' claims for discharge upgrades.

Cases in which a named plaintiff's claims become moot further demonstrate that the merits of the individual claims of the lead plaintiffs do not constitute the entirety of the case. "The constitutional doctrine of mootness does not bar the named plaintiff from continuing to litigate claims on behalf of the class." *Abraham v. WPX Prod. Prods.*, LLC, 184 F. Supp. 3d 1150, 1177 (D.N.M. 2016); *see also Rosetti v. Shalala*, 12 F.3d 1216, 1227 (3d Cir. 1993) (citing *Sosna*, 419 U.S. at 401–02) (explaining that "the existence of a live dispute between a defendant and a class member eliminates the mootness problem . . . when the named plaintiff loses her personal stake in the outcome of the suit"). The merits of the class-wide claims challenging Defendant's general course of conduct do not rise and fall with the administrative decisions of named Plaintiff Tyson Manker and one other member of the class. Extra-record discovery is therefore necessary to investigate the class claims that Defendant's polices, practices, and

6

procedures constitute an illegal general course of conduct.

### III. Thirty Days is Sufficient for Defendant to Produce the Administrative Record.

In the event the Court permits Defendant to produce the administrative record before ordering discovery to begin, Defendant should receive no more than 30 days to assemble and produce the record. Defendant's request for 90 days, *see* Def. Discovery Br. at 12, is just another delay tactic in this aging case. Plaintiffs filed the Complaint on March 2, 2018, and served Defendant on March 5, 2018. *See* Compl., ECF No. 1. The parties stipulated to a Scheduling Order on June 5, 2018 that included a discovery plan. *See* Electronic Scheduling Order, ECF No. 14. Defendants have had ample time to begin assembling the administrative record and do not need more than an additional 30 days to do so.

Nor does Defendant's concession he will provide "relevant policy memoranda, regulations, and other documents," *see* ECF No. 52, at 5 n.1, justify a 90-day timeline. These records do not obviate the need for extra-record discovery. Relevant regulations and memoranda are already available to Plaintiffs and have been referenced throughout this case. Production of only these documents and the records of two individual class members would provide an insufficient basis for evaluating Plaintiffs' claims. Requiring that Defendant produce the documents within 30 days would not unduly burden Defendant and would further the interests of efficiency and fairness.

### IV. Conclusion.

Plaintiffs respectfully request that the Court order discovery concerning Defendant's general course of conduct to begin immediately.

Respectfully submitted,

/s/ Jeremy M. Creelan

Diana Lee, Law Student Intern[*]  
Samantha G. Peltz, Law Student Intern  
Jonathan B. Petkun, Law Student Intern  
Westley A. Resendes, Law Student Intern  
Blake N. Shultz, Law Student Intern[*]  
Renée A. Burbank, Supervising Attorney, ct30669  
Michael J. Wishnie, Supervising Attorney, ct27221  
Veterans Legal Services Clinic  
Jerome N. Frank Legal Services Org.  
Yale Law School[†]  
P.O. Box 209090  
New Haven, CT 06520-9090  
Tel: (203) 432-4800  
michael.wishnie@ylsclinics.org  
*Counsel for Plaintiffs*

Susan J. Kohlmann, *pro hac vice*  
Jeremy M. Creelan, *pro hac vice*  
Jeremy H. Ershow, *pro hac vice*  
Jessica A. Martinez, *pro hac vice*  
Nicole Taykhman, *pro hac vice*  
Jenner & Block LLP  
919 Third Avenue  
New York, NY 10022-3908  
Tel: (212) 891-1678  
jcreelan@jenner.com

---

[*] Application for law student admission forthcoming.  
[†] This brief does not purport to state the views of Yale Law School, if any.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2019, copies of the foregoing brief were served upon all counsel of record by ECF.

/s/Jeremy M. Creelan

Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3908
Tel: (212) 891-1678
jcreelan@jenner.com
