UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYSON MANKER, on behalf of himself and all others similarly situated, and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS, on behalf of itself, its members, and all others similarly situated,<br><br>                Plaintiffs,<br>v.<br><br>RICHARD V. SPENCER, Secretary of the Navy,<br><br>                Defendant. | Civil Action No.<br>3:18-cv-372 (CSH)<br><br>**APRIL 5, 2019** |

**MEMORANDUM AND ORDER REGARDING DISCOVERY**

**HAIGHT, Senior District Judge:**

This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Subject matter jurisdiction in this Court is conferred by 28 U.S.C. § 1331. This Memorandum and Order addresses a dispute about pretrial discovery.

I.     INTRODUCTION

Plaintiffs are veterans of the United States Navy and Marine Corps. Doc. 1 ("Compl.") ¶¶ 3–4; Doc. 12. Defendant is Secretary of the Navy. Compl. ¶ 5. Plaintiffs, who were discharged from the service with less than honorable discharges, allege that they were denied discharge upgrades by the Naval Discharge Review Board ("NDRB") in a manner violative of the APA and the Due Process Clause of the Fifth Amendment. *Id.* at 3–4. Specifically, Plaintiffs contend that they had diagnoses of post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), or PTSD-

-1-

related conditions at the time of discharge, attributable to their military service. *Id.* at 3. That circumstance, Plaintiffs assert in this action, entitle them to discharge upgrades which the NDRB has wrongfully withheld. *Id.* Plaintiffs condemn the NDRB's denial of discharge upgrades as arbitrary and capricious, the hallmark of liability for violating the APA. *Id.*

When the complaint was first filed, there were two named Plaintiffs, asserting claims on behalf of themselves and also as representatives of a purported class. *Id.* ¶¶ 3–4. In an opinion reported at *Manker v. Spencer*, No. 3:18-cv-372 (CSH), 2018 WL 5995486 (D. Conn. Nov. 15, 2018), the Court certified a class consisting of all Navy, Navy Reserve, Marine Corps and Marine Corps Reserve veterans of the Iraq and Afghanistan Era who had comparable discharge histories.

Counsel for the parties conducted a planning conference and submitted a Report pursuant to Fed. R. Civ. P. 26(f), [Doc. 36 (the "Report")], from which a stark and dramatic dispute emerges with respect to the permissible scope of pretrial discovery.

The Defendant Secretary takes the position that since Plaintiffs claim an APA violation, "there is no need for a Local Rule 26(f) report, initial disclosures, or discovery in this case." Report at 12. Defendant concludes that because judicial "review under the APA is confined to the administrative records," it follows that "discovery would be limited to the administrative record of the two lead plaintiffs." *Id.* at 13.

Plaintiffs' position is that since they "have alleged systemic and systematic failures to properly implement existing law and guidance, which are not reflected in any agency decision record," it follows that "discovery will be needed on all matters related to the causes of action and the defenses" raised in the pleadings, including an encyclopedic list of "Defendant's policies,

procedures, and practices related to discharge upgrade applications"; training of NDRB personnel and board members; incidence of PTSD, TBI and other related mental health conditions within the veterans; and "Department of Defense, Navy and Marine Corps personnel involved in NDRB policy, practice, or review." *Id.* at 10–11.

Stated briefly, discovery is visualized by Plaintiffs into practically everything and by Defendant into almost nothing. The Court conducted an early hearing to explore these extremes. Counsel for the parties reiterated their conflicting contentions about pretrial procedures. That question had not been previously briefed. The Court directed briefing. Counsel exchanged main briefs [Docs. 51 and 52] and reply briefs [Docs. 53 and 54]. The briefs are well-structured, comprehensive, and replete with citations to case law.

This Order determines what will happen next in this sensitive and important case.

## II.   BACKGROUND

Plaintiffs challenge the NDRB's implementation of the Department of Defense's policy concerning the adjudication of discharge upgrade applications from Navy or Marine veterans with PTSD, TBI, or PTSD-related conditions. Compl. at 3.

On Plaintiffs' theory of the case, the NDRB is required by Department of Defense policy to accord such discharge upgrade applications "special" or "liberal" consideration. *Id.* ¶¶ 11–12. Plaintiffs assert that, notwithstanding those principles of compassion and lenity, the NDRB has granted discharge upgrades in only fifteen percent of cases in which PTSD was claimed to have been a factor in arriving at the agency's characterization of a particular discharge. *Id.* ¶ 180. Plaintiffs allege that so high a rate of denials violates the APA and the Due Process Clause of the Fifth

Amendment to the Constitution. *Id.* at 3–4.

As previously noted, Defendant asserts that judicial review of agency actions under the APA is generally confined to the administrative record. Report at 13. Plaintiffs counter that this is not the typical APA case, and discovery outside of the administrative record is essential. *Id.* at 10. Embedded within this dispute are two central questions. First, in what instances does the APA allow for extra-record review? Second, is this one of those instances?

### III.   DISCUSSION

A leading case in the Second Circuit about the manner in which district courts should conduct judicial reviews of agency actions under the APA is *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7 (2d Cir. 1997). During the hearing conducted in the case at bar, I commented on the "Delphic qualities" of the *Nat'l Audubon* opinion, manifested when the Second Circuit undertook to define and explain what it referred to as "the record rule," stated thus: "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." 132 F.3d at 14 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) and *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

What is there about the Second Circuit's *Nat'l Audubon* opinion that puts one in mind of the Oracle at Delphos? At the outset, and as a general proposition, the opinion confined judicial review in APA cases to the administrative record. The Court of Appeals then immediately declared: "Supplementation of that record upon remand to the agency may be necessary when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it."

*Nat'l Audubon*, 132 F.3d at 14. That seeming breadth of permissible record supplementation is then promptly narrowed when the Second Circuit proceeds to say that "an extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Id.* (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). *Nat'l Audubon* then cautions district courts that such deviations from the record rule are "limited" and ought to be reserved for "only when the administrative record is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all [] consequences of its proposed action." 132 F.3d at 15.

I mean no disrespect in suggesting that these pendulum-like swings justify characterizing *Nat'l Audubon* opinion as "Delphic."[1] There is, however, no lack of clarity about the procedural instructions the Supreme Court gives to district courts asked to review administrative actions. In *Camp*, the Comptroller of the Currency, in the course of denying respondents' application for a certificate authorizing them to organize a new bank in a designated city, stated in part that "the factors in support of the establishment of a new National Bank in this area are not favorable." 411 U.S. at 138–39. Respondents filed an APA action in the district court to review that adverse decision. The entire administrative record was placed before the district court, which granted summary judgment against respondents, holding that "'although the Comptroller may have erred, there is substantial basis for his determination, and . . . it was neither capricious nor arbitrary.'" *Id.*

---

[1] "Delphic: obscure in meaning; ambiguous." Delphic, *Collins English Dictionary,* https://www.collinsdictionary.com/us/dictionary/english/delphic (last visited Mar. 18, 2019).

at 139 (quoting the Court of Appeals' opinion). On appeal, the Fourth Circuit did not reach the merits, holding instead that "the Comptroller's ruling was 'unacceptable' because 'its basis' was not stated with sufficient clarity to permit judicial review." 411 U.S. at 139–40 (same). In those circumstances, the Fourth Circuit remanded the case "for a trial de novo before the District Court," and instructed the District Court "to make its own findings of fact and conclusions of law in order to determine whether the respondents have shown by a preponderance of the evidence that the Comptroller's ruling is capricious or an abuse of discretion." *Id*. at 140.

The Comptroller regarded those instructions by the Fourth Circuit as improvident and petitioned for certiorari before the remand had taken place. The Supreme Court granted certiorari and vacated the Fourth Circuit's judgment. The Court defined the issue in the opening paragraph of a unanimous *per curiam* opinion:

> In its present posture this case presents a narrow, but substantial, question with respect to the proper procedure to be followed when a reviewing court determines that an administrative agency's stated justification does not provide an adequate basis for judicial review.

411 U.S. at 138.

That question of proper procedure is implicated by the case at bar. The instant case is at an early stage. The present disputes relate to discovery. However, the relevance, scope, and form of permissible discovery are defined by the ultimate merits issues. Adapting the Supreme Court's language in *Camp*, a potential core issue in this case is whether the NDRB's "stated justification" (whatever is eventually articulated) for denying discharge upgrades to so high a percentage of proclaimed PTSD and TBI sufferers "provides an adequate basis for judicial review." It is appropriate to consider at this stage of litigation the "proper procedure" this Court must follow under

*Camp* if I conclude at a later stage that the NDRB's justification *does not* provide an adequate basis for the kind of judicial review the *Camp* opinion mandates. That exercise will require a careful analysis of *Camp*.

The Supreme Court reversed the Fourth Circuit in *Camp* because it held that the Court of Appeals should not have directed the District Court to conduct a *de novo* hearing. "[T]he only deficiency suggested in agency action," the Supreme Court observed, "is that the Comptroller inadequately explained his decision," which "is not a deficiency in factfinding procedures such as to warrant the *de novo* hearing ordered in this case." 411 U.S. at 142. Since "[t]he appropriate standard for judicial review" is whether "the Comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" the district court's "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id*. The Court reasoned that if

> there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was not to hold a *de novo* hearing, but to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency action as may prove necessary.

411 U.S. at 142–43. The decisive administrative finding in *Camp* was that "a new bank was an uneconomic venture in light of the banking needs and the banking services already available in the surrounding community." *Id.* at 143. The Court concluded:

> The validity of the Comptroller's action must, therefore, stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration. It is in this context that the Court of Appeals should determine whether

> and to what extent, in the light of the administrative record, further explanation is necessary to a proper assessment of the agency's decision.

*Id*. (citations omitted).

The Supreme Court cited and followed *Camp* in *Florida Power & Light Co. v. Lorion*, which gives similar instructions to district courts in APA cases:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare occasions, is to remand to the agency for additional investigation or explanation. The reviewing court is not *generally* empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such inquiry.

470 U.S. 729, 744 (1985) (emphasis added).

In the case at bar, the parties dispute whether the NDRB's actions with respect to the class plaintiffs' applications for discharge upgrades fall within that general category of APA cases which imposes strict limitations on discovery in aid of judicial review (as Defendant contends), or whether there are special circumstances about this case—the nature and impact of the challenged agency conduct or the injunctive relief prayed for—that require and justify broader discovery (as Plaintiffs contend).

The question is not an easy one. But it would be premature for this Court to answer it at this stage of the litigation. That is because, on either of the rival contentions, the Court must begin its analysis by examining the present administrative records, which is to say, the records generated by the applications, consideration and eventual denials of discharge updates for the two representative

Plaintiffs. The administrative records have not been produced to the Plaintiffs or their counsel and are consequently not before the Court. As the cited Supreme Court and Second Circuit cases hold, a district court asked to review agency action under the APA must first determine whether the administrative record is sufficient to allow judicial evaluation or requires supplementation. That is so, even if one accepts the Defendant's perception of the limitations on discovery in APA cases. It is plain that the Court cannot decide whether the administrative record is adequate when the record itself has not yet been produced.[2]

Moreover, production of the administrative records is necessary to address issues that arise from the present submissions of counsel. Plaintiffs offer four principal arguments to deviate from the record rule: Extra-record discovery is needed because Defendant's challenged conduct is not reflected in the typical administrative record; the nature of Plaintiff's claims necessitate extra-record fact finding; Defendant is biased against veterans with PTSD and related mental health conditions; and the record that Defendant plans to submit to the Court will be incomplete. *See* Doc. 51. All these rationales, aside from the one alleging bias (addressed *infra*), are premised on the assumption that the administrative record *will be* deficient in some way.

However, extra-record discovery is allowed only upon the reviewing court's determination that the administrative record *is* deficient, in part because the completeness of the administrative record guides how limited discovery can proceed. The cases that Plaintiffs cite support this conclusion. For example, *Milanes v. Chertoff*, No. 08-CV-2354 (LMM), 2008 WL 2073420, at *1

---

[2] On the issue of what kind of agency action is in dispute, Defendant argues that the APA does not allow for Plaintiffs' "abstract challenge or broad programmatic attack of an agency's general policies, practices, and procedures." Doc. 53 at 4.

(S.D.N.Y. May 13, 2008), discusses extra-record discovery only *after* an understanding of what the government would produce. In addition, it clarified that the Court has not authorized all discovery and cautioned that any additional discovery would require a reason, such as filling a specific gap in the administrative record. *Id.* at *2. This would doubtlessly require knowing if any gaps in the record existed in the first place. *See also Yakubova v. Chertoff*, No. 06-CV-3203, 2006 WL 6589892, at *4 (E.D.N.Y. Nov. 2, 2006) (authorizing some discovery on a discrete issue); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 559 (9th Cir. 2000) (approving extra-record discovery based upon a conclusion that there was "no evidence in the record" or "[n]othing in the record" to show that the agency considered new information). In the instant case, Defendant needs to produce the administrative record. Only then can the Court determine if extra-record discovery—and how much discovery—is permitted under the APA. Such a decision, at this time and on this minimal record, would be premature.

As for Plaintiffs' bias argument, it does not appear that the APA allows for alleged bias to serve as a basis for going outside of the record.[3] Indeed, Plaintiffs cite no APA cases and instead rely upon Employee Retirement Income Security Act cases, social security adjudications, and Title VII cases. *See* Doc. 51 at 7–10. These types of actions may serve as informative parallels to APA cases, but APA cases have developed a stricter approach. Instead, the APA requires "a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *see also Citizens to Pres. Overton Park*

---

[3] The Court does not agree with Defendant that Plaintiffs have waived this argument by not advancing it in the Rule 26(f) report or at the scheduling conference. *See* Doc. 53 at 5. The Court ordered parties to submit briefings precisely to fully argue the issue.

*v. Volpe*, 401 U.S. 402, 420 (1971). Plaintiffs have not raised a "bad faith" argument, and so the Court declines to explore this issue further. *See* Doc. 54 at 2 n.1.

Even on the limited disclosure contended for by Defendant, there may be gaps within the administrative record. However, the record as it will be produced could also be sufficient. Should there later be a need to supplement it in order to enable judicial review, the Court may order further discovery.

Defendant suggests in his main brief that the Navy "be given 90 days from the Court's decision on this discovery dispute to produce the administrative record." Doc. 52 at 12. Earlier in that brief, Assistant United States Attorney Nelson, appearing on behalf of Defendant, said that "to address the Court's statements" during the hearing on this issue:

> the defendant will prepare the administrative records of the lead plaintiffs and will also, in a separate document, provide relevant policy memoranda, regulations, and other documents, to the extent that these documents might provide background information although they may not be included in the administrative record.

*Id.* at 5 n.1. That is a useful and productive undertaking. I commend counsel. The Court will incorporate that procedure in the Order with which this Memorandum concludes.

I conclude, however, that the suggested time of 90 additional days for this limited production is excessive, given the exigencies of the case and the limited amount of production contemplated. It is not plausible to think that the Navy requires 90 days to locate and produce the NDRB administrative records for these two veterans. During the hearing, the Court benefitted from the telephonic presence and assistance of Lieutenant Commander Jonathan Dowling, "Agency Counsel," who had confirmed in a previous conversation with Mr. Nelson that the Secretary could produce the

full administrative records "within 90 days." Doc. 50 at 24:7–15. It was Mr. Nelson who proposed that amount of time amount to Lt. Cdr. Dowling, *id.*, who presumably would also have answered affirmatively if Mr. Nelson had specified "three years," and whose given answer stopped short of claiming that the Navy would require the full 90 days, an assertion the Court would have questioned if made. Upon consideration, I will enter an Order that will require production of the documents specified on or before May 20, 2019, which is 45 days from the date of the Order.

The Court thinks it right to make clear that the full scope of permissible discovery in this case remains for decision by the Court. That is and remains the underlying question. Nothing in this Memorandum or accompanying Order is intended to decide or intimate the Court's view with respect to the underlying question. The purpose of this Order is to expedite the production of the relevant administrative records of the two lead plaintiffs in this class action. That production will permit the Court to answer the underlying questions about discovery, not answer them.

For the foregoing reasons, the Court makes this Order:

1. Defendant is directed to produce to counsel for Plaintiffs, on or before **May 20, 2019**, the full administrative records of the two lead Plaintiffs in this action relating to the application of those Plaintiffs for discharge upgrades.

2. In addition to the records referred to in Paragraph 1 of this Order, Defendant is directed to produce to counsel for Plaintiffs, on or before **May 20, 2019**, the documents referred to in Defendant's brief, [Doc. 52], at page 5 n.1.

3. If any party wishes any document referred to in this Order to be filed under seal or otherwise held in confidence, the parties are directed to agree upon an appropriate order and submit

it to the Court, or failing agreement, apply to the Court for resolution of the issue.

It is SO ORDERED.

Dated: New Haven, Connecticut
April 5, 2019

                                             */s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge