919 THIRD AVENUE NEW YORK, NY 10022-3908

**JENNER&BLOCK** LLP

May 31, 2019

Susan J. Kohlmann
Tel +1 212 891 1681
SKohlmann@jenner.com

**VIA ECF**

The Honorable Charles S. Haight
United States District Judge
District of Connecticut
141 Church Street
New Haven, CT 06510

Re:   *Manker, et al. v. Spencer*, No. 3:18-cv-372 (CSH)

Dear Judge Haight:

    We represent Plaintiffs in the above-referenced matter. We write to provide the Court with a status update following Defendant's production of the administrative record and supplemental materials (collectively, the "administrative record"), ECF Nos. 56, 58-59, and respectfully to request that the Court lift the stay put in place on December 27, 2018, ECF No. 37, direct the parties to confer on a proposed discovery schedule, and proceed to discovery. Plaintiffs make this request because the administrative record provides an insufficient basis for the Court meaningfully to review and assess Plaintiffs' claims challenging the general course of conduct of the Naval Discharge Review Board ("NDRB") with respect to Navy and Marine Corps veterans suffering from post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), or other related mental health conditions. Accordingly, for the reasons set forth by Plaintiffs in their previous briefing on discovery, ECF Nos. 51, 54, at oral argument on discovery before the Court on February 5, 2019, and below, Plaintiffs seek leave to commence discovery.

    **I.**    **Relevant Background**

    On November 15, 2018, the Court certified this case as a nationwide class action. *See* ECF No. 33. In its class certification ruling, the Court ordered the parties to exchange initial disclosures by December 31, 2018. *Id.* at 21-22. Following the Court's ruling and in advance of the December 31 deadline, the parties conferred and filed their Rule 26(f) Report, which contained a proposed case management plan, though the parties disagreed as to many of its components, such as the appropriate scope of discovery. *See* Report of the Parties' Planning Meeting, ECF No. 36 ("Rule 26(f) Report"). Shortly thereafter, the Court stayed all case deadlines pending resolution of the parties' discovery disagreements. *See* ECF No. 37.

    The Court held a conference on February 5, 2019, at which the parties presented argument on whether discovery was warranted and the appropriate scope of that discovery. *See* ECF No. 49. Following the conference, the parties submitted supplemental briefs regarding the

*Manker, et al. v. Spencer*, No. 3:18-cv-372 (CSH)
May 31, 2019
Page 2

appropriate scope of discovery. *See* ECF Nos. 48, 51-54. To allow the Court to assess whether extra-record discovery would be necessary, Defendant was ordered to produce the full administrative records for Mr. Manker and Mr. Doe, as well as supplemental documents described by defense counsel as "relevant policy memoranda, regulations, and other documents, to the extent that these documents might provide background information although they may not be included in the administrative record." *See* ECF No. 55; ECF No. 52 at 5 n.1. Defendant filed the administrative record on May 20, 2019. *See* ECF Nos. 56, 58-59.

## II. The Administrative Record As Filed Is Insufficient for Meaningful Review and Assessment of Plaintiffs' Claims

The administrative record is both incomplete and insufficient for this Court's meaningful review of Plaintiffs' individual and class claims. The records of two individual class members' adjudications and the small set of mostly publicly available supplemental materials do not and cannot address the heart of Plaintiffs' claims, namely, "whether the NDRB is currently following policy as set forth by the Hagel Memo, and . . . the general procedures governing the NDRB's evaluation of upgrade applications, not individual determinations." Ruling on Pls' Mot. for Class Certification, ECF No. 33 at 20.

First, the records of two individual discharge upgrade adjudications are patently insufficient to enable the Court to evaluate the systemic defects in Defendant's course of conduct alleged in the complaint. Mr. Manker's individual administrative record consists of the NDRB decision, his military records (including his certificate of discharge or "DD 214"), his application for a discharge upgrade, and supporting documents that Mr. Manker himself submitted to the NDRB. The administrative record produced for Mr. Doe similarly consists of his NDRB decision, military records, and the supporting documents Mr. Doe himself submitted to the NDRB.

None of these documents—evidence of two discrete adjudications only—actually sheds light on the agency action challenged. As Plaintiffs have emphasized repeatedly, this case is not a challenge to the outcomes of individual discharge upgrade applications, but rather a challenge to the NDRB's *policies, practices, and procedures* that result in systemic disparities with respect to veterans claiming PTSD, TBI, and related conditions. *See* Compl., ECF No. 1 ¶¶ 169, 171, 179-80, 183-89, 202-09, 212-21, 225-27; Pls' Mem. of Law in Support of Class Certification, ECF No. 12-1 at 14-19; Pls' Mem. of Law in Support of Request for Discovery, ECF No. 51 at 5; *see also* Ruling on Pls' Mot. for Class Certification, ECF No. 33 at 12 ("Plaintiffs' [proposed common] questions challenge the NDRB's *procedures* and standards in place when evaluating applications from PTSD-affected veterans, not the NDRB's denials themselves."). The individual records provide no insight into whether and how the NDRB applied agency directives to evaluate Mr. Manker and Mr. Doe's claims, and therefore do not constitute the "whole record" underlying the NDRB's course of conduct. *See* 5 U.S.C. § 706 ("the court shall review the *whole* record" in evaluating an agency action (emphasis added)). As noted in Plaintiffs' opening discovery brief, the parties' disagreement about what would constitute the complete administrative record itself warrants additional discovery. *See* ECF No. 51 at 10-12. Moreover,

*Manker, et al. v. Spencer*, No. 3:18-cv-372 (CSH)
May 31, 2019
Page 3

even if these documents did constitute the whole administrative record for the individuals Mr. Manker and Mr. Doe, they do not provide any insight into the NDRB's course of conduct with respect to the certified class. *See* ECF No. 51 at 6. Thus, further discovery is necessary.

Second, the supplemental "background" materials Defendant provided as part of the administrative record do not meaningfully add to the information available to the Court and Plaintiffs. These materials almost entirely consist of publicly available documents, several of which are cited in the Complaint. Although they concern the topic of the NDRB's policies and procedures with respect to evaluating veterans' claims of PTSD, TBI, and related mental health conditions, they say nothing about the implementation of those policies and procedures in practice—the very heart of Plaintiffs' claims.

The following are just a few examples of the deficiencies apparent from these background materials—though these are by no means the only ones.

- First, Defendant provided policy memoranda indicating at a high level that the Navy implemented the Hagel and Kurta Memos, but did not provide any materials detailing what steps have been taken to implement these policies or ensure they are followed in practice. *See* AR 953, 960-65.

- Second, apart from a reference in the Woods memorandum to a BCNR training conference at which the Kurta Memo was discussed, Defendant did not provide any relevant training materials or briefing materials, making it impossible to determine what guidance was provided to NDRB members or to evaluate the NDRB's course of conduct based on how employees were advised in practice. *See* AR 966. In fact, Defendant included a list of materials recommended to NDRB staff in their training procedures. *See* AR 970. At least some of the materials on the list contain references to other documents that are crucial to the Plaintiff's case, but are not publicly available. This is further evidence that review cannot be completed on the basis of these limited documents.

- Third, the background materials do not appear to contain any information regarding quality control review or any other internal operating procedures at the NDRB relevant to the claims in this case.

- Fourth, the Woods memorandum indicates that each NDRB panel evaluating a PTSD-related claim includes a physician, clinical psychologist, or psychiatrist when a discharge upgrade applicant claims PTSD, but provides no detail on who those individuals are, how they are chosen, what they are told about how to apply the Hagel Memo and other associated guidance, or how those individuals actually evaluate claims of PTSD, TBI, and related mental health conditions in practice. *See* AR 966.

Finally, Defendant voluntarily compiled these materials, describing them only as documents that "might provide background information." *See* ECF No. 52 at 5 n.1. Defendant does not purport for these materials to answer comprehensively the questions raised by Plaintiffs' claims. More importantly, it is unclear what documents Defendant may have chosen to omit from this compilation. Plaintiffs—and this Court—should not have to rely on Defendant's voluntary compilation of "background information" as the basis for the Court's assessment of its claims.

The administrative record as produced fails to allow for meaningful review of many of Plaintiff's allegations, including, but not limited to, the following:

- The NDRB fails to meaningfully apply—in practice, not just as a matter of policy—the Hagel Memo's mandate to give liberal consideration to claims of PTSD, TBI, and related mental health conditions (*see, e.g.*, Compl. ¶¶ 196, 204, 212, 230, 234, 237, 241);

- The NDRB fails to publish or explain evidentiary standards concerning claims of PTSD, TBI, and related mental health conditions in the context of discharge upgrade applications (*see, e.g.*, *id.* ¶¶ 185, 207-08, 213, 216-17); and

- The NDRB systematically fails properly to consider arguments made by individuals suffering from PTSD, TBI, and other related mental health conditions, leading to near-blanket denials of discharge upgrade applications for veterans with those conditions. *See, e.g.*, *id.* ¶¶ 171, 218.

Rather than rely on the records of two individual class members and a smattering of other materials, Plaintiffs are entitled to proceed to discovery, as the Court "simply cannot evaluate the challenged action on the basis of the record before it." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power & Light Co.*, 470 U.S. 729, 744 (1985)). To enable the Court to evaluate fully the NDRB's course of conduct and Plaintiffs' claims, further discovery is necessary, such as interrogatories and document requests regarding Defendant's practices related to discharge upgrade applications and implementation of agency guidance; depositions of individuals involved with the NDRB's day-to-day practices with respect to claims of PTSD, TBI, and related mental health conditions; training of NDRB personnel and quality control review; and expert discovery on the technical aspects of this case, such as the statistical landscape of NDRB decisions and the role PTSD and related conditions play in those decisions.

### III. The Court Should Lift the Stay and Enter a Scheduling Order Governing Further Discovery

Accordingly, and for the reasons discussed in Plaintiffs' discovery briefing and at the February 5, 2019 scheduling conference, Plaintiffs respectfully request that the Court lift the stay

*Manker, et al. v. Spencer*, No. 3:18-cv-372 (CSH)
May 31, 2019
Page 5

currently in place and direct the parties to meet and confer on a proposed scheduling order governing the scope and timeline of further discovery for submission to the Court.[1]

Respectfully,

/s/ Susan J. Kohlmann

| | |
|---|---|
| Jazmine Buckley, Law Student Intern* | Susan J. Kohlmann, *pro hac vice* |
| Samantha G. Peltz, Law Student Intern | Jeremy M. Creelan, *pro hac vice* |
| Jonathan B. Petkun, Law Student Intern | Jeremy H. Ershow, *pro hac vice* |
| Jared Quigley, Law Student Intern* | Jessica A. Martinez, *pro hac vice* |
| Westley A. Resendes, Law Student Intern | Nicole Taykhman, *pro hac vice* |
| Renée A. Burbank, Supervising Attorney, ct30669 | Jenner & Block LLP |
| Michael J. Wishnie, Supervising Attorney, ct27221 | 919 Third Avenue |
| Veterans Legal Services Clinic | New York, NY 10022-3908 |
| Jerome N. Frank Legal Services Org. | Tel: (212) 891-1678 |
| Yale Law School† | SKohlmann@jenner.com |
| P.O. Box 209090 | |
| New Haven, CT 06520-9090 | |
| Tel: (203) 432-4800 | |
| michael.wishnie@ylsclinics.org | |

* Applications for law student appearances forthcoming.
† This letter does not purport to state the views of Yale Law School, if any.

---

[1] Defendant originally contemplated filing a motion to dismiss by January 15, 2019 (*see* Rule 26(f) Report, ECF No. 36 at 8) and has now had over four additional months to answer or otherwise respond to the complaint. In the interest of moving this case forward, Plaintiffs therefore submit that an expeditious timeline for Defendant's response is warranted.