

U.S. Department of Justice

*United States Attorney*
*District of Connecticut*

_____

| | |
|---|---|
| *Connecticut Financial Center* | *(203) 821-3700* |
| *157 Church Street, 25th Floor* | *Fax (203) 773-5373* |
| *New Haven, Connecticut  06510* | *www.usdoj.gov/usao/ct* |

June 18, 2019

The Honorable Charles S. Haight, Jr.
United States District Judge for the District of Connecticut
Richard C. Lee United States Court House
141 Church Street
New Haven, Connecticut 06510

**Re:**   *Manker, et al. v. Spencer*, No. 3:18-cv-372 (CSH)

Dear Judge Haight:

      In reply to Plaintiffs' letter of May 31, the Defendant respectfully requests the Court either deny Plaintiffs' request for extra-record discovery or to stay Plaintiffs' demand for extra-record discovery until after the Court rules on Defendant's anticipated Motion to Dismiss and/or for Remand for *de novo* adjudication as authorized by the Kurta Memo.

      Plaintiffs' claims revolve around the central issue as to "when exactly veterans were legally entitled to a more generous review standard" under the Hagel Memo at the Naval Discharge Review Board (NDRB).  ECF No. 33 at 10.  Extra-record discovery is not necessary to address this common question that served as the primary basis for class certification.  As detailed below, the administrative record demonstrates that the Hagel Memo applied to the NDRB after it reviewed the named Plaintiffs' petitions to correct their records.  As a result, many of the Plaintiffs' discovery requests are moot or simply not relevant.  Further, the discovery proposed by the Plaintiffs exceeds the bounds of review under the Administrative Procedure Act (APA).  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  If there are any other deficiencies in the record, then the authorized course of action under the APA is remand for supplementation of the record.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  In sum, to address the issue as to "whether the NDRB is currently following policy as set forth by the Hagel Memo" (ECF No. 33 at 20; ECF No.61 at 2), this Court should remand this case to the NDRB for *de novo* adjudication, as envisioned by the Kurta Memo, rather than start broad discovery generally unauthorized under the APA.

      **I.**     **Relevant Background**

On September 3, 2014, Secretary of Defense Chuck Hagel issued a memo that addressed "petitions of Vietnam Veterans to Military Department Boards for Correction of Military/Naval Records (BCM/NR) for the purpose of upgrading their discharges based on claims of previously unrecognized Post Traumatic Stress Disorder (PTSD)."  AR 949.  The Hagel Memo provided that "BCM/NRs will

1

fully and carefully consider every petition based on PTSD brought by a Veteran." *Id*. The supplemental guidance required BCM/NRs to give "liberal consideration" to "petitions for changes in characterization of service" related to PTSD. AR 951. Under Secretary of the Navy Thomas Hicks sent a compliance memo to the Secretary of Defense confirming that the "Board for Correction of Naval Records implemented the guidance contained in" the Hagel Memo. *Id*. at 953.

In November 2016, the NDRB considered the named Plaintiffs' petitions for changes to their characterization of service and declined to upgrade their discharges. *Id.* at 4-10, 169-172. In his petition to NDRB, Plaintiff Manker argued for the application of the Hagel Memo based on consistency, but specifically "acknowledged that the direct recipient of this memo—the Boards for Correction of Military Records (BCMRs)— *are an altogether separate and distinct entity from the Naval Discharge Review Board* (NDRB)." *Id.* at 51 (emphasis added).

One month later, the President signed into law the National Defense Authorization Act for Fiscal Year 2017, which amended 10 U.S.C. § 1553 and required Discharge Review Boards ("DRBs") to review with "liberal consideration" a veteran's claim "that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge of a lesser characterization." 114 Pub. L. 328 § 535 (Dec. 23, 2016).

On August 25, 2017, Undersecretary of Defense Anthony Kurta issued a memo that provided guidance clarifying and expanding on the Hagel Memo. AR 955-959. For the first time, the Kurta Memo specifically stated that the "supplemental guidance provided by then-Secretary Hagel on September 3, 2014, as clarified in this guidance, also applies to both BCM/NRs and DRBs." *Id.* at 958. The Kurta Memo required the Service Secretaries to "direct *immediate implementation* of this guidance and report on compliance with this guidance in 45 days." *Id.* at 955 (emphasis added). On September 18, 2017, Director of the Navy Council of Review Boards J. A. Riehl directed the NDRB to apply the Kurta Memo guidance. *Id.* at 960. On September 22, 2017, Acting Assistant Secretary of the Navy Robert Woods notified the Undersecretary of Defense for Personnel and Readiness that both the BCNR and NDRB were in compliance with the Kurta Memo. *Id.* at 966.

## II. The administrative record is sufficient for the Court to meaningfully review the Navy's actions

### a. APA claims are generally limited to the administrative record

A "court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Florida Power*, 470 U.S. at 743-44; *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "Supplementation of that record upon remand to the agency may be necessary when the record does not support the agency action, when the agency has not considered all relevant factors, or when the reviewing court simply cannot evaluate the challenged action on the basis of the record before it." *Id.* (citing *Florida Power*, 470 U.S. at 744). An "extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decision makers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Id.*

### b. The Hagel Memo did not apply to the NDRB at the time it reviewed the named Plaintiffs' petitions

Under the plain language of the Hagel and Kurta memos, the Hagel Memo did not apply to the named Plaintiffs when their petitions were considered by the NDRB—a fact acknowledged by Plaintiff Manker. *See* AR 51. Because many of the Plaintiffs' claims are premised on the Hagel Memo applying to the named Plaintiffs when the NDRB considered their petitions, their claims are moot.

Originally, the Hagel Memo only applied to the BCM/NRs, and not the DRBs. It explicitly mentioned only the BCM/NRs. *Id.* at 949. Notably, the DRBs lacked jurisdiction to address petitions submitted by Vietnam veterans, the class of veterans who served as a primary impetus for the issuance of the Hagel Memo. 10 U.S.C.S. § 1553(a) ("A motion or request for review must be made within 15 years after the date of the discharge or dismissal."). Significantly, the Navy interpreted the Hagel Memo to only apply to the BCNR as the Hicks Memo makes clear. AR 953.

In contrast, the Kurta Memo applies to both the BCM/NRs and the DRBs. It states explicitly that "[t]his guidance applies to both the BCM/NRs and DRBs." *Id.* at 958. Following the Kurta Memo's guidance, petitioners previously denied an upgrade by the NDRB can apply again to the NDRB for "de novo reconsideration of petitions previously decided without the benefit of all applicable supplemental guidance." *Id.* Thus, while the NDRB decided the Plaintiffs' petitions before the Kurta Memo was issued, the Plaintiffs can still apply to the NDRB (or the BCNR if they so choose) for *de novo* review applying the Kurta Memo's guidance.

In addition to the above, there are several reasons why the Hagel Memo did not originally apply to the NDRB. First, as the Plaintiffs themselves acknowledge, "the direct recipient of this memo—the [BCMRs]—are an altogether separate and distinct entity from the [DRBs]. BCMRs are created pursuant to 10 U.S.C. § 1552, while the NDRB derives its power from 10 U.S.C. § 1553." *Id.* at 51. Second, interpreting the Hagel Memo to include the NDRB renders part of the Kurta Memo superfluous and confusing. The Kurta Memo expanded "[t]he supplemental guidance provided by then-Secretary Hagel . . . to both BCM/NRs and DRBs." AR 958. One of its reasons for doing so was that "there should be greater uniformity amongst the review boards." *Id.* at 955. The Kurta Memo also directed the Service Secretaries to "direct immediate implementation" of the Kurta Memo's guidance. *Id.* Finding that the Hagel Memo originally did, in fact, apply to the DRBs, would render the Kurta Memo's statements superfluous and illogical. *See, e.g., Ransom v. FIA Card Services*, 562 U.S. 61, 74 (2011) (ruling against the Plaintiff in part because his interpretation would have rendered superfluous the word "applicable.").

In his brief to the NDRB, the Plaintiff argued "because applicants to the NDRB may subsequently appeal to the BCMR, this memo's guidance 'to ensure consistency across the Services' should also apply to the NDRB." *Id.* at 51. Not only does this interpretation warp the plain language of the Hagel Memo discussed above, but also it fails to defer to the military's interpretation of its own policy. Military decisions are entitled to some deference. *See Orloff v. Willoughby*, 345 U.S. 83, 94 (1953). The discretion to create personnel and discharge procedure policy is key to what the Supreme Court termed "a specialized community governed by a separate discipline . . . ." *Id.* As such, "[o]rderly government requires that the judiciary be . . . scrupulous not to interfere with legitimate Army matters . . . ." *Id.* Furthermore, courts review agency interpretations of their own regulations under the "clearly

3

erroneous" standard of review. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). The instant case clearly fails to meet this high bar.

Finally, the Court notes that there may have been some "internal confusion" as to whether the Hagel Memo applied to the NDRB. ECF No. 33 at 10. The NDRB cited the Hagel Memo in the case of the named Plaintiffs, and the Woods Memo indicated in 2017 that "both boards [BCNR and NDRB] have closely scrutinized all applications of individuals since the implementation of the Hagel Memo . . . ." AR 966. Neither statements, however, show that the Navy was interpreting the Hagel Memo to apply to the NDRB. At most they show a heightened awareness of PTSD across the agency in light of Secretary Hagel's emphasis on it in the context of the BCNR. They should not detract from the clear language of the Hagel and Kurta Memos that together show the DRBs were not required to apply the Hagel Memo guidance until 2017.

### c. The administrative record is sufficient to analyze the questions that the Plaintiffs asserted were common to the class

The Defendant provided documents sufficient to analyze the five questions that Plaintiffs asserted were common to the class. The Plaintiffs disagree. First, the Plaintiffs argue that the Defendant may have violated the APA by not following the Navy's own rules and procedures, specifically the Hagel Memo. ECF No. 12 at 12-13; *see also* ECF No. 61 at 4. As articulated above, the Hagel Memo did not apply to the NDRB until the issuance of the Kurta Memo which occurred *after* the NDRB reviewed the named Plaintiffs' petitions. The fact the Hagel Memo did not originally apply to the NDRB renders many of the Plaintiffs' discovery requests moot and unnecessary due to a lack of relevance.

Nonetheless, the Defendant provided sufficient documentation to analyze the Plaintiffs' first question as to how the Navy was complying with the Hagel and Kurta Memos. The Defendant provided the Hicks Memo which indicates the steps the Defendant took or planned to take for implementing the Hagel Memo guidance at the BCNR. *See* AR 953. The Hicks Memo indicated "Board members and supporting staff were provided copies of the [Hagel Memo] and briefed on its application to cases," and further stated "guidance contained in the [Hagel Memo] will be incorporated in the revision of SECNAVINST 5420.193" – the governing instruction for the BCNR. *Id.* Furthermore, the Defendant provided the Riehl Policy Letter which instructed the NDRB to implement the Kurta Memo's guidance (*Id.* at 960), and also provided the Woods Compliance Memo which articulated how the Navy was in compliance with the Kurta Memo (*Id.* at 966).

Second, the Plaintiffs question if the Defendant provided sufficient material to NDRB petitioners so that they could prepare successful applications. ECF No. 12-1 at 13; *see also* ECF No. 61 at 4. The Defendant provided information on this question in the administrative record, including the Kurta Memo which detailed instructions so that "veterans will be better informed about how to achieve relief in these types of cases," (AR 961), and also provided SECNAVINST 5420.174D (AR 1024) which "provides an overview of how evidence and testimony is generally considered." ECF No. 19 at 20. Indeed, these documents speak directly to the Plaintiffs' question.

Third, the Plaintiffs question if the Defendant's failure to maintain records important to adjudication of the class members violated the APA. ECF No. 12-1 at 13. No documents were provided on this point because, as previously noted, "Plaintiffs have offered no evidence that Defendant

frequently failed to maintain records across the proposed class or that such failure, if true is even unlawful given the varying retention policies for different types of records." ECF No. 19 at 20.

Fourth, the Plaintiffs ask if the Defendant's practice of presuming regularity in government affairs violates the APA, given evidence of irregularities in mental health treatment. ECF No. 12-1 at 13. The Kurta Memo, which the Defendant provided, "sought to correct the irregularities in how mental health treatment was afforded to veterans of various conflicts over time." ECF No. 19 at 21. The Defendant also included the Riehl Policy Letter, which directed the NDRB to apply Kurta Memo guidance. *See* AR 960. Together, these documents assist the Plaintiffs and the Court in analyzing this question.

Fifth, the Plaintiffs ask if the Defendant has an institutional bias or secret policy that results in discrimination against the class members in violation of the APA. ECF No. 12-1 at 13-14. While the Defendant provided multiple document to illuminate what constitutes the Navy's policy in regard to NDRBs (*See, e.g.,* AR 949; AR 953; AR 955; AR 960), as this Court noted, "it does not appear that the APA allows for alleged bias to serve as a basis for going outside of the record." ECF No. 55 at 10.

### III. The Plaintiffs' requests for discovery not only lack precedent, but also cross the line into "wholesale" policy analysis

The Plaintiffs' discovery requests detailed in their May 31, 2019 letter push beyond administrative review into full discovery and policy analysis unauthorized by the APA. Deviations from the administrative record must be "limited" and reserved for "when the administrative record is *so* inadequate as to prevent the reviewing court from effectively determining whether the agency considered all . . . consequences of its proposed action." *Nat'l Audubon Soc'y*, 132 F.3d at 15 (emphasis added). Furthermore, an APA challenge must be tied directly to a "discrete action." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). It is inappropriate to launch a "broad programmatic attack" on agency practice. *Id.* at 56. This is because 1) the APA explicitly limits actions challengeable (*see* 5 U.S.C. §§ 551(4), (6), (10), (11)) and 2) that "the offices of the Department or the halls of Congress [are] where programmatic improvements are normally made," not "by court decree." *See Lujan*, 497 U.S. at 891.[1]

The Plaintiffs ask for the type of broad policy change foreclosed by *Lujan*. In *Lujan*, the Supreme Court ruled that, because the Plaintiff's challenge amounted to "wholesale" policy analysis, it was not of "manageable proportions" and therefore inappropriate. *See id.* ("[r]espondent alleges that violation of the law is rampant within this program -- failure to revise land use plans in proper fashion, failure to submit certain recommendations to Congress, failure to consider multiple use, inordinate focus upon mineral exploitation, failure to provide required public notice, failure to provide adequate

---

[1] Plaintiffs fail to recognize that this is exactly what occurred in this case. First, Congress made the "liberal consideration" standard under the Hagel Memo applicable to the DRBs. 10 U.S.C. § 1553(d)(3). Second, as a result of public feedback and an internal review, the DoD issued the Kurta Memo that made programmatic improvements to the discharge upgrade process. AR 955. These improvements included making the Hagel Memo applicable to the DRBs and giving additional guidance that provided for an even more favorable review for veterans. *Id*. at 955-959. Instead of seeking relief that the DoD afforded to veterans like the named Plaintiffs, the Plaintiffs want to the Court to wind back the clock and make the Hagel Memo applicable to their NDRB petitions before it was even issued.

environmental impact statements."). Similarly, the current Plaintiffs seek broad review of NDRB "policies, practices, and procedures." *See* ECF No. 61 at 2 (emphasis omitted). The Plaintiffs seek review not just to assess the discrete question if the NDRB failed to comply with Hagel Memo guidance, but also to assess what kind of quality control the NDRB practices, how the NDRB constitutes its reviewing panels, and also what training the panelists receive. *See id.* at 3. In fact, the plaintiffs requested more information on the NDRB training reading list even though the Defendant provided *every* document listed under the reading list section marked "PTSD/TBI/MST/MENTAL HEALTH" (AR 969). *See* ECF No. 61 at 3 ("[a]t least some of the materials on the [training reading] list . . . are crucial to the Plaintiff's case, but are not publicly available." *Id.*). From this request, the necessary inference is either that the Plaintiffs contend the Defendant has "secret" training procedures (investigation into which the court already foreclosed (*see* ECF No. 55 at 10)), or that the Plaintiffs' investigation is broader than the discrete questions posed for class certification.

### IV. In the alternative, the correct course is to remand to the agency for further adjudication

Even if the court were to find the Plaintiffs requests lie within APA boundaries, ordering discovery outside of the administrative record does not follow settled case law that recommends a remand to the agency. Typically, "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Consequently, if the court finds that the record is insufficient to answer the Plaintiffs' questions, it is natural that the court remand the case to the Navy.

In their motion for discovery, Plaintiffs cite case law that allows extra-record discovery within the ambit of the APA. However, the cases Plaintiffs cite show the exception that proves the rule. Extra-record discovery may be allowed only when the Plaintiffs challenge an agency's course of conduct that is not captured in a discrete act, such as agency delay. *See, e.g., Milanes v. Chertoff*, No. 08 Civ. 2354 (LMM), 2008 U.S. Dist. LEXIS 39218, at *5 (S.D.N.Y. May 13, 2008) (ordering extra-record discovery "since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply a course of conduct, after-the-event justifications for which may need to be explored by Plaintiffs." *Id.*); *Yakubova v. Chertoff*, No. 06 CV 3203 (ERK) (RLM), 2006 U.S. Dist. LEXIS 97655, at *8-12 (E.D.N.Y. Nov. 2, 2006) (ordering extra-record discovery because insufficient information existed in the record to analyze Plaintiffs' claims of inordinate INS naturalization application delay). Unlike in *Milanes* and *Yakubova*, Plaintiffs here raise questions that the administrative record can answer. As Plaintiffs write, the "heart" of the claim is "whether the NDRB is currently following policy as set forth by the Hagel Memo, and . . . the general procedures governing the NDRB's evaluation of upgrade applications . . . ." ECF No. 61 at 2; *see also* ECF No. 33 at 13 (Plaintiffs "are challenging the general policies that allegedly disadvantage the proposed class members' applications . . . ." *Id.*). The "heart" of the Plaintiff's complaint concerns compliance with a *specific policy that can be ascertained through the administrative record*. But to do so, the NDRB must first consider the named Plaintiff's petitions for *de novo* adjudication with the full benefit of the Hagel and Kurta Memos because, as noted above, the memos did not apply to the NDRB at the time it adjudicated the named Plaintiffs' petitions. Then, and only then, can the Court meaningfully review whether the NDRB is currently complying with those policies based on the administrative record. Thus, remand is the most appropriate course of action if the Court believes the record is deficient.

For the aforementioned reasons, the Defendant respectfully asks the Court to either deny Plaintiffs' request for extra-record discovery or stay the Plaintiffs request for extra-record discovery until after the Court rules on Defendant's anticipated Motion to Dismiss and/or for Remand for *de novo* adjudication as authorized by the Kurta Memo.

          JOHN H. DURHAM
          UNITED STATES ATTORNEY

          /S/ David C. Nelson
          David C. Nelson
          Assistant U.S. Attorney
          Jonathan Dowling
          Lt. Commander, U.S. Navy
          Samuel Rebo
          Legal Intern