## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYSON MANKER, on behalf of himself and all others similarly situated, and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS, on behalf of itself, its members, and all others similarly situated, | No. 3:18-cv-00372-CSH |
| *Plaintiffs*, | July 26, 2019 |
| v. | |
| RICHARD V. SPENCER, Secretary of the Navy, | |
| *Defendant*. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR VOLUNTARY REMAND

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................... 2

II.     REGULATORY FRAMEWORK ............................................................................... 4

    A.      Boards for Correction of Military/Naval Records and Discharge Review Boards....4

    B.      The Hagel Memo and the Evolution of the Liberal Consideration Standard ........... 5

III.    FACTUAL AND PROCEDURAL HISTORY .......................................................... 9

    A.      Plaintiffs are Separated for Misconduct.................................................................9

    B.      Plaintiffs Apply to the Navy Discharge Review Board10The      Naval      Discharge
             Review Board

    C.      The Present Complaint ...................................................................................... 12

IV.     STANDARD OF REVIEW ....................................................................................... 12

    A.      Motion to Dismiss Pursuant to Rule 12(b)(1) ...................................................... 12

    B.      Motion to Dismiss Pursuant to Rule 12(b)(6) ...................................................... 13

V.      ARGUMENT............................................................................................................. 13

    A.      The Court Lacks Jurisdiction ............................................................................... 13

          1.      Plaintiffs' Claims are Nonjusticiable ...................................................... 14

          2.      A Claim Based on the Navy's Alleged Failure to Follow
              Regulations Must Be Exhausted .............................................................. 17

          3.      Plaintiffs Have Not Sought Review of a Civilian Review
              Board Decision ........................................................................................20

          4.      Plaintiffs' Claims Concerning the Application of the Hagel
              Memo to Discharge Review Boards Are Moot........................................22

          5.      Plaintiffs Lack Standing to Launch a Broad Programmatic
              Challenge Against the Navy Discharge Review Board ...........................23

    B.      Plaintiffs Fail to State a Claim Concerning
        the Application of the Hagel Memo.................................................................... 26

    C.      Voluntary Remand is Appropriate ......................................................................22

          1.      Remand as a Remedy .............................................................................. 29

          2.      Voluntary Remand...................................................................................30

VI.     CONCLUSION .......................................................................................................... 33

Defendant Richard V. Spencer respectfully submits this memorandum of law in support of his motion to dismiss under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, or in the alternative, for voluntary remand of this matter to the Navy for further administrative action.

## I.    PRELIMINARY STATEMENT

Plaintiffs Tyson Manker, John Doe, and the National Veterans Council for Legal Redress challenge decisions by the Naval Discharge Review Board ("NDRB") under the Administrative Procedure Act ("the APA"). Plaintiffs claim that the NDRB violated the APA because it did not review their petitions in accordance with a memorandum issued by then Secretary of Defense Charles Hagel in September 2014. AR 0940 ("Hagel Memo"). Among other requirements, the Hagel Memo required the Boards for the Correction of Military/Naval Records to give liberal consideration when reviewing petitions from veterans who allege that their discharges were impacted by Post-Traumatic Stress Disorder ("PTSD") and PTSD-related conditions. AR 0951.

The Defendant requests that the Court dismiss the Plaintiffs' claims because this Court lacks jurisdiction and because Plaintiffs fail to state a claim for which relief can be granted.

As a threshold matter, the Court lacks jurisdiction to review Plaintiffs' claims for five reasons. First, the Plaintiffs' claims are nonjusticiable. Plaintiffs challenge their discharges and their characterizations of service, which are not reviewable under the intramilitary immunity doctrine. Second, to the extent that Plaintiffs challenge the NDRB's failure to follow Department of Defense ("DoD") and Navy regulations, they must first exhaust their administrative remedies before invoking this Court's jurisdiction. Third, Plaintiffs may only seek judicial review under the APA for an adverse decision by the service's civilian review board, but Plaintiffs did not seek review by the civilian review board. Fourth, the Plaintiffs' claims are moot. After the NDRB considered Plaintiffs' petitions, Under Secretary of Defense Anthony Kurta issued a memorandum that

explicitly made the Hagel Memo applicable to discharge review boards.[1]  AR 0955.  And lastly, Plaintiffs lack standing to launch a broad programmatic attack against the NDRB under the APA.

More importantly, this case should be dismissed because Plaintiffs fail to state a claim for which relief can be granted.  All five counts asserted by the Plaintiffs rest on their incorrect legal conclusion that the Hagel Memo applied to the NDRB when their petitions were considered.  This, unfortunately for the Plaintiffs, was not the case.  Before DoD issued the Kurta Memo in 2017, the Hagel Memo only applied to the Boards for Correction of Military/Naval Records.  Because Plaintiffs' claims rest on an incorrect legal conclusion, this Court cannot grant them relief.

In the alternative, the Defendant requests that the Court remand this matter to the Navy for further administrative action.  *See Fla. Power & Light v. Lorion*, 470 U.S. 729, 744 (1985).  A remand back to the agency is appropriate for two reasons.  First, the Navy already implemented the primary relief that the Plaintiffs seek.  In accordance with the Kurta Memo, the Hagel Memo now applies to the NDRB.  Second, a remand would allow the Navy to address other issues raised by the Plaintiffs concerning the NDRB's decisions.

Should Plaintiffs prevail on the claims they currently assert, their relief would most certainly be a remand to the Navy. Therefore, it would be more efficient and a productive use of judicial resources for the Court to remand this action so that the NDRB can apply both the Hagel Memo and the Kurta Memo.  After the NDRB issues the new decisions, the Court can lift the stay and issue a schedule for the parties to brief any remaining issues including whether Plaintiffs must exhaust their administrative remedies.  If the Navy decides in the Plaintiffs' favor and grants

---

[1] Just after the NDRB considered Plaintiffs' petitions, the President signed into law an amendment that required discharge review boards to effectively apply the "liberal consideration" standard under the Hagel Memo.  *See* National Defense Authorization Act for Fiscal Year 2017, 114 P.L. 328, § 535.

them the relief they seek, then the Court can dismiss the case.

## II.     REGULATORY FRAMEWORK

### A. Boards for Correction of Military/Naval Records and Discharge Review Boards

Congress created a statutory framework of administrative boards to adjudicate petitions by current or former military members. *See* 10 U.S.C. §§ 1552, 1553, 1554, 1554a. Relevant to the claims currently before the Court, there are two boards that require further elaboration – the Boards for Correction of Military/Naval Records ("BCM/NRs") under 10 U.S.C. § 1552 and the Discharge Review Boards ("DRBs") under 10 U.SC. § 1553. Under 10 U.SC. § 1052, Congress authorized military Secretaries, acting through a civilian board, to "correct any military record" when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). With 10 U.S.C. § 1553, Congress directed the military Secretaries to establish DRBs "to review the discharge or dismissal [] of any former member of any member of the armed force" for the purpose of changing such discharge or dismissal. 10 U.S.C. § 1553(a).

Recognizing the clear distinction between these two different statutory authorities, DoD has established minimum requirements for both BCM/NRs and DRBs. DoD Directive 1332.41 (March 8, 2004) (Exhibit A).[2] DoD requires that both "boards consider applications individually and fashion relief appropriate to the facts and circumstances of each case." *Id*. at ¶ 3.2.1. Furthermore, with DoD Instruction 1332.28, DoD established an entirely separate instruction that addresses the procedures and standards for DRBs. AR 0972.

In accordance with this statutory and regulatory authority, the Navy has established the Board for Correction of Naval Records ("BCNR"), 32 C.F.R. Part 723, and the Navy Discharge

---

[2] This publicly available DoD Directive was not included in the administrative record, but is attached as Exhibit A for the convenience of the Court. It is also located online at https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/133241p.pdf

Review Board, ("NDRB"), 32 C.F.R. Part 724. The BCNR's function is to determine "the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, [and] to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2(b). The BCNR, which is generally composed of three-member panel of rotating civilians, is the highest level of administrative review within the Department of the Navy. 32 C.F.R. § 723.2. The BCNR can review an NDRB decision and provide further relief. *Id*. The BCNR requires exhaustion of relief before the NDRB before seeking the same relief at the BCNR. 32 C.F.R. § 723.3(c)(4). In contrast, the NDRB, which is composed of five Navy or Marine Corps officers, reviews petitions seeking changes to discharges and dismissals. 32 C.F.R. §§ 724.202, 724.701.

**B. The Hagel Memo and the Evolution of the Liberal Consideration Standard**

On September 3, 2014, then Secretary of Defense Charles Hagel issued a memorandum entitled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder." AR 0949 ("Hagel Memo"). The Hagel Memo began by acknowledging that "attention has been focused upon the petitions of Vietnam Veterans to Military Department Boards for Correction of Military/Naval Records (BCM/NR) for the purposes of upgrading their discharges based on claims of previously unrecognized Post Traumatic Stress Disorder (PTSD)." *Id*. For the purpose of ensuring consistency across the services, the Hagel Memo provided "supplemental guidance for the BCM/NRs on these applications." *Id*. Under this guidance, BCM/NRs were required to give liberal consideration for petitions submitted by veterans who asserted that PTSD or PTSD-related conditions impacted their discharge and/or characterization of service. AR 0951. Special consideration would be given to those petitions where the Department of Veterans Affairs determined that PTSD or PTSD-related conditions were connected to military service. *Id*. The Hagel

Memo also directed the BCM/NR to timely consider such petitions and to liberally waive any time limits that may have prevented their review.  *Id.*

In response to the Hagel Memo, then-Undersecretary of the Navy Thomas Hicks sent a compliance memo to the Secretary of Defense confirming that the "Board for Correction of Naval Records implemented the guidance contained in" the Hagel Memo."  AR 0953.  No such memo was issued for the NDRB.

On February 24, 2016, Principle Deputy Under Secretary of Defense Brad Carson issued supplemental guidance directing the BCM/NRs to waive the imposition of the statute of limitations for cases involving PTSD or related conditions.  AR 954 ("Carson Memo").  The Carson Memo also directed that "cases considered previously, either by Discharge Review Boards, or by BCMRs or the BCNR, but without the benefit of the Supplemental Guidance, shall be, upon petition, granted de novo review utilizing the Supplemental Guidance."  *Id.*  Just as with the Hagel Memo, the Carson Memo's subject line addressed only petitions submitted to the BCM/NRs.  *Id.*

In December 2016, the President signed into law the National Defense Authorization Act for Fiscal Year 2017, which amended 10 U.S.C. § 1553 and required DRBs to review with "liberal consideration" a veteran's claim "that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge of a lesser characterization." 114 Pub. L. 328 § 535 (Dec. 23, 2016) (*adding* 10 U.S.C. § 1553(d)(3)(A)(i)-(ii))).

On August 25, 2017, Undersecretary of Defense Anthony Kurta issued a memo that provided guidance clarifying and expanding upon the Hagel Memo. AR 0955-0959 ("Kurta Memo").  The Kurta Memo was based on an internal review and "feedback from the public on our policies and how we could improve the discharge review process."  *Id.*  The Kurta Memo explained that "there should be greater uniformity amongst the review boards and veterans will be better informed about how to achieve relief in these types of cases."  *Id.*  Significantly, *for the first time*,

6

the Kurta Memo stated that the "supplemental guidance provided by then-Secretary Hagel on September 3, 2014, as clarified in this guidance, also applies to both BCM/NRs *and DRBs*." AR 0958 (emphasis added).  Ensuring that all veterans would benefit from this guidance, the Kurta Memo also added that the Carson Memo "applies in full to BCM/NRs but *also applies to DRBs* with regards to de novo reconsideration of petitions previously decided without the benefit of all applicable supplemental guidance." *Id.* (emphasis added).  This meant that veterans, like the named Plaintiffs, could seek *de novo* reconsideration by the NDRB with the benefit of the guidance provided in both the Hagel Memo and the Kurta Memo.

The Kurta memo also provided amplifying and favorable guidance on the concept of liberal consideration when considering applications from veterans with PTSD and related conditions:

a.   Some circumstances require greater leniency and excusal from normal evidentiary burdens.

b.  It is unreasonable to expect the same level of proof for injustices committed years ago when TBI; mental health conditions, such as PTSD; […] were far less understood than they are today.

[…]

d.  Mental health conditions, including PTSD; TBI; […] impact veterans in many intimate ways, are often undiagnosed or diagnosed years afterwards, and are frequently unreported.

e.  Mental health conditions, including PTSD; TBI; […] inherently affect one's behavior and choices causing veterans to think and behave differently than might otherwise be expected.

f.   Reviews involving diagnosed, undiagnosed, or misdiagnosed TBI or mental health conditions, such as PTSD, […] should not condition relief on the existence of evidence that would be unreasonable or unlikely under the specific circumstances of the cases.

g.  Veterans with mental health conditions, including PTSD; TBI; […] may have difficulty presenting a thorough appeal for relief because of how the asserted condition or experience has impacted the veteran's life.

h.  An Honorable discharge characterization does not require flawless military service.  Many veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct.

i.  The relative severity of some misconduct can change over time, thereby changing the relative weight of the misconduct to the mitigating evidence in a case. For example, marijuana use is still unlawful in the military but it is now legal in some states and it may be viewed, in the context of mitigating evidence, as less severe today than it was decades ago.

j.  Service members diagnosed with mental health conditions, included PTSD; TBI; […] receive heightened screening today to ensure that causal relationship of possible symptoms and discharge basis if fully considered, and characterization of service is appropriate. Veterans discharged under prior procedures, or before verifiable diagnosis, may not have suffered an error because the separation authority was unaware of their condition or experience at the time of discharge. However, when compared to similarly situated individuals under today's standards, they may be the victim of injustice because commanders fully informed of such conditions and causal relationships today may opt for a less prejudicial discharge to ensure the veteran retains certain benefits, such as medical care.

k.  Liberal consideration does not mandate an upgrade.  Relief may be appropriate, however, for minor misconduct commonly associated with mental health conditions, including PTSD; TBI; […] and some significant misconduct sufficiently justified or outweighed by the facts and circumstances.

AR 958-959.

On September 18, 2017, J. A. Riehl, Director, Secretary of the Navy Council of Review Boards, directed the NDRB to "ensure implementation of the guidance" in the Kurta Memo to all cases pending as of that same date and those cases received in the future.  AR 0960 ("Riehl Policy Letter").  The Riehl Policy Letter further directed that the Kurta Memo "will also be included in the NDRB training curriculum to ensure all board members are familiar with and apply the guidance when voting cases." *Id.*

On September 22, 2017, Robert L. Woods, Acting Assistant Secretary of the Navy (Manpower & Reserve Affairs), issued a memorandum to the Under Secretary of Defense that the BCNR and the NDRB were both in compliance with the Kurta Memo.  AR 0966 ("Woods Memo").

III.     **FACTUAL AND PROCEDURAL HISTORY**

  A.  **Plaintiffs are Separated for Misconduct**

Plaintiff Manker began his active duty enlistment in the Marine Corps on August 8, 2000. AR 0004. Taking his allegations as true for the purpose of this motion, Plaintiff Manker served in the 3rd Battalion, 7th Marine Regiment. Compl. at ¶ 31 (ECF No. 1).  Plaintiff Manker deployed in support of Operation Iraqi Freedom from January 2003 to September 2003.  Compl. at ¶¶ 32-45. Upon returning to the United States, Plaintiff Manker learned that his parents had separated during his deployment to Iraq.  Compl. at ¶51. The night before departing for a month of leave at home, Plaintiff Manker met up with two junior Marines and smoked marijuana.  Compl. at ¶51.  Upon his return to base, on October 28, 2003, Plaintiff Manker was administratively charged with use or possession of a controlled substance and failure to prevent two junior service members from using methamphetamine and marijuana. Compl. at ¶54. Following the imposition of non-judicial punishment, Plaintiff Manker was discharged with the characterization of Other-than-Honorable on December 19, 2003.  Compl. at ¶58.

Plaintiff Doe began his active duty enlistment in the Marine Corps on December 11, 2000. Compl.  AR 0169.  Plaintiff Doe completed a deployment from January to June 2003 in support of Operation Iraqi Freedom.  AR 0171.  Taking his allegations as true for the purpose of this motion, Plaintiff committed several violations of the Uniform Code of Military Justice ("UCMJ") prior to his deployment to Iraq.  Compl. at ¶105.  After he returned from Iraq, Plaintiff Doe was alleged to have violated Article 92, UCMJ (failure to obey a lawful order) for not complying with Marine Corps uniform regulations, which prohibit most body piercings.  Compl. at ¶121.  Specifically, a Non-Commissioned Officer found a nipple ring among Plaintiff Doe's personal effects during an

inspection in August 2003.  Compl. at ¶121.[3]  In addition, Plaintiff Doe was alleged to have violated Article 86, UCMJ (absence without leave) for leaving his place of duty.  Compl. at ¶122. Specifically, Plaintiff Doe "felt sick during gym time and returned to his barracks early."  *Id*. Plaintiff Doe alleges that this incident was attributable to "his PTSD-related alcohol use [where he] woke up many days still drunk or hungover." *Id*.  For these offenses, Plaintiff Doe was found guilty at Summary Court Martial.[4]  AR 0169.  On January 14, 2004, Plaintiff Doe was discharged with the characterization of Other-than-Honorable discharge due to a pattern of misconduct.  Compl. at ¶123.

### B.  The Naval Discharge Review Board Considers Plaintiffs' Petitions

In November 2016, just prior to Congress requiring DRBs to review PTSD related cases with liberal consideration and well before the DoD issued the Kurta Memo, the NDRB considered both named Plaintiffs' petitions for changes to their respective characterizations of service.  AR 0004-0012, 0169-0174.  The NDRB declined to grant relief for both petitions.  *Id.*  Although both decisions recognized that the Plaintiffs argued for the application of the Hagel Memo, the NDRB was not bound by law or policy to apply the Hagel Memo's guidance.  *Id.*

In the decision letter for Plaintiff Manker, which referenced the Hagel Memo, the NDRB explained that although "the Applicant may feel that PTSD was the underlying cause of his misconduct, the record reflects willful misconduct that demonstrated that he was unfit for further service."  AR 0009.  The NDRB determined that the Plaintiff Manker's "[u]se of illegal drugs and

---

[3] By way of example, MCO 1020.34H, Marine Corps Uniform Regulations prohibits "[a]ttaching, affixing or displaying objects, articles, jewelry or ornamentation to, through or under their skin, tongue or any other body part."  AR 1112.

[4] The NDRB decision letter incorrectly indicates that Plaintiff Doe violated two specifications of Article 92.  The record indicates that he was only found guilty of one specification of Article 92.

failure to prevent two junior Marines from using illegal drugs were all conscious decisions to violate the tenants [(sic)] of honorable and faithful service." *Id*. With respect to Plaintiff Manker's family issues, the NDRB denied relief because there was "insufficient evidence in the record, nor did the Applicant provide any documentation to indicate that his family issues were mitigating factors for his use of illegal drugs[.]" *Id*.

In the decision letter for Plaintiff Doe, the NDRB suggested that it "was acting in accordance with the" Hagel Memo and the Carson Memo. AR 0172. It did not, however, discuss nor appear to apply the liberal consideration standard under the Hagel Memo. AR 0172. As it pertained to Plaintiff Doe's unauthorized absence offense, the NDRB acknowledged that PTSD may be associated with sleep disruption and missing work. *Id*. Notwithstanding this acknowledgment, it found that Plaintiff Doe "actually arrived at work on time, but violated regulations by not remaining at his at his appointed place of duty." *Id*. As it pertained to Plaintiff Doe's violation of Marine Corps uniform regulation, the NDRB found that Plaintiff Doe "obtained his piercing before he deployed; [and] that it is unlikely that [his] voluntary intoxication and lapse of judgment in obtaining the rings was related to PTSD." *Id*. Lastly, even though it was not the offense charged at summary court martial, the NDRB also found that the Plaintiff Doe's "primary offense was the act of obtaining the piercings in the first place, and not merely storing the nipple rings in his wall locker after the fact." *Id*.

When the NDRB notified the named Plaintiffs about their respective decisions, both were informed that they may submit a complaint to the Joint Service Review Committee in accordance with DoD Instruction 1332.28 or that they "may petition the Board for Correction of Naval Records […] for further review." AR 0011, 0173. The named Plaintiffs did not utilize these administrative review measures.

### C.  The Present Complaint

Instead of requesting *de novo* review from the NDRB with the favorable guidance contained in the Kurta Memo, the named Plaintiffs chose to file the complaint in this case on March 2, 2018. *See* Compl.  Plaintiffs averred that this "action arises under the Administrative Procedure[ ] Act, 5 U.S.C. § 706."  Compl. at ¶ 1.  The Complaint's first three Counts are asserted on behalf of the Class while Counts 4 and 5 are brought on behalf of Plaintiff Manker and Plaintiff Doe respectively.  The class Plaintiffs seek injunctive relief requiring the "Defendant [to] meaningfully and consistently applies its own procedural standards in considering the effects of class members' PTSD when determining whether to upgrade their discharge statuses[.]"  Compl. at 41 (Prayer for Relief).  The named Plaintiffs request injunctive relief requiring that their respective characterizations of service be upgraded to Honorable.  *Id*.

### IV.   STANDARD OF REVIEW

#### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In assessing such motion to dismiss, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).  The court, however, may not draw "from the pleadings inferences favorable to the party asserting [jurisdiction]."  *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).  Rather, the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint.  *See Morrison*, 547 F.3d at 170; *see also Makarova*, 201 F.3d at 113; *Malik v. Meissner*,

82 F.3d 560, 562 (2d Cir. 1996). A court evaluating a Rule 12(b)(1) motion "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits" or the administrative record. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

In deciding motions pursuant to Rule 12(b)(6), a reviewing court must take the allegations of the Complaint as true and construe them in a manner favorable to the plaintiffs. *See, e.g., Hoover v. Ronwin*, 466 U.S. 558, 587 (1984); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiffs' favor. *See, e.g., Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005). A motion for judgment on the pleadings for failure to state a claim tests only the adequacy of the Complaint. *See United States v. City of New York*, 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiffs' pleading obligations. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006).

## V. ARGUMENT

The Plaintiffs' complaint should be dismissed because the Court lacks jurisdiction and because Plaintiffs fail to state a claim for which relief can be granted. In the alternative, the Court should order a stay and remand this matter to the Navy for further administrative action. On remand, the NDRB can apply the supplemental guidance of the Hagel Memo and the Kurta Memo when considering the named Plaintiffs' petitions for relief.

### A. The Court Lacks Jurisdiction

The Court lacks jurisdiction to adjudicate Plaintiffs' APA claim challenging the NDRB's decisions. *Dibble v. Fenimore*, 339 F.3d 120, 127-28 (2d Cir. 2003); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 7 40 (2d Cir. 1992); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1510-15 (D.C. Cir.

1989).  First, under the intramilitary immunity doctrine, Plaintiffs' challenges to military personnel decisions are generally nonjusticiable.  Second, Plaintiffs have not exhausted their administrative remedies to trigger the narrow exception to the nonjusticiability doctrine that allows servicemembers to seek judicial review based the service's failure to comply with its own mandatory guidelines.  Third, Plaintiffs may only seek judicial review under the APA of an adverse decision by the service's civilian review board.  Fourth, the Plaintiffs claims are moot because DoD already directed the DRBs to apply the Hagel Memo via the Kurta Memo.  And finally, Plaintiffs lack standing to launch a broad programmatic attack against the NDRB under the APA.

### 1.      Plaintiffs' Claims are Nonjusticiable

Here, the Court lacks jurisdiction over Plaintiffs' challenges to their characterizations of service when they were discharged from the Marine Corps.  To the extent that Plaintiffs' claims require the Court to make an individualized inquiry into a discrete personnel action, any such claim is nonjusticiable.  The justiciability of military personnel decisions "is limited by the fundamental and highly salutary principle that: 'Judges are not given the task of running the Army.'"  *Kreis*, 866 F.2d at 1511 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)).  Accordingly, "courts will not normally review purely discretionary decisions by military officials which are within their valid jurisdiction." *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 52 (2d Cir. 1999) (quoting *Kurlan v. Callaway*, 510 F.2d 274, 280 (2d Cir. 1974)).  The rule of nonjusticiability "is based on the common-sense notion that allowing service members to sue their superiors would unacceptably compromise military discipline and readiness for combat."  *Id.*; *see also Kreis*, 866 F.2d at 1511 ("Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions.  To grant such relief would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve

the security needs of the Nation.").

More specifically, the Second Circuit has held that claims for equitable relief based on military personnel decisions are generally nonjusticiable. *Dibble*, 339 F.3d at 127-28. In *Dibble*, a member of the Air National Guard who was honorably discharged brought suit, alleging that he was "unlawfully denied re-enlistment in retaliation for his constitutionally and statutorily protected activities as union steward." *Id.* at 122. The Second Circuit held that Dibble's complaint must be dismissed as nonjusticiable under the intramilitary immunity doctrine. *Id.* at 128. The Second Circuit "declin[ed] to adopt a categorical rule on the justiciability of intramilitary suits," but held that equitable challenges to discrete military personnel decisions are nonjusticiable to the extent that they require "a particularized inquiry into the mindset of [the servicemember's] superior officers." *Id.* The Second Circuit found that "[f]or the district court to find that the Guard violated Dibble's constitutional rights by discharging him, it would be forced to make a particularized inquiry into the mindset of his superior officers, determining whether their various disciplinary actions were motivated by proper military concerns or by the unconstitutional desire to stifle Dibble's protected First Amendment activity." *Id.* at 128.[5] "Especially considering the availability of intramilitary review," the Second Circuit declined "to insert the federal courts into military decisionmaking in such an intrusive manner." *Id.* On the other hand, *Dibble* held that courts may "entertain" suits that are "facial challenges to the constitutionality of statutes or military regulations" or "where the military has failed to follow its own mandatory regulations in a manner substantially

---

[5] *See also Jones v. 106th Rescue Wing*, 859 F. Supp. 2d 381, 386 (E.D.N.Y. 2012) (dismissing claims based on allegations that military servicemember's supervisor "was motivated by ill will and legally improper motives when transferring plaintiff and denying his requests for promotions" because "[t]he military personnel decisions raise[d] by Plaintiff involve[s] precisely the type of individualized questions that are prohibited from judicial review"). Any reference to *Jones v. 106th Rescue Wing* will include the full case name as to differentiate it from *Jones v. New York State Division of Military and Naval Affairs*, which will be referred to as *Jones*.

15

prejudicing a service member." *Id.* at 122, 127-28; *see also Jones*, 166 F.3d at 52 (recognizing exception to general rule of nonjusticiability "where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member"). Here, Plaintiffs seek to have their characterizations of service changed, which would require the Court to make a "particularized inquiry into the mindset" of the Plaintiffs' superior officers — precisely the sort of inquiry that the Second Circuit has held is barred by the intramilitary immunity doctrine. *Dibble*, 339 F.3d at 128. Moreover, even though the Plaintiffs have availed themselves of the NDRB, it remains improper for the Court to insert itself "into military decisionmaking" before the Plaintiffs exhaust their administrative remedies by seeking review at the BCNR. *Dibble*, 339 F.3d at 128. Lastly, to the extent the Plaintiffs challenge the *merits* of the Navy's decision as to military affairs, such a challenge is nonjusticiable. *Allphin v. United States*, 758 F.3d 1336, 1341 (Fed. Cir. 2014) ("Appellants' merit-based challenges are nonjusticiable") & *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) ("Because the merits of the Air Force's decision to release Murphy from active duty are beyond judicial reach, so too is consideration of his military records."). Only a challenge to the *procedures* followed in rendering a military decision may present a justiciable controversy. *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990) (observing that "once the Secretary promulgated regulations and instructions and made them the basis for [the plaintiff's] release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all."); *Murphy*, 993 F.2d at 873. "Thus, a court's role in reviewing the decision of a military corrections board is to determine whether the decision making process was deficient, not whether [the] decision was correct." *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 182 (D.D.C. 2011) (internal quotation marks omitted).

16

2.     **A Claim Based on the Navy's Alleged Failure to Follow Regulations Must Be Exhausted**

Judicial review of the named Plaintiffs' claims is premature because they both failed to exhaust their administrative remedies.  "Under the exhaustion rule, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Guitard*, 967 F.2d at 740 (citing *Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)*).  This rule "is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors." *Id.* (quoting *Schlesinger v. Councilman, 420 U.S. 738, 756 (1975)*).  "It also avoids duplicative proceedings, and often the agency's ultimate decision will obviate the need for judicial intervention." *Id.* (quoting *Schlesinger,* 420 U.S. at 756-57).

Although the Second Circuit has recognized that federal courts have jurisdiction over claims based on the military's "failure to follow its own [mandatory] regulations," exhaustion of administrative remedies is generally required before bringing any such claim.  *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 52, 54-55 (2d Cir. 1999).  In *Jones*, the Second Circuit held that administrative exhaustion is required for a claim based on the "regulations" exceptions to the nonjusticiability rule.  *Jones*, 166 F.3d at 54-55; *see also Guitard*, 967 F.2d at 740 (emphasizing "the particular importance of administrative exhaustion in circumstances implicating military discipline").  In *Jones*, a major in the Army National Guard sought to challenge his removal from service based on the Guard's alleged failure to comply with its regulations.  *Id.* at 52-53.  The Second Circuit held that exhaustion of all administrative remedies was a prerequisite to his claim for injunctive relief under Section 1983.  *Id.* at 54.  Moreover, the Second Circuit acknowledged that in *Patsy v. Board of Regents,* 457 U.S. 496, 516 (1982), the Supreme Court held that "policy considerations alone cannot justify [a] judicially imposed exhaustion" requirement for 1983 claims

where the statute imposes no such requirement, but held that exhaustion was required notwithstanding *Patsy*. *Jones*, 166 F.3d at 54. In requiring exhaustion, the Second Circuit stated that it was not "crafting an exception to the general rule that § 1983 does not have an exhaustion requirement," but "simply clarify[ing] the contours of the 'regulations' exception to the well-established rule" of nonjusticiability. *Id.* at 54-5; *see also Yarusso v. 106 Rescue Wing, New York Air Nat. Guard*, 511 F. App'x 13, 15 (2d Cir. 2013) (holding exhaustion required before service member can challenge military decision based on alleged failure to follow regulations).

The exhaustion requirement set forth in *Jones* is not changed by the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S. 137 (1993), which (consistent with *Patsy*) held that under the APA courts may not impose an additional exhaustion requirement as a prudential doctrine of judicial administration. As the Second Circuit held in *Jones*, because the exhaustion requirement arises from the justiciability doctrine, exhaustion is required for any claim based on the military's failure to follow regulations even where the statute under which relief is sought does not require it. *See Jones*, 166 F.3d at 54. Likewise, in *Chappell v. Wallace*, 462 U.S. 296 (1983) the Supreme Court recognized that exhaustion requirement in the military context arises from "the special relationship" between the military and its personnel. *Id.* at 301-04. *Chappell* noted that the civilian review boards are one component of the "comprehensive internal system of justice to regulate military life." 462 U.S. at 302-03. The existence of "two systems of justice . . . : one for civilians and one for military personnel"—a "special and exclusive system of military justice"—is "required" by the military's special status, "contemplated" by the Constitution, "created" by Congress, and "long recognized" by the courts, and therefore precludes judicial interference into intramilitary disputes. *Id.* at 300, 303-04. The *Chappell* Court observed, however, that once a service member exhausts his administrative remedies, civilian review board "decisions are subject to judicial review and can be set aside if they

are arbitrary, capricious or not based on substantial evidence." *Id.* at 303; *see also Saad v. Dalton,* 846 F. Supp. 889, 891 (S.D. Cal. 1994).

Finally, the recognized exceptions to the exhaustion requirement have been construed narrowly, and none of these exceptions apply here. The Second Circuit has held that exhaustion "may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard*, 967 F.2d at 741 (internal quotation marks omitted). Applying these factors in *Able v. United States*, 88 F.3d 1280 (2d Cir. 1996), the Second Circuit held that exhaustion of a facial constitutional challenge to the "Don't Ask, Don't Tell" policy fell within the irreparable injury and futility exceptions to the exhaustion requirement. *Id.* at 1288. With respect to the futility requirement, the Second Circuit held that exhaustion would be futile because the agency had no power to declare the statute unconstitutional, noting that the Court's analysis required no fact-finding. *Id.* As a general matter, however, even when a petitioner's claim "would likely have failed" in the agency review process, exhaustion is still required because it serves other purposes, including facilitating judicial review by "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). For these reasons, exhaustion is excused for futility only when an adverse decision is a certainty or when "available procedures are incompetent to provide adequate redress." *See Gonzalez v. Perrill*, 919 F.2d 1, 2, (2d Cir. 1990)*; Nat'l Sci. & Tech. Network, Inc. v. F.C.C.*, 397 F.3d 1013, 1014 (D.C. Cir. 2005).

In this case, Plaintiffs do not bring a facial challenge to the constitutionality or legality of any

regulation. *Cf. Able*, 88 F.3d at 1288-89. They also have access to process that offers genuine opportunities for adequate relief, and, as set forth below, an adverse decision by the BCNR is subject to judicial review. *Guitard*, 967 F.2d at 741. Had the named Plaintiffs petitioned the BCNR, their petitions would have received the benefit of the supplemental guidance of the Hagel Memo, the same relief that they seek from this Court. Moreover, Plaintiffs could have addressed any other alleged deficiencies in their respective NDRB decisions with the BCNR. *See Ortiz v. Sec'y of Def.*, 41 F.3d 738, 741 (D.C. Cir. 1994) ("[R]equiring exhaustion here is consistent with the hierarchy of administrative boards established by Congress and gives the Review Board, staffed with military personnel who are positioned to conduct a factual inquiry, a first opportunity to correct any error or injustice before allowing consideration by the Correction Board, a panel of civilians.").[6] Therefore, the named Plaintiffs must first seek relief from BCNR before seeking judicial intervention with respect to the NDRB's decisions. *Guitard*, 967 F.2d at 741 (recognizing that an exception to the exhaustion rule did not apply because the plaintiff had "a possibility of obtaining full relief from the Corrections Board."); *Phillips v. Klassen*, 502 F.2d 362, 369 (D.C. Cir. 1974) (recognizing that "it is generally agreed that exhaustion by at least one member of the class is a necessary prerequisite for a class action.").

### 3. Plaintiffs Have Not Sought Review of a Civilian Review Board Decision

Although judicial review of civilian review board decisions under the APA is available, Plaintiffs do not seek such relief here, and the fact that they have styled their claims as a challenge to the NDRB's decision under the APA is not sufficient to confer jurisdiction. Supreme Court and

---

[6] In addition to seeking relief from BCNR, the named Plaintiffs could have also submitted a complaint to the Joint Service Review Committee in accordance with DODI 1332.28. Both of these options for administrative review were highlighted for the Plaintiffs in the addendums of their respective NDRB decisions.

Second Circuit precedent recognizes the availability of judicial review of civilian review board decisions under the APA, but does not suggest a decision that arises outside that procedural context can be reviewed under the APA without consideration of the justiciability doctrine. *See also Darby*, 509 U.S. at 146 (federal courts nonetheless remain free "to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review[.]"). Consistent with *Chappell*, the Second Circuit has held that notwithstanding the justiciability doctrine, federal courts may review fully exhausted decisions of civilian review boards to correct records "under the deferential standard of whether the decisions were arbitrary, capricious, or unsupported by substantial evidence." *Dibble v. Fenimore*, 545 F.3d 215, 216 (2d Cir. 2008) ("*Dibble II*") (citing *Chappell*, 462 U.S. at 303). The Second Circuit explicitly noted that this decision was based on "ample precedent," which "takes note of the facts that the Board is made up of civilians and that it is authorized, with minor exceptions, only to correct military records" and thus "has limited power and interferes only minimally with the cohesiveness and efficiency of existing military hierarchies and operations." *Id.* at 215-16; *see also Kreis*, 866 F.2d at 1512 (dismissing request for retroactive promotion as nonjusticiable but permitting APA review of claim for correction of military records).

Plaintiffs are not seeking review of the decision of a civilian review board to correct military records. *Dibble II* held only that intramilitary immunity allowed claims seeking review of civilian review board decisions, but did not purport to empower federal courts to review any ***military personnel decision*** under the APA before such a claim prior to exhaustion. Allowing such a claim to proceed would be an end-run around the doctrine of justiciability, would constitute a significant interference with military decision-making, and is contrary to Supreme Court and Second Circuit precedent. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) *superseded by statute* 4 2 U.S.C.

21

1997e(a) ("[E]xhaustion principles apply with special force when 'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures.") (quoting *McKart v. United States*, 395 U.S. 185, 195 (1969)).

### 4.    Plaintiffs' Claims Concerning the Application of the Hagel Memo to Discharge Review Boards Are Moot

Plaintiffs' claims concerning the NDRB's application of the Hagel Memo are moot.  "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal citations and quotation marks omitted).  "The rule against deciding moot cases forbids federal courts from rendering advisory opinions or deciding questions that cannot affect the rights of litigants in the case before them."  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (citations and internal quotations omitted).  In *Hall*, the Court dismissed as moot Hall's challenge to the agency's denial of his FOIA fee waiver request after the agency decided to release records to Hall without seeking payment from him.  *Id.* Because Hall "already has 'obtained everything that [he] could recover . . . by a judgment of this court in [his] favor,'" there was no case or controversy before the Court.  *Id.*  The Court also held that "Hall fails to undermine the government's mootness claim with his argument that the media status claim is capable of repetition, yet evading review." *Id.*

The instant case is similar to *Hall* insofar as the Kurta Memo and Riehl Policy Letter now require the NDRB to apply the Hagel Memo, which is essentially the same relief that Plaintiffs seek from this Court.  At this very moment, Plaintiffs can file a petition with the NDRB, which, in turn, will fully apply the favorable guidance in both the Hagel Memo and the Kurta Memo when reviewing such petitions.  Thus, as it pertains to the NDRB's application of the Hagel Memo, the issue is moot thereby depriving this Court from having subject matter jurisdiction.

**5.    Plaintiffs Lack Standing to Launch a Broad Programmatic Challenge Against the Navy Discharge Review Board**

Plaintiffs lack standing to request broad-sweeping injunctions[7] clearly not authorized by the APA.   Injunctive relief is available only if the actions were already "***required***" and "***discrete***." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).   Here, the agency actions Plaintiffs request were neither required nor discrete.

First, Plaintiffs fail to allege a single action required by law that the Navy failed to take. The Hagel Memo did not yet apply, and Congress had not yet codified the "liberal consideration" standard.  *See* 114 Pub. L. 328, § 535 (Dec. 23, 2016).   Courts must interpret "required" narrowly, as they should not set standards higher than those prescribed by the law.   *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 523-25 (1978).   In this case, the NDRB was not required to apply the Hagel Memo because it did not apply to the NDRB when it considered the named Plaintiffs' petitions.

Second, the APA allows challenges only to "discrete action[s]," and does not authorize "broad programmatic attack[s]" against agencies.   *Norton*, 542 U.S. at 62–63.   Plaintiffs lack standing to sue because the injunctions sought cross the line into "wholesale" policy analysis foreclosed by the APA.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).   Judicial review under the APA is "a scheme allowing courts to review only those acts that are specific enough to avoid entangling the judiciary in programmatic oversight, clear enough to avoid substituting judicial judgements for those of the executive branch, and substantial enough to prevent an incursion into internal agency management."  *City of New York v. United States DOD*, 913 F.3d 423, 432 (4th Cir.

---

[7] "A Court order [for] the approval of the discharge upgrade applications of Mr. Manker and the NVCLR's members . . . . [and] injunctive relief to ensure that all Navy and Marine Corps veterans may have their discharge upgrade applications considered according to the Constitution . . . ." (ECF No. 1 at 3).

2019).

Here, Plaintiffs request wholesale dismemberment of the Navy's policy.  In their complaint, Plaintiffs ask the Court to issue an open-ended injunction "to ensure that all Navy and Marine Corps veterans may have their discharge upgrade applications considered according to the Constitution and as intended by Congress."  Compl. at 3.  But the law tasks the agencies, not the courts, to craft regulations within the boundaries set by Congress.  *See Negusie v. Holder*, 555 U.S. 511, 523 (2009) (citing *Cajun Elec. Power Coop. v. FERC*, 924 F.2d 1132, 1136 (D.C. Cir. 1991) ("[I]f an agency erroneously contends that Congress' intent has been clearly expressed and has rested on that ground, we *remand* to require the agency to consider the question afresh in light of the ambiguity we see." *Id.* (emphasis added)).  Courts should not be tasked with either issuing "obey the law" injunctions or "day-to-day oversight of the executive's administrative practices."  *City of New York*, 913 F.3d at 431 ("If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved-which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.").

Beyond the issue of practicability, *Lujan* explained that the problem is jurisdictional: "the offices of the Department or the halls of Congress [are] where programmatic improvements are normally made," not "by court decree."  *Lujan*, 497 U.S. at 891.  Plaintiffs fail to recognize that this is exactly what occurred.  First, Congress made the 'liberal consideration' standard under the Hagel Memo applicable to the DRBs. 10 U.S.C. § 1553(d)(3).  Second, as a result of public feedback and an internal review, the DoD issued the Kurta Memo that made programmatic improvements to the discharge upgrade process.  AR 0955.  These improvements included making the Hagel Memo

24

applicable to the DRBs and giving additional guidance that provided for an even more favorable review for veterans with PTSD and other mental health conditions.  *Id.* at 955–959.  Despite the lawmaking apparatus working as envisioned by *Lujan*, Plaintiffs ask the Court to step back in time to have Secretary Hagel apply his memo to both the BCM/NRs *and the DRBs*.

Indeed, Plaintiffs ask for the type of broad policy change foreclosed by the Supreme Court in *Lujan*.  In *Lujan*, because the Plaintiff's challenge amounted to "wholesale" policy analysis, it was not of "manageable proportions" and therefore inappropriat*e*.  *See Lujan*, 497 U.S. at 891 ("Respondent alleges that violation of the law is rampant within this program -- failure to revise land use plans in proper fashion, failure to submit certain recommendations to Congress, failure to consider multiple use, inordinate focus upon mineral exploitation, failure to provide required public notice, failure to provide adequate  environmental impact statements.").  Similarly, the current Plaintiffs seek broad review of NDRB "policies, practices, and procedures."  *See* ECF No. 61 at 2 (emphasis omitted).  The Plaintiffs seek review not just to assess the discrete question if the NDRB failed to comply with Hagel Memo guidance, but also to assess what kind of quality control the NDRB practices, how the NDRB constitutes its reviewing panels, and also what training the panelists receive.  *See id.* at 3.  In fact, Plaintiffs requested more information on the NDRB training reading list even though the Defendant provided every document listed under the reading list section marked "PTSD/TBI/MST/MENTAL HEALTH" (AR 0969).  *See* ECF No. 61 at 3 ("[a]t least some of the materials on the [training reading] list . . . are crucial to the Plaintiff's case, but are not publicly available.").  From this request, the necessary inference is either that the Plaintiffs contend the Defendant has "secret" training procedures (investigation into which the court already foreclosed (*see* ECF No. 55 at 10)), or that the Plaintiffs' investigation is broader than the discrete questions posed for class certification.  Just as the Supreme Court rejected a similar broad challenge in *Lujan*,

the Court should reject the challenge here, too.

**B.      Plaintiffs Fail to State a Claim Concerning the Application of the Hagel Memo to the Discharge Review Boards**

Plaintiffs' claims fail to state a claim for the purposes of Fed. R. Civ. P. 12(b)(6).  These claims rest on the Plaintiff's incorrect legal conclusion that the Hagel Memo applied to the NDRB when it reviewed the named Plaintiffs' petitions.  Under the plain language of the Hagel and Kurta Memos, the Hagel Memo did not apply to the named Plaintiffs when the NDRB considered their petitions—a fact acknowledged by Plaintiff Manker.  *See* AR 51.

Originally, the Hagel Memo only applied to the BCM/NRs, and not the DRBs.  It explicitly mentioned only the BCM/NRs.  *Id.* at 949.  Notably, the DRBs lacked jurisdiction to address petitions submitted by Vietnam veterans, the class of veterans who served as a primary impetus for the issuance of the Hagel Memo. 10 U.S.C.S. § 1553(a) ("A motion or request for review must be made within 15 years after the date of the discharge or dismissal.").  Significantly, the Navy interpreted the Hagel Memo to apply only to the BCNR as the Hicks Memo makes clear. AR 0953. In contrast, the Kurta Memo applies to both the BCM/NRs and the DRBs.  It states explicitly that "[t]his guidance applies to both the BCM/NRs and DRBs."  *Id.* at 0958.

Following the Kurta Memo's guidance, petitioners who were previously denied an upgrade by the NDRB can apply again to the NDRB for "de novo reconsideration of petitions previously decided without the benefit of all applicable supplemental guidance."  *Id.*  Thus, while the NDRB decided the Plaintiffs' petitions before the Kurta Memo was issued, the Plaintiffs can still apply to the NDRB (or the BCNR if they so choose) for *de novo* review applying the Kurta Memo's guidance.

In addition to the above, there are several reasons why the Hagel Memo did not originally apply to the NDRB.

First, as the Plaintiffs themselves acknowledge, "the direct recipient of this memo—the

Boards for Correction of Naval Records (BCMRs)—are an altogether separate and distinct entity from the Naval Discharge Review Board (NDRB).  BCMRs are created pursuant to 10 U.S.C. § 1552, while the NDRB derives its power from 10 U.S.C. § 1553."  AR 0051.

Second, interpreting the Hagel Memo to include the NDRB renders part of the Kurta Memo superfluous and confusing.  The Kurta Memo expanded "[t]he supplemental guidance provided by then-Secretary Hagel . . . to both BCM/NRs and DRBs."  AR 0958.  One of its reasons for doing so was that "there should be greater uniformity amongst the review boards." *Id.* at 955.  The Kurta Memo also directed the Service Secretaries to "direct immediate implementation" of the Kurta Memo's guidance.  *Id.*  Finding that the Hagel Memo originally did, in fact, apply to the DRBs, would render the Kurta Memo's statements superfluous and illogical.  *See*, e.g., *Ransom v. FIA Card Services*, 562 U.S. 61, 74 (2011) (ruling against the Plaintiff in part because his interpretation would have rendered superfluous the word "applicable.").

In his brief to the NDRB, Plaintiff Manker argued "because applicants to the NDRB may subsequently appeal to the BCMR, this memo's guidance 'to ensure consistency across the Services' should also apply to the NDRB." *Id.* at 51.  Not only does this interpretation warp the plain language of the Hagel Memo discussed above, but also it fails to defer to the military's interpretation of its own policy.  Military decisions are entitled to some deference.  *See Orloff*, 345 U.S. at 94.  The discretion to create personnel and discharge procedure policy is key to what the Supreme Court termed "a specialized community governed by a separate discipline . . . ." *Id.*  As such, "[o]rderly government requires that the judiciary be . . . scrupulous not to interfere with legitimate Army [or Navy] matters . . . ." *Id.*

Finally, the Court notes that there may have been some "internal confusion" as to whether the Hagel Memo applied to the NDRB.  ECF No. 33 at 10.  The NDRB cited the Hagel Memo in the

case of the named Plaintiffs, and the Woods Memo indicated in 2017 that "both boards [BCNR and NDRB] have closely scrutinized all applications of individuals since the implementation of the Hagel Memo . . . ." AR 0966. Neither statements, however, show that the Navy was interpreting that the Hagel Memo *applied* to the NDRB. At most, these statements show a heightened awareness of PTSD across the agency in light of Secretary Hagel's emphasis on it in the context of the BCNM/NRs. They should not detract from the clear language of the Hagel and Kurta memos that together show the DRBs were not required to apply the Hagel Memo guidance until DoD issued the Kurta Memo. As such, any claim based on the incorrect legal conclusion that the Hagel Memo applied to the DRBs prior to the Kurta Memo fails to state a claim for which relief can be granted.

### C.    Voluntary Remand is Appropriate

In the alternative, the Defendant requests that the Court remand this matter to the Navy for further administrative action. A federal agency's motion for a voluntary remand is commonly granted because it allows an agency to correct its own potential errors without expending the resources of the court in reviewing a record that may be incorrect or incomplete. *See, e.g.*, *Ethyl Corp v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (agency asked for voluntary remand following change in evidence but plaintiff opposed, remand granted); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (change in policy a proper justification for voluntary remand); *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416-17 (6th Cir. 2004) ("[I]t is an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action."); *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 24-25 (D.D.C. 2008) ("Remand in this case will serve the interest of allowing the Corps to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources."). Courts retain the discretion to remand an agency decision when an agency has raised "substantial

and legitimate" concerns in support of remand.  *Carpenters Indus.  Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010) (citing *Sierra Club*, 560 F. Supp. 2d  at 23 (collecting cases)).

### 1.      Remand as a Remedy

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances,  is to remand to the agency for additional investigation or explanation." *Utahans for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002) (internal citations and quotation marks omitted); *see also Palisades Gen. Hosp. Inc., v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). Under the APA, because the District Court sits as an "appellate tribunal," if the Court rejects the agency's position, it vacates and remands the matter; the Court does not have the jurisdiction to order specific relief.  *Palisades Gen. Hosp. Inc.*, 426 F.3d at 403.  Remand is indicated under the APA because a "reviewing court is not generally empowered  to conduct a *de novo* inquiry into the matter being reviewed" but should, when necessary, "remand  to the agency for additional investigation or explanation." *See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985); *Palisades Gen. Hosp. Inc.*, 426 F.3d at 403 (explaining that a district court's role in reviewing a final agency action is "[u]nlike . . . managing a garden variety civil  suit," as the court "does not perform its normal role, but instead sits as an appellate tribunal").  "If a reviewing court agrees that the agency misinterpreted the law . . . it will set aside the agency's  action and remand the case – even though the agency . . . might later, in the exercise of its lawful  discretion, reach the same result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998).  In such circumstances, the district court "ha[s] no jurisdiction to order specific relief." *Palisades Gen. Hosp.  Inc.*, 426 F.3d at 403 (holding that the district court did not have jurisdiction to order the  plaintiff hospital's

reclassification after finding that the agency erred in rejecting data submitted  in support of the reclassification); s*ee also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657 (2007) ("As an initial matter, we note that if the [agency's] action was arbitrary and capricious, as the Ninth Circuit held, the proper course would have been to remand to the agency for clarification of its reasons.") (citing *Gonzales v. Thomas*, 547 U.S. 183 (2006)); *I.N.S. v. Orlando Ventura,* 537 U.S. 13, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

## 2.    Voluntary Remand

Defendant requests that the Court grant its motion to voluntarily remand the case to the agency for further action and stay proceedings until the Navy renders a decision, for two reasons.

First, the Defendant has already implemented the primary relief that the Plaintiffs seek in this action.  Plaintiffs contend that the NDRB failed to apply the Hagel Memo when evaluating their petitions to upgrade their characterizations of service based on claims involving PTSD.  After the NDRB considered Plaintiffs' petitions, DoD issued the Kurta Memo that explicitly made the Hagel Memo applicable to DRBs.  Likely to be beneficial for both Plaintiffs, the Kurta Memo provides the following instructive guidance: "Mental health conditions, including PTSD […] inherently affect one's behavior and choices causing veterans to think and behave differently than might otherwise be expected."  AR 0959.  This guidance will allow the NDRB to evaluate whether the Plaintiffs' actions were the attributable to PTSD or a similar condition.  Especially favorable for Plaintiff Manker, the Kurta Memo provides that "marijuana use is still unlawful in the military but it is now legal in some states and it may be viewed, in the context of mitigating evidence, as less severe today than it was decades ago." *Id*.  Additionally, the Kurta memo stresses that "[m]ental health conditions […] impact veterans in many intimate ways, are often undiagnosed or diagnosed

years afterwards, and are frequently unreported." *Id*.  This admonition may cause the NDRB reevaluate the previous decision to deny relief to Plaintiff Manker because, in part, he did not avail himself of opportunities to obtain help after his return from Iraq.  Finally, likely favorable to both Plaintiffs, the Kurta Memo observes that "[m]any veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct." *Id*.[8]  Allowing the Navy to apply this guidance now to Plaintiffs' petitions may very well obviate the need for judicial review and relief.

Second, a remand would allow the Navy to address other issues including those raised by the Plaintiffs concerning the NDRB's application of evidentiary standards.  In particular, the NDRB may evaluate the propriety of Plaintiff Doe's summary court martial that triggered his separation based on a pattern of misconduct.  For his charge of violating Marine Corps uniform regulations, the NDRB may reconsider whether the evidence was factually sufficient to prove that Plaintiff Doe actually had a pierced nipple in August 2003 as alleged in the specification.  AR 0929.  "For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members [...] are themselves convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  In this case, there was no direct evidence that Plaintiff Doe still had a pierced nipple in August 2003.  For his charge of unauthorized absence, the NDRB may reconsider the propriety in disposing the charge at summary court martial given the surrounding circumstances.  Although the "status of absence without leave is not changed by an inability to return through sickness, [...] the fact that all or part of a period of unauthorized absence was in a sense enforced or involuntary is a

---

[8] Plaintiff Doe's post-deployment misconduct, which triggered the separation, entails leaving the gym early (because he allegedly was sick and/or hungover due PTSD related alcohol consumption) and storing a nipple ring in his locker, which is not actually a violation of the Marine Corps uniform regulations.

factor in extenuation and should be given due weight when considering the initial disposition of the offense." MANUAL FOR COURTS-MARTIAL pt. IV, ¶10.c.6 (2002). On this point, the Kurta memo provides that members afflicted with PTSD "may be the victim of injustice because commanders fully informed of such conditions and causal relationships today may opt for a less prejudicial discharge to ensure the veteran retains certain benefits, such as medical care." AR 0959. The NDRB's reevaluation of the evidentiary matters in light of the Hagel Memo and the Kurta Memo may result in the substantive relief that the Plaintiffs now seek from this Court.

Defendant anticipates that it will take the NDRB approximately 180 days to issue a decision. Defendant suggests that within 30 days after final action by the Navy, the parties will file with the Court a copy of the new decisions. At this point, the Court can decide if further litigation is necessary or, if necessary, Plaintiffs need to first exhaust their administrative remedies by seeking relief from BCNR before returning to the courts.

## VI.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant the Government's Motion to Dismiss or in the alternative grant the Motion for Voluntary Remand to the Navy.

For The Defendant,

JOHN H. DURHAM
UNITED STATES ATTORNEY

By:\_\_\_/S/ David C. Nelson_____
      David C. Nelson (ct25640)
      Michelle McConaghy (ct27157)
      Assistant U.S. Attorneys
      157 Church Street, 24th Floor
      New Haven, Connecticut 06510
      Tel:    (203) 821-3700
      Email:  David.C.Nelson@usdoj.gov

By:\_\_\_/S/ Jonathan E. Dowling_____
      Jonathan E. Dowling
      Lieutenant Commander
      Judge Advocate General's Corps
      Samuel Rebo
      Legal Intern
      1322 Patterson Avenue
      Washington, D.C. 20374

## **CERTIFICATION**

I hereby certify that on July 26, 2019, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

      /S/ David C. Nelson_____
      David C. Nelson (ct25640)
      Assistant United States Attorney