## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYSON MANKER, *et al*., | |
| *Plaintiffs*, | No. 3:18-cv-00372-CSH |
| v. | |
| RICHARD V. SPENCER, Secretary of the Navy, | August 12, 2019 |
| *Defendant*. | |

### DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION

The Defendant hereby replies to the Plaintiffs' opposition to the Defendant's motion to dismiss or, in the alternative, motion for remand.

The fundamental flaw with the Plaintiffs' arguments is the undisputed fact that the Naval Discharge Review Board ("NDRB") considered the petitions of Plaintiff Manker and Plaintiff Doe in November 2016.  ECF 1-3 at 5 (Manker's board date: November 29, 2016); ECF 1-5 at 5 (Doe's board date: November 17, 2016).  This means that five-member NDRB panels considered and voted on their respective petitions *before* December 2016 when Congress applied the "liberal consideration" portion of Hagel Memo  to the Discharge Review Boards ("DRBs"), and *well before* August 2017 when the Department of Defense ("DoD") issued the Kurta Memo, which applied the *entire* Hagel Memo to the DRBs for the first time.

The Defendant and Plaintiffs both agree that the Board for Correction of Military/Naval Records ("BCM/NRs") and the DRBs are separate and distinct boards.  *Def. Br.* at 4-5; *Pl. Opp. Br.* at 3-5.  But when it comes to the Hagel Memo, Defendant and Plaintiffs disagree on when it applied to the DRBs as a matter of law.  Based on its plain text, the Hagel Memo required the "BCM/NRs" to give liberal consideration when considering petitions from veterans impacted by Post Traumatic Stress Disorder ("PTSD").  In contrast, despite clearly recognizing the difference between the BCM/NRs and the DRBs, Plaintiffs gloss over the plain text of the Hagel Memo by asserting that it applied to "all records-correction boards" or "military review boards" when considering such petitions.  *Pl. Opp. Br.*

at 5.  As such, Plaintiffs fail to state a claim for relief with respect to the Hagel Memo's application to their respective NDRB decisions.  The Plaintiffs' other alleged errors should have first been raised to the Joint Service Review Activity or to the Board for Correction of Naval Records ("BCNR") before invoking this Court's jurisdiction to seek relief.  Therefore, the Court should grant the Defendant's motion to dismiss.

Nonetheless, Defendant still desires to give Plaintiffs the benefit of the favorable guidance contained in the both the Hagel Memo and Kurta Memo.  To do so, all that is required is for the Plaintiffs to submit their petitions to the NDRB for *de novo* review or, in the alternative, for this Court to grant Defendant's motion for remand to so that the NDRB may reconsider their existing petitions under the Kurta Memo.

## I.   FACTUAL AND PROCEDURAL HISTORY

### A.   NDRB Panel Members Were Not Trained to Apply the Hagel Memo Until the Issuance of the Kurta Memo.

The NDRB inconsistently citing the Hagel Memo in decisions prior to the Kurta Memo, is explained, in part, by (1) disparate training requirements between the BCNR and the NDRB, and (2) an influx of petitions asserting that the Hagel Memo applied to the NDRB (even though it actually didn't). *See Pl. Opp. Br. at 32-33* (citing *Pl. Compl.* ¶ 183 (ECF 1) ("[I]n a sample of 299 NDRB decisions issued since 2015 [...], the NDRB cited the Hagel Memo in only 66 percent of cases involving allegations or indications of PTSD or TBI and in only 44 percent of cases involving allegations or indications of PTSD, TBI, or other related mental health conditions.")).

The Woods Memo (issued Sept. 22, 2017) contained no reference to any training or notification given to the NDRB immediately after DoD issued the Hagel Memo.  AR 0966.[1]   The Woods Memo,

---

[1] The Hicks Memo, which was issued to verify initial compliance with the Hagel Memo, only stated that "[BCNR] members and staff were provided copies of the memorandum and briefed on its application to cases."  AR 0953.  There was no mention of the NDRB in the Hicks Memo.  *Id.*

which verified the Navy's compliance with the Kurta Memo to DoD, aptly demonstrates the disparity in training given to the BCNR and the NDRB.  When DoD issued the Hagel Memo, the Woods Memo reported that an officer "briefed the new guidance at the BCNR training conference on August 1, 2017, and the actual memorandum was emailed to all BCNR Board members and staff."  *Id*.  In contrast, the Woods Memo stated that, pursuant to the Kurta Memo and 10 U.S.C. § 1553, the NDRB "reviews each case with liberal consideration that PTSD, Traumatic Brain Injury (TBI), Military Sexual [Trauma] (MST), or Mental Health Conditions potentially contributed to the circumstances resulting in the discharge of a lesser characterization."  AR 0966 (alteration added).  The NDRB trained panel members on the application of the Kurta Memo and the Hagel Memo after the issuance of the Rhiel Policy Letter on September 18, 2017.  AR 0960 (requiring the Kurta Memo "be included in the NDRB training curriculum to ensure all board members are familiar with and apply the guidance when voting cases.").

As a consequence of this disparate training, when petitioners like the individual Plaintiffs asserted that the Hagel Memo applied to the NDRB before the issuance of the Kurta Memo, it should not be surprising that some five-member NDRB panels reactively and incorrectly "referenced the Hagel Memo without indicating how or to what extent it was applying the memo's guidance."  *Def. Opp. to Class Cert.*, ECF 19 at 11.  For example, in the decision for Plaintiff Manker, the NDRB indicated that the board included a member who was physician, clinical psychologist, or psychiatrist in accordance with 10 U.S.C. § 1553(d)(1) and the Hagel Memo.  The Hagel Memo, however, contains no such requirement.  In the decision for Plaintiff Doe, the NDRB indicated that it "was acting in accordance with the" Hagel Memo and the Carson Memo, but did not discuss or appear to apply the liberal consideration standard required by the Hagel Memo.  This demonstrates that the boards were not yet trained in applying the entire Hagel Memo, because it did not apply to them yet.

3

**B. Unlike the Navy, the Army Applied the Hagel Memo to the Army Discharge Review Board As a Matter of Policy Prior to the Kurta Memo.**

The Plaintiffs reference the fact that the Defendant did not cite to the decisions in *Kennedy v. Esper*, Docket No. 16-cv-2010 (WWE).  *Pl. Opp. Br.* at 35.  Although the Courts and the parties have largely treated the cases the same, there is a key factual difference in how the Navy and the Army implemented the Hagel Memo.  Both the Army and the Navy agree that the Hagel Memo only applied to the BCM/NRs.  The Navy's position is that any NDRB decisions ostensibly applying the Hagel Memo prior to the Kurta Memo constituted an error, which is partly explained by a lack of training as discussed above.  In contrast, in the Army's 2017 motion to dismiss in *Kennedy*, the Army represented that "[a]lthough the Hagel Memo is only directed to the military service Boards for Correction of Military/Naval Records, *as a matter of policy the Army has also been applying this guidance to the ADRB* [Army Discharge Review Board]."  Docket No. 3:16-cv-2010 (WWE), ECF 10-1 at ECF pg. 20 (alterations and emphasis added).  Thus, this case differs from *Kennedy* in this crucial manner and the *Kennedy* decisions do not dictate the same result in this case.

## II. ARGUMENT

**A. The Court Still Lacks Jurisdiction to Address Plaintiffs' Claims for Relief.**

**1. The Intramilitary Immunity Doctrine Prevents this Court from Upgrading the Individual Plaintiffs' Characterizations of Service.**

In their opposition brief, Plaintiffs assert that the Defendant's argument based on the intramilitary immunity doctrine is "wrong, attacks a strawman, and does not support dismissal."  *Pls. Opp. Br.* at 14.  Plaintiffs misconstrues the purpose of Defendant's argument.  As indicated in the initial brief, Defendant argued that the "Court lacks jurisdiction over Plaintiffs' challenges to their characterizations of service when they were discharged from the Marine Corps."  *Def. Br.* at 14.  Defendant made this argument in direct response to the Plaintiffs' requested relief to upgrade their characterizations of service to Honorable.  *Pl. Compl.* at 41 (seeking "an injunction, that the discharge statuses of Tyson Manker and John Doe be upgraded to Honorable").  As explained in Defendant's

4

brief, the Court cannot grant this relief because the Plaintiffs' characterizations of service are non-justiciable. *Def. Br.* at 14-16. The Court, however, can review whether the Defendant "has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member." *Def. Br.* at 15-16 (citation omitted).

>   **2.  Plaintiffs Failed to Exhaust Their Administrative Remedies with the Joint Service Review Activity or the Board for Correction of Naval Records.**

Plaintiffs argue that "Defendant neither disputes that NDRB decisions constitute final agency actions, nor cites any law requiring NDRB applicants to *also* apply to the BCNR before seeking judicial review." *Pl. Opp. Br.* at 18. Plaintiffs are incorrect because they did not seek review from the Joint Service Review Activity ("JSRA") or the BCNR. *Strang v. Marsh*, 602 F. Supp. 1565, 1575 (D.R.I. 1985) (holding exhaustion to JSRA and BCM/NR required for all branches, but finding an exception based on futility for Navy and Air Force plaintiffs due to case specific circumstance).

First, Plaintiffs must exhaust their administrative remedies by applying to the JSRA. *Def. Br.* at 11 and 20, fn. 6. If a petitioner is dissatisfied with the NDRB's decision, DoD and NDRB regulations require petitioners to submit a complaint to the Office of Under Secretary of Defense (Personnel and Readiness) for final agency action. *See* 32 CFR § 70.10; 32 C.F.R. § 724.815 ("Complaints will be reviewed pursuant to 32 CFR part 70."). Under DODI 1332.28, Discharge Review Board (DRB) Procedures and Standards (April 4, 2004), the JSRA addresses complaints that a DRB did not comply with procedural requirements contained in that very same instruction – DODI 1332.28. AR 1005-1011; 32 C.F.R. § 70.10. The JSRA then makes a recommendation to the Deputy Under Secretary of Defense for Personnel and Readiness ("DUSD(PR)") as to how the complaint should be resolved. AR 1011. The instruction makes clear that the DUSD(PR) is the final decision authority for DRB decisions:

>   *The DUSD([PR]) is the final authority in determining whether the allegations contained in a complaint are specific and have merit.* If the DUSD([PR]) determines that no further action by the Military Department is warranted, the complainant and the Military Department shall be so informed. If the DUSD([PR]) determines that further action by the Military Department is

required, the Military Department shall be directed to ensure that appropriate corrective action is taken by its DRB and the complainant shall be provided an appropriate interim response.

AR 1012 (emphasis added); *see also* 32 C.F.R. § 70.10(d)(8)(i) (The DUSD(PR) "is the final authority with respect to action on such correspondence."). Plaintiffs did not file a complaint with the JSRA even though the NDRB explicitly informed them of their right to do so. *Def. Br.* at 11 (citing AR 0011, 0173) ("If you believe the decision in your case is unclear, not responsive to the issues you raised, or does not otherwise comport with the decisional document requirements of DoD Instruction 1332.28, you may submit a complaint in accordance with Enclosure (5) of that Instruction to the Joint Service Review Activity, OUSD (P&R) PI-LP, The Pentagon, Washington, DC 20301-4000."). Therefore, Plaintiffs failed to exhaust their administrative remedies by not filing a complaint with the JSRA.

Second, because Plaintiffs assert a violation of their due process rights under the Fifth Amendment (*Pls. Compl.* ¶¶ 196(c), 211, 213, 215, 219, 234, 241), Second Circuit precedent requires them to exhaust their administrative remedies by presenting such claims to the BCNR. *Def. Br.* at 17. In *Guitard v. United States Sec'y of Navy*, 967 F.2d 737 (2d Cir. 1992), the Second Circuit declared that "[t]he imperatives concerning military discipline require the strict application of the exhaustion doctrine in discharge cases." *Id*. at 740. This declaration applies in equal force to characterizations of service. Significantly, the *Guitard* Court recognized that "[c]laims of 'constitutional, statutory and/or regulatory violations' are within [the BCNR's] purview." *Id.* at 741 (quoting 32 C.F.R. § 723.3)." Following the rationale in *Guitard*, Plaintiffs should have first addressed any of the NDRB's alleged constitutional infirmities with the BCNR before invoking this Court's jurisdiction. *Id.* Therefore, just as in *Guitard*, Plaintiffs' argument that they are not required to first seek relief from the BCNR "has no merit." *Id*.[2]

---

[2] The futility exception to the exhaustion doctrine clearly does not apply. *Guitard*, 967 F.2d at 742. If Plaintiffs had exhausted their administrative remedies by seeking relief from the BCNR, they would

And lastly, the NDRB's decisions are not final because they are subject to further administrative review by the BCNR.  When the Navy promulgated regulations for the BCNR, 32 C.F.R. Part 723, and the NDRB, 32 C.F.R. Part 724, it required petitioners to the BCNR to exhaust their administrative remedies as a jurisdictional requirement.  32 C.F.R. 723(c) ("An application will be accepted for consideration unless: […] (4) The applicant has failed to exhaust all available administrative remedies.").   The NDRB specifically recognized this framework for review by informing each applicant that if he or she "has otherwise exhausted their opportunities before the NDRB, the Applicant may petition the Board for Correction of Naval Records […] for further review." AR 0011, 0173.  Further review, in this case, means that the NDRB's decision is not final.  Therefore, Plaintiffs failed to exhaust their administrative remedies by not seeking review by the BCNR.

### 3.   The Applicable Regulations and Prudential Considerations Require the Court to Decline Jurisdiction.

Plaintiffs argue that "this Court should not require application to the BCNR as a prudential matter."  *Pl. Opp. Br.* at 20.   As described in the section above, the applicable regulations dictate that the Plaintiffs should have sought relief from the JSRA and the BCNR, not just the prudential considerations already detailed in the Defendant's Brief.  *Def. Br.* at 20-22.

### 4.   Again, Plaintiffs' Claims *Concerning the Application of the Hagel Memo to Discharge Review Boards* are Moot.

Plaintiffs assert that their "claims would still not be moot, as, again, they do not hinge solely on the application of the Hagel Memo's decisional standard."  *Pl. Opp. Br.* at 22.  Plaintiffs correctly recognized that Defendant's argument concerning mootness was limited to "the NDRB's application of the Hagel Memo."  *Pl. Opp. Br.* at 22, fn. 7.  As described above, Plaintiffs remaining claims of error should be dismissed for failure to exhaust administrative remedies because they mostly entail alleged

---

have received a *de novo* review by the BCNR, as per the Carson Memo, giving them the full benefit of the Hagel Memo's "liberal consideration" and "special consideration" standards as applicable.

violations of DODI 1332.28 that should have been raised to the JSRA or the BCNR before invoking this Court's jurisdiction.

Given that the NDRB is required to review petitions with liberal consideration set forth in the Hagel Memo via the application of the Kurta Memo, the Plaintiffs' claims are moot. The "Additional Clarifications" attached to the Kurta Memo state "[t]his guidance applies to both BCM/NRs and the DRBs." AR 0958. Until that point, the NDRB was not required to apply the Hagel Memo. The Kurta Memo also incorporated and applied the Carson Memo. *Id.* and AR 0954 (Carson Memo). Notably, the Carson Memo – now applied to the NDRB through the Kurta Memo – stated that the relevant boards "will waive, if it is applicable and bars consideration of cases, the imposition of the statute of limitations. Fairness and equity demand, in cases of such magnitude, that a Veteran's petition receive full and fair review, even if brought outside of the time limit." AR 0954. Further, as both the Kurta Memo and Carson Memo explain, petitioners are entitled to "de novo reconsideration of petitions previously decided without the benefit of all applicable supplemental guidance." AR 0958.[3] Thus, the Plaintiffs in this case are *currently entitled*, with no action from the Court, to *de novo* review at the NDRB with the NDRB applying the Hagel Memo's "liberal consideration" standard and "special consideration" standard via the Kurta Memo.

## 5. Plaintiffs Brought this Action Under § 706(2) of the Administrative Procedure Act, Which Means They Cannot Seek Injunctive Relief.

Plaintiffs argue that "in focusing on one part of Plaintiffs' claims—the NDRB's failure to apply the liberal consideration standard—Defendant ignores the numerous other procedural defects alleged in the Complaint, each of which is sufficient to confer standing." *Pl. Opp. Br.* at 26. Although individual Plaintiffs may have standing to challenge their respective adjudications, they may only

---

[3] Plaintiffs misread the Carson Memo concerning BCM/NRs *de novo* review of DRB decisions. *Pl. Opp. Br.* at 5-6. Generally, the BCNR will review the NDRB's decision for error; it is not a *de novo* review. The Carson Memo directed the BCM/NRs to provide a *de novo* review of DRB decisions that did not have the benefit of the Hagel Memo because the Hagel Memo did not apply to the DRBs.

request this Court to set aside agency action and to remand this case back to the Defendant.  Plaintiffs cannot request injunctive relief because they brought their claims pursuant to § 706(2) instead of § 706(1) of the Administrative Procedure Act ("APA").  *Pl. Compl.* at 34 (Claim I), 36 (Claim II), 38 (Claim III), ¶ 234 (Claim IV), and ¶ 241 (Claim V).

      In this case, the plain language of the APA forecloses the possibility of injunctive relief. *Slockish v. United States FHA*, 682 F. Supp. 2d 1178, 1198 (D. Or. 2009) ("Much of the affirmative injunctive relief suggested by plaintiffs would only be available under § 706(1) of the APA which allows the court to 'compel agency action unlawfully withheld or unreasonably delayed.'  But in order to proceed under this provision, plaintiffs must establish that one of the defendant agencies 'failed to take a discrete agency action that it [was] required to take.' *Norton v. S. Utah Wilderness Alliance*, 542 US 55, 64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004).").  Plaintiffs sue under 5 U.S.C. § 706(2), which authorizes a court only to "hold unlawful and set aside the agency action . . . ."  (5 U.S.C. § 706(2)). Injunctions are authorized under § 706(1) in only limited enumerated circumstances.  *See, e.g. Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) ("The first type of relief [rescission of an immigration decision] is made available by Section 706(2) of the APA, which requires a reviewing court 'to hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law.' 5 U.S.C. § 706(2)(D).  The second form of relief [requesting an injunction to receive permanent resident status] is made available by Section 706(1) of the APA, which requires a reviewing court to 'compel agency action unlawfully withheld.'  *Id.* Section 706(1).").  Because Plaintiffs do not present claims under § 706(1), they cannot request injunctive relief.

      As set forth in the defendant's initial brief as well as its letter brief responding to the plaintiffs' request for discovery (ECF 62), the APA does not permit broad policy attacks.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004), and cases cited in the defendant's initial brief at page 23 onward.  The Plaintiffs' remedies would be limited to remand, which would give them exactly what is open to them right now – *de novo* consideration of their applications with the enhanced "liberal

consideration" standard afforded by the Kurta Memo.

**B. The Class Plaintiffs Fail to State a Claim Concerning the Application of the Hagel Memo Thereby Requiring Dismissal and Class Decertification.**

As described in the initial brief, Plaintiffs have failed to state a claim with respect to the application of the Hagel Memo.  Plaintiffs assert that "[t]his argument fails for three reasons: (1) the Hagel Memo (and, for Mr. Doe, the statutory codification) *did* apply to the NDRB in the relevant time period; (2) Plaintiffs have sufficiently alleged that the NDRB inconsistently applies the Hagel Memo's standards, both before and after the statutory codification of the standard to the NDRB; and (3) Defendant entirely ignores Plaintiffs' APA arguments that do not hinge on the liberal consideration standard at all and that apply to class members whose applications the NDRB denied even before the Hagel Memo was issued." *Pet. Opp. Br.* at 30.  Defendant replies to each argument in turn, and further asserts that the Class Plaintiffs' failure to state a claim with respect to the application of the Hagel Memo warrants the Court's decertification of the Class.

First, as described in Defendants' initial brief and herein, the Hagel Memo did not apply to the NDRB until DoD issued the Kurta Memo.  *Def. Br.* at 26-28.  Additionally, even though the NDRB issued Plaintiff Doe's decision in January 2017 after codification of the "liberal consideration" standard in December 2016, the five-member panel considered and voted on his petition in November 2016.  Second, Plaintiffs' factual allegations of inconsistent application of the Hagel Memo do not change the conclusion of the law that the Hagel Memo did not apply to the NDRB until after DoD issued the Kurta Memo.  Third, Plaintiffs are correct that Defendant limited the failure to state a claim based on the Hagel Memo not applying to the NDRB.  This is because the Court certified the class based on the alleged common injury that the NDRB failed to apply the Hagel Memo prior to the Kurta Memo.  ECF 33 at 10; *see also Kennedy*, ECF 74 at 12.

As a matter of law, the Hagel Memo did not apply to the NDRB until DoD issued the Kurta Memo.  Therefore, the alleged injury supporting class certification is no injury at all.  The Court should

dismiss the claims of the class outright and decertify the class.

Thus, for the reasons set forth in the initial brief and herein, the defendant respectfully requests that the Court dismiss this case or order a voluntary remand.

<div style="margin-left: 40%;">

For The Defendant,

JOHN H. DURHAM
UNITED STATES ATTORNEY


By:   /S/ David C. Nelson    
      David C. Nelson (ct25640)
      Assistant U.S. Attorneys
      157 Church Street, 24th Floor
      New Haven, Connecticut 06510
      Tel:   (203) 821-3700
      Email: David.C.Nelson@usdoj.gov


By:   /S/ Jonathan E. Dowling    
      Jonathan E. Dowling
      Lieutenant Commander
      Judge Advocate General's Corps
      1322 Patterson Avenue
      Washington, D.C. 20374

</div>

## **CERTIFICATION**

I hereby certify that on August 12, 2019, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<div style="margin-left: 40%;">

/S/ David C. Nelson    
David C. Nelson (ct25640)
Assistant United States Attorney

</div>