# Exhibit A

Docket No. MD20-00477

MANKER, Tyson L., XXX-XX-2288, ex- LCpl, USMC

### CURRENT DISCHARGE AND APPLICANT'S REQUEST

Application Received: 20200125
Characterization of Service Received: (per DD 214) UNDER OTHER THAN HONORABLE CONDITIONS
Narrative Reason for Discharge: (per DD 214) MISCONDUCT
Authority for Discharge: (per DD 214) MARCORSEPMAN 6210.5 [DRUGS]

Applicant's Request: Characterization change to: HONORABLE
Narrative Reason change to: COMPLETION OF REQUIRED ACTIVE SERVICE
Reentry Code change to: NONE REQUESTED

### SUMMARY OF SERVICE

**Prior Creditable Service:**
Inactive: NONE                               Active: NONE

**Period of Service Under Review:**
Date of Enlistment: 20000808                 Age at Enlistment: 18
Period of Enlistment: 4 Years  NO Extension
Date of Discharge: 20031219                  Highest Rank/Rate: Cpl
Length of Service: 03 Year(s)  04 Month(s)  12 Day(s)
Education Level: 12                          AFQT: 88

Evaluation Marks (# of occasions): Performance/Proficiency: 4.4 (8)  Behavior/Conduct: 4.3 (8)
Fitness Reports: NOT APPLICABLE

Awards and Decorations (per DD 214):  Rifle MM SSDR NDSM PUC CAR

Periods of UA: NONE
Periods of CONF: NONE
Other Time Lost per DD214: NONE

NJP: 2

- 20020722:   Article 92 (Failure to obey order, regulation)
              Article 134 (General article) Underage consumption of alcohol
              Awarded: FOP RESTR EPD    Suspended: NONE

- 20031028:   Article 92 (Failure to obey order, regulation) Failed to prevent two junior Marines from using methamphetamines and marijuana, as it was his duty to do.
              Article 112a (Wrongful use, possession, manufacture or introduction of controlled substance) 2 specifications
              Awarded: RIR FOP    Suspended: NONE

SCM: NONE        SPCM: NONE       CIVIL ARREST: NONE  CC: NONE

Retention Warning Counseling: 1

- 20031023:   For counseling concerning Applicant's admitted illegal drug involvement, methamphetamines and marijuana usage identified through his statement to CID. The Applicant was informed of a notice of administrative separation due to an admission of illegal drug use to CID.

---

Key:  NFIR - Not found in record      RESTR - Restriction        NJP - Nonjudicial punishment    SCM - Summary court-martial
      SPCM - Special court-martial    FOP - Forfeiture of pay    RIR - Reduction in rank          EPD - Extra duties
      CONF - Confinement              CC - Civilian conviction   CCU - Correctional Custody Unit  CBW - Confinement on bread and water

Docket No. MD20-00477

## ADMINISTRATIVE CORRECTIONS TO THE APPLICANT'S DD 214

The NDRB did note administrative error(s) on the original DD Form 214:

    Block 13, Decorations, Medals, Badges, Citations, and Campaign Ribbons Awarded or Authorized, should include: "Iraq Campaign Medal, Global War on Terrorism Service Medal"

The NDRB will recommend to Commander, Navy Personnel Command or Commandant of the Marine Corps that the DD 214 be corrected as appropriate.

### TYPES OF DOCUMENTS SUBMITTED/REVIEWED

| | | | | | |
|---|---|---|---|---|---|
| DD 214: | ☒ | Service/Medical Record: | ☒ | Other Records: | ☐ |
| Employment: | ☒ | Finances: | ☐ | Education/Training: | ☒ |
| Health/Medical Records: | ☒ | Rehabilitation/Treatment: | ☐ | Criminal Records: | ☐ |
| Personal Documentation: | ☒ | Community Service: | ☐ | References: | ☒ |
| Department of VA letter: | ☐ | Other Documentation: | ☒ | | |

### ADDITIONAL STATEMENTS

| | | | | | |
|---|---|---|---|---|---|
| From Applicant: | ☒ | From/To Representation: | ☐ | From/To Congress member: | ☒ |

### TYPES OF WITNESSES WHO TESTIFIED

Expert: ☐            Character: ☐

Witness E-1:            Witness C-1:
Witness E-2:            Witness C-2:

### PERTINENT REGULATION/LAW

A. The Marine Corps Separation and Retirement Manual, (MCO P1900.16F), effective 1 September 2001 until Present, Paragraph 6210, <u>MISCONDUCT</u>.

B. Secretary of the Navy Instruction 5420.174D of 22 December 2004, Naval Discharge Review Board (NDRB) Procedures and Standards, Part IV, Para 403m(7)(a), Presumption Concerning Court-Martial Specifications.

---

**Key:**
| | | | |
|---|---|---|---|
| NFIR - Not found in record | RESTR - Restriction | NJP - Nonjudicial punishment | SCM - Summary court-martial |
| SPCM - Special court-martial | FOP - Forfeiture of pay | RIR - Reduction in rank | EPD - Extra duties |
| CONF - Confinement | CC - Civilian conviction | CCU - Correctional Custody Unit | CBW - Confinement on bread and water |

# DEPARTMENT OF THE NAVY
## NAVAL DISCHARGE REVIEW BOARD (NDRB)
## DISCHARGE REVIEW DECISIONAL DOCUMENT

### APPLICANT'S ISSUES

1. The Applicant contends procedural defects in his discharge continue to warrant relief.
2. The Applicant contends he is entitled to relief under the Kurta Memo's Guidance; "Liberal Consideration;" "Leniency;" and that his Post-Traumatic Stress Disorder (PTSD) and Traumatic Brain Injury (TBI) are mitigating and extenuating circumstances in his misconduct; and further, contends he did not have the benefit of today's safeguards and did not receive a mandatory post-deployment medical examination.
3. The Applicant contends his in-service and post-service conduct are outstanding and warrants consideration for an upgrade.

### DISCUSSION

Date: 20200206    DOCUMENTARY REVIEW    Location: WASHINGTON D.C.    Representation: Civilian Counsel

The Naval Discharge Review Board (NDRB), under its responsibility to examine the propriety and equity of an Applicant's discharge, is authorized to change the character of service and the reason for discharge if such change is warranted. In reviewing discharges, the Board presumes regularity in the conduct of governmental affairs unless there is substantial credible evidence to rebut the presumption, to include evidence submitted by the Applicant. The Board completed a thorough review of the circumstances that led to the discharge and the discharge process to ensure the pertinent standards of equity and propriety were met.

As a result of the Applicant's claim of a mental health condition, including PTSD, TBI, or Military Sexual Trauma, and in accordance with 10 U.S.C. § 1553, the NDRB included a member who is a physician, clinical psychologist, or psychiatrist. Additionally, and pursuant to § 1553, the NDRB reviewed the case with liberal consideration that a mental health condition, including PTSD, TBI, or Military Sexual Trauma potentially contributed to the circumstances resulting in the discharge of a lesser characterization. The Applicant's service record documents completion of a deployment from March to September 2003 in support of Operation IRAQI FREEDOM. Pursuant to § 1553 (d)(2), the service secretary expedited a final decision and accorded the case sufficient priority to achieve an expedited resolution.

On February 6, 2020, the NDRB conducted a de novo Document Review of the Applicant's case that included supplemental information not previously provided by the Applicant. Additionally, the Applicant requested incorporation of his Document Review of November 29, 2016 (Case # MD16-01170) that raised nine claims/issues and which the Applicant summarized/categorized into four claims/issues in the Applicant's [Supplemental] Application of January 25, 2020. The NDRB considered the Applicant's 13 issues and responded/categorized the Applicant's claims into the three issues below.

The Applicant's record of service included:

One Retention Warning Counseling

Two Nonjudicial Punishment (NJP) for violations of the Uniform Code of Military Justice (UCMJ):
    Article 92 (Failure to obey order, regulation), Two specifications
    Article 112a (Wrongful use, possession, manufacture or introduction of controlled substance), Two specifications
    Article 134 (General article)

Based on the Article 112a violation, processing for administrative separation is mandatory. When notified of administrative separation processing, the Applicant waived his right to consult with a qualified counsel, and request an Administrative Separation Board. However, the NDRB noted the Separation Authority considered the Applicant's statement during the Administrative Separation process.

Issue 1: The Applicant contends procedural defects in his discharge continue to warrant relief; specifically, his discharge is improper because of procedural defects in how his infractions and administrative separation were investigated, charged, and processed.

In the evidence of record, the Applicant was subject to and found guilty at two NJPs for violations of Articles 92 (Two Specifications), 112a (Two Specifications), and 134. The circumstances surrounding the Applicant's second NJP was not only his illicit use of Methamphetamine and Marijuana, but also his breach of duty as a Non-Commissioned Officer to prevent two

subordinate Marines from using Methamphetamine and Marijuana. In review of the Applicant's official military record, the Applicant provided his admission of drug use to a Criminal Investigation Division (CID) investigator. The NDRB did not have a record of the Applicant's statement to CID, his rights advisement upon being questioned by CID, or a report of the CID investigation. However, contained in the record were documents relating to the Administrative Separation process and various medical and substance abuse evaluations at the time of the Applicant's separation.

The Applicant contends that he was interrogated without warning or assistance of counsel and coerced under duress into signing an involuntary confession, and his chain-of-command then relied solely on his coerced confession of drug use as its only evidence for NJP and Administrative Separation. The Applicant further submitted there were errors in fact, law, procedure, and discretion associated with his discharge and his rights were prejudiced; thereby, substantial doubt exists that his discharge would have occurred had his right against compulsory self-incrimination not been violated. In addition, the Applicant contends that he was nonjudicially punished for violating purely military offenses over which courts-Martial have exclusive jurisdiction and his command erroneously charged him at NJP. The Applicant also contends that the procedures used to administratively separate him violated the Manual for Courts-Martial and unconstitutionally deprived him of liberty and property interests in violation of his due process rights and that he was denied the opportunity of an impartial hearing before being deprived of substantial liberty and property interests.

The Board considered the Applicant's claim of duress and denial of counsel, and found there was insufficient evidence the Applicant's rights were violated during his CID interview. The Board also considered the Applicant's description where his confession of drug use occurred after the cessation of questioning (the same questioning where he emphasized he had just stalwartly denied culpability) and it was only after CID began processing/finger printing the Applicant for the stated charges (independent of a voluntarily or coerced admission) where the Applicant then admitted to his drug use. However, besides the Applicant's sworn statement to CID on 7 October 2003 admitting to his use of Methamphetamine and Marijuana, the record shows that the Applicant admitted to drug use to his Commanding Officer (CO) stating that it was a "snap decision" (extracted from CO's letter to CO, 3d Battalion 7th Marines, 27 October 2003) and in a letter (undated) to Major General Mattis. In the letter to Major General Mattis, the Applicant states, "I know the mistake I made was a bad one, and that the judgment I used was reckless and irresponsible. In this letter, the Applicant also stated, "I hope that although I made a stupid and costly decision, the achievements throughout my short career are not forgotten." The record also shows the Applicant's illicit drug use was initially brought to the Command's attention because of an investigation of another Marine; a basis of evidence completely separate from the Applicant's statement(s).

The Board recognizes that the Applicant may have felt overwhelmed contemplating the consequences of being charged with illicit drug use as a non-commission officer, but the statements and documents provided by the Applicant do not refute the presumption of regularity in this case. The Applicant was given the opportunity to consult with counsel and request a court-martial prior to his NJP, but waived these rights under Article 31, UCMJ. The Applicant states that this opportunity to exercise his rights under Article 31 was granted long after his "coerced confession" had been obtained and used as evidence against him. However, if the Applicant felt that his confession was coerced and would be used against him at NJP, it was his obligation to contest this. He had the opportunity to dispute his confession with aid from counsel at a court-martial, but he chose not to do so and accepted NJP. In addition, when provided notification of separation proceedings, the Applicant waived his right to counsel, to submit a written statement in rebuttal to the proposed separation, and to request an Administrative Separation Board. During trial or an Administrative Separation Board, the Applicant would have had the opportunity to mount a defense against the charges. The Applicant had multiple opportunities to contest his charges with aid of counsel, but chose not to exercise these opportunities.

Finally, commission of a serious offense does not require adjudication by nonjudicial or judicial proceedings or civilian conviction, however, the offense must be substantiated by a preponderance of evidence. The Applicant was provided the opportunity to present his case before an administrative board, but waived that right, thus accepting the discharge recommended in the letter of notification. Based upon available records, nothing indicates that the Applicant's discharge or the actions by his command was in any way inconsistent with the standards of discipline in the United States Marine Corps. Relief denied on this issue.

Issues 2-3: The Applicant contends he is entitled to relief under the Kurta Memo's Guidance; "Liberal Consideration;" and "Leniency;" and that his Post-Traumatic Stress Disorder (PTSD) and Traumatic Brain Injury (TBI) are mitigating and extenuating circumstances in his misconduct; and further, contends he did not have the benefit of today's safeguards and did not receive a mandatory post-deployment medical examination. Additionally, the Applicant contends his in-service and post-service conduct are outstanding and warrants consideration for an upgrade.

The NDRB reviews the propriety and equity of an Applicant's discharge individually, on a case-by-case basis. If such a review reveals an impropriety or inequity, relief is in order. Regulations permit relief on equitable grounds if the Applicant's discharge is inconsistent with standards of discipline of the Naval Service. An Honorable characterization of service is warranted

when the quality of a member's service generally meets the standard of acceptable conduct and performance for naval personnel. A General (Under Honorable Conditions) discharge is warranted when the quality of the member's service has been honest and faithful but significant negative aspects of the member's conduct or performance of duty outweighed the positive aspects of the member's service record. An Under Other Than Honorable Conditions discharge is warranted when a member engages in conduct involving one or more acts or omissions that constitute a significant departure from the conduct expected of members of the Naval Service.

In this case, the Board found that member's service was honest and faithful but significant negative aspects of the member's conduct or performance of duty outweighed the positive aspects of the member's service record. In support of his PTSD, the Applicant provided evidence of a Post Deployment Health Assessment (PDHA) of 12 August 2003 and evidence of post-service mental health records. The Applicant completed the 2003 PDHA in Iraq approximately three weeks prior to his redeployment back to his home duty station. Upon review of the responses provided in this PDHA, the NDRB reasoned that it was likely that the Applicant had been exhibiting PTSD symptomology. When questioned if he intended to seek out mental health; had concerns about his health from possible deployment exposures or events; or had any questions concerning his health; the Applicant responded "No" to all. This PDHA was reviewed and certified by a Chief Hospital Corpsman, Independent Duty Corpsman.

Within one year of separation from service, the Applicant sought out counseling for depression, anxiety, sleep disturbances, rage, and anger from a private counseling center. In 2011 and 2014, the Applicant again sought out assistance from this same counseling center and he was eventually referred to a Department of Veterans Affairs (VA) group and individual therapy. In 2015, the VA diagnosed the Applicant with PTSD that was connected to his service in combat; Depression associated with PTSD; Anxiety and Flashbacks associated with PTSD; and Traumatic Brain Injury (TBI). Later in 2015, the VA further affirmed service connection for these diagnoses by granting a 60% rating for PTSD. In 2019, the VA increased the Applicant's PTSD rating to 100% and determined a 10% rating for TBI.

In regards to the Applicant's in-service and post-service conduct and achievement, the NDRB noted the Applicant was promoted to Corporal, served as a squad leader in combat, completed three years and four months of service, attained proficiency and conduct markings, and was awarded a Combat Action Ribbon during his deployment to Iraq. Since separation from service, the NDRB reviewed evidence of a *Magna Cum Laude* Bachelor of Arts Degree in Political Science and Juris Doctor Degree. Today, the Applicant is committed to his work as an Illinois licensed attorney and remains an active veteran's advocate. Numerous character statements, awards, certificates, and news articles were provided with the current and original petition.

In determining discharge characterization of service, the Applicant's conduct forms the primary basis for consideration. The Applicant's in-service conduct included two NJPs. The first NJP involving violations of Articles 92 and 134 were determined to be minor infractions. His following NJP accounts for violations of Article 92 and 112a (Two Specifications) and this was determined to be a willful failure to meet the requirements of his contract honorably. However, the Applicant contends his PTSD was a mitigating factor in his misconduct. The Applicant's official medical service record includes evidence of PTSD symptomology and the post-service documentation provided by the Applicant contains PTSD impressions from a Licensed Clinical Social Worker and a PTSD diagnosis from a VA mental health professional. The full record of the Applicant's in-service and post-service mental health supports the contention that his PSTD was a mitigating factor associated with his in-service misconduct. Moreover, the NDRB determined that the unique circumstances of this individual case, coupled with the documented Mental Health Diagnosis, as well as the Applicant's in-service and post-service record warranted additional consideration in the determination of overall characterization of service.

The NDRB, granting liberal consideration in this case, determined the awarded characterization of service was inequitable, and relief in the form of an upgrade in the characterization of service to General was warranted. Full relief to Honorable and the requested changes to the narrative for separation and RE-code were not granted because the NDRB determined the severity of the Applicant's mental health while in service did not rise to a level that completely absolved him of his misconduct. Specifically, the NDRB considered the Applicant's character prior to exhibiting PTSD symptomology and found that his judgment and professional behavior was questioned and documented on two occasions. One was an alcohol related incident that is contained in his first NJP and the second was a Counseling Warning to which he was not recommended for promotion and cites, "Requires additional mentorship in the application of judgment. Does not possess the maturity to serve as a Sgt [Sergeant]." Additional negative aspects in this case includes the Applicant's responsibility as a Corporal and Squad Leader to maintain good order and discipline; his conduct in engaging in an unduly familiar relationship with Marines of junior rank; and contributing to the delinquency of Marines of junior rank. Consequently, upon thorough consideration of the Applicant's rank, grade, overall in-service performance and conduct, maturity, and mental health status, the NDRB determined the Applicant's service was honest and faithful, but significant negative aspects of the member's conduct or performance of duty outweighed the positive aspects of the member's service record.

Docket No. MD20-00477

## DECISION

After a thorough review of the available evidence, to include the Applicant's issues, summary of service, medical and service record entries, and discharge process, the Board found the discharge was proper but not equitable  Therefore, the awarded characterization of service shall change to **GENERAL (UNDER HONORABLE CONDITIONS)**, the narrative reason for separation shall remain **MISCONDUCT** with a corresponding separation code of **HKK1**, and the reentry code shall remain **RE-4B**. The Applicant remains eligible for a personal appearance hearing for a period of fifteen years from the date of the discharge. The Applicant is directed to the Addendum for additional information.

**ADDENDUM: Information for the Applicant**

*Complaint Procedures*: If you believe the decision in your case is unclear, not responsive to the issues you raised, or does not otherwise comport with the decisional document requirements of DoD Instruction 1332.28, you may submit a complaint in accordance with Enclosure (5) of that Instruction to the Joint Service Review Activity, OUSD (P&R) PI-LP, The Pentagon, Washington, DC 20301-4000. You should read Enclosure (5) of the Instruction before submitting such a complaint. The complaint procedure does not permit a challenge of the merits of the decision; it is designed solely to ensure that the decisional documents meet applicable requirements for clarity and responsiveness. You may view DoD Instruction 1332.28 and other Decisional Documents by going online at http://boards.law.af.mil/. More information is available at http://www.secnav.navy.mil/mra/CORB/pages/ndrb/default.aspx.

*Additional Reviews*: After a document review has been conducted, former members are eligible for a personal appearance or telephonic hearing, provided the application is received at the NDRB within 15 years of the Applicant's date of discharge. The Applicant can provide documentation to support any claims of post-service accomplishments or any additional evidence related to this discharge. Representation at a personal appearance hearing is recommended but not required. There are veterans organizations such as the American Legion and the Disabled American Veterans that are willing to provide guidance to former service members in their efforts to obtain a discharge upgrade. If a former member has been discharged for more than 15 years, has already been granted a personal appearance hearing or has otherwise exhausted their opportunities before the NDRB, the Applicant may petition the Board for Correction of Naval Records (BCNR), 701 South Courthouse Road, Suite 1001, Arlington, VA 22204-2490, or http://www.secnav.navy.mil/mra/bcnr/Pages/default.aspx for further review.

*Service Benefits:* The U.S. Department of Veterans Affairs (VA) determines eligibility for post-service benefits, not the NDRB. There is no requirement or law that grants recharacterization solely on the issue of obtaining veterans benefits and this issue does not serve to provide a foundation upon which the Board can grant relief.

*Employment/Educational Opportunities*: The NDRB has no authority to upgrade a discharge for the sole purpose of enhancing employment or educational opportunities. Regulations limit the NDRB's review to a determination of the propriety and equity of the discharge.

*Reenlistment/RE-code:* The NDRB is authorized to change a NDRB Applicant's Reenlistment Code if related to an accompanying change in discharge characterization or narrative, but this authority is strictly limited to those cases where an applicant's narrative reason or characterization of discharge is changed and that change warrants revision of the previously issued reenlistment code. Additionally, the NDRB has no authority to upgrade a discharge for the sole purpose of enhancing reenlistment opportunities. An unfavorable "RE-CODE" is, in itself, not a bar to reenlistment. A request for a waiver can be submitted during the processing of a formal application for reenlistment through a recruiter.

*Medical Conditions and Misconduct*: DoD disability regulations do not preclude a disciplinary separation. Appropriate regulations stipulate that separations for misconduct take precedence over potential separations for other reasons. Whenever a member is being processed through the Physical Evaluation Board, and is processed subsequently for an administrative involuntary separation or is referred to a court martial for misconduct, the disability evaluation is suspended pending the outcome of the non-disability proceedings. If the action includes either a punitive or administrative discharge for misconduct or for any basis wherein an Other Than Honorable discharge is authorized, the medical board report is filed in the member's terminated health record. Additionally, the NDRB does not have the authority to change a narrative reason for separation to one indicating a medical disability or other medical related reasons. Only the BCNR can grant this type of narrative reason change.

*Automatic Upgrades*: There is no law or regulation that provides for an unfavorable discharge to be upgraded based solely on the passage of time or good conduct subsequent to leaving naval service.

*Post-Traumatic Stress Disorder and/or Traumatic Brain Injury*: For all claims involving PTSD and/or TBI, the NDRB's review implemented the guidance set forth in the SECDEF Memorandum of 3 September 2014 (Supplemental guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder). In accordance with U.S. Code, Title X, Section 1553 (d)(1) & d(2), the NDRB included a member who is a physician, clinical psychologist, or psychiatrist and accorded the case sufficient priority to achieve an expedited resolution and a final decision.

*Post-Service Conduct*: The NDRB is authorized to consider post-service factors in the recharacterization of a discharge. Outstanding post-service conduct, to the extent such matters provide a basis for a more thorough understanding of the Applicant's performance and conduct during the period of service under review, is considered during Board reviews.

Docket No. MD20-00477

Documentation to support a post-service conduct upgrade includes, but is not limited to: a verifiable continuous employment record; marriage and children's birth certificates (if applicable); character witness statements; documentation of community or church service; certification of non-involvement with civil authorities; evidence of financial stability or letters of good standing from banks, credit card companies, or other financial institutions; attendance at or completion of higher education (official transcripts); and documentation of a drug-free lifestyle. The Applicant is advised that completion of these items alone does not guarantee the upgrade of an unfavorable discharge, as each discharge is reviewed by the Board on a case-by-case basis to determine if post-service accomplishments help demonstrate in-service misconduct was an aberration and not indicative of the member's overall character.

*Issues Concerning Bad-Conduct Discharges (BCD)*: Because relevant and material facts stated in a court-martial specification are presumed by the NDRB to be established facts, issues relating to the Applicant's innocence of charges for which he was found guilty cannot form a basis for relief. With respect to a discharge adjudged by a special court-martial, the action of the NDRB is restricted to upgrades based on clemency. Clemency is an act of leniency that reduces the severity of the punishment imposed. The NDRB does not have the jurisdictional authority to review a discharge or dismissal resulting from a general court-martial.

*Board Membership:* The names and votes of the members of the NDRB Board are recorded on the original of this document and may be obtained from the service records by writing to: Secretary of the Navy Council of Review Boards, Attn: Naval Discharge Review Board, 720 Kennon Street SE Rm 309, Washington Navy Yard DC 20374-5023.

*Military Sexual Trauma*: The Department of Veterans Affairs (VA) uses the term "military sexual trauma" (MST) to refer to experiences of sexual assault or repeated, threatening sexual harassment experienced while on federal active duty, active duty for training, or inactive duty training. To get confidential one-on-one help please contact the MST Coordinator at your nearest VA Medical Center or Call Safe Helpline at 1-877-995-5247 or visit www.mentalhealth.va.gov/msthome.asp.

*Reporting Military Sexual Trauma*: To report a military sexual trauma, you can make an anonymous report to the Naval Criminal Investigative Service (NCIS) by Text or Online. The NCIS Tip Line provides service members, veterans and civilians a safe, discreet and ANONYMOUS option to report criminal and force protection threats within the USN and USMC without concerns of retaliation. To report a crime by Text: Text **274637** (CRIMES); Type "**NCIS**" at the top of the message; and include as much detail as possible to ensure your tip can effectively be investigated. To send your ANONYMOUS Tip via the online, go to https://www.tipsubmit.com/webtipsNAV.aspx?AgencyID=840.

*Suicide Prevention*: Veterans in emotional crisis or their loved ones can call the free and confidential Veterans Crisis Line at 1-800-273-8255 (then press 1); or chat online at http://www.veteranscrisisline.net, or send a text message to 838255 to connect with a caring, qualified Veteran Affairs Responder who can deal with any immediate crisis.