# Exhibit B

Docket No. MD20-00489

■■■■■■■■■■., XXX-XX-■■■■, ex-Pvt, USMC

CURRENT DISCHARGE AND APPLICANT'S REQUEST

Application Received: 20160602
Characterization of Service Received: (per DD 214) UNDER OTHER THAN HONORABLE CONDITIONS
Narrative Reason for Discharge: (corrected) MISCONDUCT
Reenlistment Code: RE-4
Authority for Discharge: (per DD 214) MARCORSEPMAN 6210.3 [PATTERN OF MISCONDUCT]

Applicant's Request:  Characterization change to: HONORABLE
                     Narrative Reason change to: NONE REQUESTED

SUMMARY OF SERVICE

**Prior Service:**
Inactive: USMCR (DEP) 20000908 - 20001210 COG          Active: NONE

**Period of Service Under Review:**
Date of Current Enlistment: 20001211            Age at Enlistment: 19
Period of Enlistment: 4 Years  0 Months
Date of Discharge: 20040114                     Highest Rank: LANCE CORPORAL
Length of Service: 03 Year(s) 01 Month(s) 04 Day(s)
Education Level: 12                             AFQT: 35
MOS: 0411
Proficiency/Conduct Marks (# of occasions): 4.0 (7) / 3.4 (7)   Fitness Reports: NOT APPLICABLE

Awards and Decorations (per DD 214):  Rifle MM CAR PUC SSDR NDSM

NJP: 5

- 20010815:  Article 121 (Larceny)
             Awarded: FOP RESTR EPD     Suspended: RESTR EPD

- 20011221:  Article 121 (Larceny)
             Awarded: FOP RESTR EPD     Suspended: FOP

- 20020521:  Article 86 (Absence without leave) 2 specifications
             Awarded: FOP RESTR EPD     Suspended: NONE

- 20021203:  Article 91 (Insubordinate conduct toward WO, NCO or PO)
             Article 92 (Failure to obey order or regulation)
             Awarded: FOP RESTR EPD     Suspended: FOP

- 20030131:  Article 134 (General article) breaking restriction
             Awarded: FOP RESTR      Suspended: RESTR

SCM: 2

- 20011005:  Article 91 (Insubordinate conduct toward WO, NCO or PO)
             Article 92 (Failure to obey order or regulation)
             Article 107 (False official statements)
             Article 113 (Misbehavior of sentinel)
             Sentence: CONF 30 days (20011005-20011028, 24 days) FOP RIR E-1

**Key:**  NFIR - Not found in record     RESTR - Restriction        NJP - Nonjudicial punishment    SCM - Summary court-martial
         SPCM - Special court-martial   FOP - Forfeiture of pay    RIR - Reduction in rank         EPD - Extra duties
         CONF - Confinement             CC - Civilian conviction   CCU - Correctional Custody Unit  CBW - Confinement on bread and water

|   |   |
|---|---|
| - 20030903: | Article 86 (Absence without leave) |
|   | Article 92 (Failure to obey order or regulation) 2 specifications |
|   | Sentence: CONF 30 days (20030903-20030926, 24 days) FOP |

SPCM: NONE   CC: NONE

Retention Warning Counseling: 1

- 20011214:  For disrespect toward a NCO, underage drinking, false official statement, and sleeping on post.

NDRB Documentary Review Conducted (date):    20141117
NDRB Documentary Review Docket Number:       MD14-00494
NDRB Documentary Review Findings:            Proper as issued and that no change is warranted.

### ADMINISTRATIVE CORRECTIONS TO THE APPLICANT'S DD 214

The NDRB did note administrative error(s) on the original DD Form 214:

Block 28, Narrative Reason for Separation, should read: "MISCONDUCT"

The NDRB will recommend to the Commandant of the Marine Corps that the DD 214 be corrected as appropriate.

### TYPES OF DOCUMENTS SUBMITTED/REVIEWED

**Related to Military Service:**
| | | | | | |
|---|---|---|---|---|---|
| DD 214: | ☒ | Service/Medical Record: | ☒ | Other Records: | ☐ |

**Related to Post-Service Period:**
| | | | | | |
|---|---|---|---|---|---|
| Employment: | ☐ | Finances: | ☐ | Education/Training: | ☐ |
| Health/Medical Records: | ☒ | Rehabilitation/Treatment: | ☒ | Criminal Records: | ☐ |
| Personal Documentation: | ☒ | Community Service: | ☐ | References: | ☐ |
| Department of VA letter: | ☐ | Other Documentation: | ☒ | | |

Additional Statements:
| | | | | | |
|---|---|---|---|---|---|
| From Applicant: | ☒ | From/To Representation: | ☒ | From/To Congress member: | ☐ |

### TYPES OF WITNESSES WHO TESTIFIED

| | | | |
|---|---|---|---|
| Expert: | ☒ | Character: | ☐ |

E1: Lucas Bachmann, M.D.

### PERTINENT REGULATION/LAW

A. Paragraph 6210, MISCONDUCT, of the Marine Corps Separation and Retirement Manual, (MCO P1900.16F), effective 1 September 2001 until Present.

B. Secretary of the Navy Instruction 5420.174D of 22 December 2004, Naval Discharge Review Board (NDRB) Procedures and Standards, Part II, Para 211, Regularity of Government Affairs, Part V, Para 502, Propriety and Para 503, Equity.

---

**Key:**  NFIR - Not found in record    RESTR - Restriction    NJP - Nonjudicial punishment    SCM - Summary court-martial
SPCM - Special court-martial    FOP - Forfeiture of pay    RIR - Reduction in rank    EPD - Extra duties
CONF - Confinement    CC - Civilian conviction    CCU - Correctional Custody Unit    CBW - Confinement on bread and water

# DEPARTMENT OF THE NAVY
# NAVAL DISCHARGE REVIEW BOARD (NDRB)
# DISCHARGE REVIEW DECISIONAL DOCUMENT

### APPLICANT'S ISSUES

1. The Applicant contends his discharge should be upgraded pursuant to the Kurta Memo and other applicable regulations and guidance, including the Wilkie Memo.
2. The Applicant contends a discharge upgrade should be granted because he would not have received the same discharge status under new separation policies and procedures.
3. The Applicant contends the conduct leading to his discharge was caused by, and is mitigated by, his PTSD.
4. The Applicant contends his continued struggle with PTSD and his exemplary post-discharge conduct support upgrading his discharge status to Honorable.

### DISCUSSION

Date: 20200227    DOCUMENTARY REVIEW    Location: WASHINGTON D.C.    Representation: Civilian Counsel

The Naval Discharge Review Board (NDRB), under its responsibility to examine the propriety and equity of an Applicant's discharge, is authorized to change the character of service and the reason for discharge if such change is warranted. In reviewing discharges, the Board presumes regularity in the conduct of governmental affairs unless there is substantial credible evidence to rebut the presumption, to include evidence submitted by the Applicant. The Board completed a thorough review of the circumstances that led to the discharge and the discharge process to ensure the pertinent standards of equity and propriety were met.

As a result of the Applicant's claim of a mental health condition, including PTSD, TBI, or Military Sexual Trauma, and in accordance with 10 U.S.C. § 1553, the NDRB included a member who is a physician, clinical psychologist, or psychiatrist. Additionally, and pursuant to § 1553, the NDRB reviewed the case with liberal consideration that a mental health condition, including PTSD, TBI, or Military Sexual Trauma potentially contributed to the circumstances resulting in the discharge of a lesser characterization. The Applicant's service record documents completion of a deployment from January to June 2003 in support of Operation IRAQI FREEDOM. Pursuant to § 1553 (d)(2), the service secretary expedited a final decision and accorded the case sufficient priority to achieve an expedited resolution.

The Applicant's record of service included:

One Retention Warning Counseling

Five Nonjudicial Punishment (NJP) for violations of the Uniform Code of Military Justice (UCMJ):
    Article 86 (Absence without leave, etc.)
    Article 91 (Insubordinate conduct toward warrant, noncommissioned, petty officer)
    Article 92 (Failure to obey order, regulation)
    Article 121 (Larceny)
    Article 134 (General article)

Two Summary Court-Martial (SCM) for violations of the UCMJ:
    Article 86 (Absence without leave, etc.)
    Article 91 (Insubordinate conduct toward warrant, noncommissioned, petty officer)
    Article 92 (Failure to obey order, regulation)
    Article 107 (False official statements)
    Article 113 (Misbehavior of sentinel or lookout)

Based on the offenses committed by the Applicant, the command administratively processed the Applicant for separation. When notified of administrative separation processing, the Applicant exercised his rights to consult with a qualified counsel, submit a written statement, and request an Administrative Separation Board.

On February 27, 2020, the NDRB conducted a de novo Document Review of the Applicant's case that included supplemental information not previously provided by the Applicant. The NDRB considered the Applicant's issues in accordance with the

Kurta Memo and other applicable regulations and guidance, including the Wilkie Memo, and responded/categorized the Applicant's claims into the issues below.

Issue 1-3: The Applicant contends his discharge should be upgraded pursuant to the Kurta Memo and other applicable regulations and guidance, including the Wilkie Memo. Further, the Applicant contends a discharge upgrade should be granted because he would not have received the same discharge status under new separation policies and procedures. Additionally, the Applicant contends the conduct leading to his discharge was caused by, and is mitigated by, his PTSD.

The NDRB reviews the propriety and equity of an Applicant's discharge individually, on a case-by-case basis. If such a review reveals an impropriety or inequity, relief is in order. Regulations permit relief on equitable grounds if the Applicant's discharge is inconsistent with standards of discipline of the Naval Service.

Pursuant to Marine Corps Order 1900.16F Marine Corps Separation and Retirement Manual, (MARCORSEPMAN) ¶ 6210, "[w]henever a Marine is involved in misconduct … commanders shall process the Marine for separation unless rehabilitation and retention are warranted…." ¶ 6210. When the Marine is separated the "[c]haracterization of service normally shall be under other than honorable conditions, but characterization as general (under honorable conditions) may be warranted in some circumstances." ¶ 6210. Although "[m]ost Marines serve honorably. In fairness to those Marines, commanders and separation authorities should ensure that undeserving Marines receive no higher characterization than is due." ¶ 1004. The underlying reason and principle is that "[c]haracterization [of military service] is recognition of the quality of a Marine's performance and conduct. Determining the proper characterization should not be underestimated. Characterization serves as a goal for each Marine and as a meaningful endorsement to potential employers." ¶ 1004.

The four characterizations of service based upon administrative separation/discharge are: Honorable; General (Under Honorable Conditions); Under Other Than Honorable Conditions; and Uncharacterized. An Honorable characterization of service is warranted when the quality of a member's service generally meets the standard of acceptable conduct and performance for Naval personnel. A General (Under Honorable Conditions) discharge is warranted when the quality of the member's service has been honest and faithful but significant negative aspects of the member's conduct or performance of duty outweighed the positive aspects of the member's service record. An Under Other Than Honorable Conditions discharge is warranted when a member engages in conduct involving one or more acts or omissions that constitute a significant departure from the conduct expected of members of the Naval Service. An Uncharacterized discharge is warranted when separation is initiated while a member is within the first 180 days of continuous active duty except when the characterization of service as Under Other Than Honorable Conditions (UOTHC) is authorized.

In this case, the Board found that the member engaged in repeated and purposeful misconduct involving one or more acts or omissions that constituted a significant departure from the conduct expected of members of the Naval Service. Here, the Board considered the totality of the Applicant's military performance and conduct and noted a chronic and repeated pattern of misconduct beginning within the first six-months of the Applicant's assignment to his first duty station. Specifically, the Board noted the Applicant's Command was required to institute five NJPs and one Summary Courts-Martial prior to his first deployment in order to discipline the Applicant for his misconduct. The Applicant's misconduct ranged from the larceny of a cell phone belonging to a another Marine; Disrespect to a Non-Commissioned Officer (NCO); Underage Drinking; Making a false official statement; Sleeping on post/sentinel watch; Larceny of a phone card; Unauthorized Absences; Disrespect and failure to obey a lawful order from an NCO; and Breaking Restriction.

Following the Applicant's return from deployment in support of Operation IRAQI FREEDOM (from January to June 2003) the Applicant's Command was required to institute a second Summary Courts-Martial to discipline the Applicant for his misconduct involving an Unauthorized Absence; Failure to obey a lawful order of an NCO; and violation of uniform regulations. Consequently, the Applicant was processed for separation pursuant to MARCORSEPMAN ¶ 6210, and his Command characterized the Applicant's service as being Under Other Than Honorable Conditions (UOTH). The Board found that based upon available records, nothing indicates that the Applicant's discharge was in any way inconsistent with the standards of discipline in the United States Naval Service.

Because the Applicant claimed PTSD was a factor in his discharge, the Board reviewed the Applicant's case in accordance with 10 U.S.C. § 1553, and pursuant to the Kurta Memo and other applicable regulations and guidance, including the Wilkie Memo. Under the Kurta Memo, "[m]ental health conditions, including PTSD; sexual assault; and sexual harassment inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected." Although, "[l]iberal consideration does not mandate an upgrade, [r]elief may be appropriate … for minor misconduct commonly associated with mental health conditions … and some significant misconduct sufficiently justified or outweighed by the facts and circumstances." Additionally, "substance seeking behavior and efforts to self-medicate symptoms of a mental health condition may warrant consideration." However, "[p]remeditated misconduct is not generally excused by mental health conditions, including PTSD; TBI; or by a sexual assault or sexual harassment experience." Therefore, "Review Boards will

exercise caution in assessing the causal relationship between asserted conditions or experiences and premeditated misconduct." See USD (P&R) Memo, "Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment" 25 August 2017 ("Kurta Memo").

The review of discharges pursuant to the Kurta Memo and its other applicable regulations/guidance generally involves four questions: a) Did the veteran have a condition or experience that may excuse or mitigate the discharge; b) Did that condition exist/experience occur during military service; c) Does that condition or experience actually excuse or mitigate the discharge; and d) Does that condition or experience outweigh the discharge?

Here, the Board giving liberal consideration found that the Applicant did have a condition or experience that may mitigate his post-deployment misconduct, and that his now diagnosed PTSD/TBI occurred during his Marine Corps Service. Further, the Board gave mitigation regarding the Applicant's post-deployment misconduct involving his Unauthorized Absence; and Failure to obey a lawful order of an NCO. However, the Board did not find mitigation was warranted regarding the Applicant's violation of uniform regulations where the Applicant's explanation for his uniform violation/nipple piercing changed three times. Specifically, the Applicant has reported his piercing was obtained prior to joining the military; the Applicant has reported he obtained his piercing in the Spring of 2002 (pre-deployment); and has also reported his piercing was obtained post-deployment while self-medicating with alcohol to cope with his PTSD. However, assuming *arguendo* the Applicant obtained his body piercings post-deployment due to his voluntary intoxication to cope with his PTSD, the Board would find the Applicant may be given mitigation for the act of obtaining his body piercing while self-medicating for his PTSD, but would not find mitigation where the Applicant continued his violation of military uniform standards as evidenced by the Applicant maintaining the possession of his piercings; especially, after being forewarned/ordered by his NCO to discontinue their use/possession.

Nonetheless, and in *arguendo*, even if the Board granted a complete excusal for all of the Applicant's post-deployment misconduct, the Board still needs to examine the quality of the Applicant's overall military service which involved a substantial amount of pre-deployment misconduct that extended beyond "minor misconduct … [or] misconduct sufficiently justified or outweighed by the facts and circumstances." See Kurta Memo. Thus, determining the quality of the Applicant's service and conduct, the Board considered that much of the Applicant's pre-deployment misconduct comprised more than mere disciplinary infractions, but involved moral turpitude, deceit, and truculent behavior. Although, the Board recognizes the cursory appearance the Applicant was separated for merely having "nipple rings," the evidence shows the Applicant's Command separated him because the Applicant had demonstrated (despite multiple chances pre-deployment) he could not maintain the necessary military discipline and bearing required of a United States Marine, and was beyond any further rehabilitation. As such, based on the Applicant's pattern of misconduct, his Commanding Officer administratively separated the Applicant from the Naval Service for a pattern of misconduct. Further, the Board found that repeated theft from fellow Marines and chronic insubordinate conduct is the type of behavior that the Applicant's Commanding Officer would consider when finding that the Applicant's misconduct was a significant departure from the conduct expected of Marines, and thus, in accordance with MARCORSEPMAN ¶ 6210 (Characterization of service normally shall be UOTH).

As part of its deliberations, the Board also considered whether the Applicant's condition/experience actually excused/mitigated or outweighed the Applicant's discharge by considering the tenuous argument that but for the Applicant's Deployment (whether due to military necessity or an attempt to rehabilitate/retain) the Applicant would not have suffered PTSD and but for his PTSD he would not have obtained his body piercings, and but for his body piercings he would not have been separated with an UOTH. Further, the Board considered that the Applicant should receive credit for serving in support of Operation IRAQI FREEDOM (from January to June 2003), and gave mitigation based in part on the Applicant's expert witness's [E-1] medical opinion that "[l]ike many individuals with undiagnosed and untreated PTSD, [the Applicant] began self-medicating with alcohol soon after his return from Iraq. As a direct result of his heavy drinking, [the Applicant] committed the two minor infractions." Additionally, and for purposes of deliberation only, and viewing these facts in the light most favorable to Applicant, the Board then examined the quality of the Applicant's service on the hypothetical position that the Applicant had actually completed his required active military service obligation instead of being separated for a pattern of misconduct. The Board then examined the entirety of the Applicant's military service which can essentially be divided into two parts; pre-deployment (Part A) and post-deployment (Part B). Although over simplifying the deliberations, during Part A, the Applicant received 5 NJPs and 1 SCM, and was deployed in the belief the Applicant could be rehabilitated/retained. In Part B, the Applicant received 1 SCM, but also served in support of Operation IRAQI FREEDOM. Consequently, the Board deliberated on the qualitative value of the Applicant's deployment, but did not find that the Applicant's five-month deployment or resulting PTSD/TBI white-washed or absolved the Applicant of his Part A misconduct involving moral turpitude, deceit, and truculent behavior. In other words, but for the Applicant's premeditated larceny of another Marine's cell phone; False official statement; Sleeping as a Sentinel; Larceny of a phone card; and Breaking Restriction, the Applicant would not have warranted an UOTH. In short, the Board weighed the severity of the Applicant's Part A misconduct, against his Part B performance/mitigation/excuse and found an Under Other Than Honorable Conditions discharge is justified.

Issue 4: The Applicant contends his continued struggle with PTSD and his exemplary post-discharge conduct support upgrading his discharge status to Honorable.

The NDRB is authorized to consider post-service factors in the re-characterization of a discharge. However, there is no law, or regulation, that provides that an unfavorable discharge may be upgraded based solely on the passage of time or good conduct in civilian life subsequent to leaving the service. Normally, to permit relief, a procedural impropriety or inequity must have been found to exist during the period of enlistment in question. In support of his contention the Applicant provided documentary evidence on his behalf for post-service consideration. However, post-service conduct does not guarantee an upgrade from an unfavorable discharge as each discharge is reviewed by the Board on a case by case basis to determine if post-service conduct provides a basis for a more thorough understanding of the performance of the applicant during the period of service that is the subject of the discharge review or to determine if post-service accomplishments help demonstrate in-service misconduct was an aberration and not indicative of the member's overall character.

The Board found that the Applicant's duplicitous and truculent behavior in service was not an aberration and was indicative of the member's overall character in service. Specifically, the Applicant's Expert Witness's (E-1) Medical Report provided statements from the Applicant's mother and sister that prior to his enlistment, the Applicant struggled with social and behavioral difficulties that contributed to continuous conflict with peers, challenges with re-direction, and discussion of the Applicant's transfer to an alternative high school following his shoving match with his school's Vice Principal. Further, the Applicant's sister reported she moved out and lived with her grandparents because of the challenges the Applicant presented to her life at home because of his behavioral actions. Additionally, prior to his entry into service, the Applicant failed to disclose that he was diagnosed with Attention Deficit Hyperactivity Disorder along with Anxiety and Depression prior to his enlistment. Additionally, the Applicant received various prescription medications, therapies and accommodations as stated in the Applicant's Expert Witness's E-1 Medical Report. The Applicant also failed to disclose he was diagnosed with the congenital disease Abetalipoproteinemia (ABL). ABL is an inherited disorder that impairs a person's ability to fully absorb dietary fats and fat-soluble vitamins, and in some cases, left untreated can lead to premature death.

Although aware of these above-mentioned medical conditions, the Applicant failed to truthfully and fully disclose his pre-service medical issues during the application process. According to regulations, an enlistment, induction, or period of service is fraudulent when there has been deliberate material misrepresentation, including the omission or concealment of facts that, if known at the time, would have reasonably been expected to preclude, postpone, or otherwise affect the service member's eligibility for enlistment or induction. The Board found that the documentation and statements provided for review do not refute the presumption that the Applicant deliberately misrepresented his medical condition during the enlistment process, including the omission or concealment of facts which, if known at the time would have reasonably been expected to preclude, postpone, or otherwise affect the Marine's eligibility for enlistment or induction. Finally, on the underlying issue of the Applicant's propensity for truthfulness, there is insufficient evidence in the record, nor has the Applicant produced sufficient evidence, to support the contention that a recruiter misled him through the recruitment process. However, even if the Applicant could show misrepresentations in the recruitment process, such misrepresentations would neither amount to a justification nor to a defense for the Applicant's own and repeated failure to disclose his medical history. Moreover, neither the Applicant nor the recruiter makes the determination as to whether or not pre-service conditions are pertinent, as there is a separate and distinct Military Entry Program Screening (MEPS) protocol to determine eligibility for enlistment or induction.

The Board recognizes the Applicant's struggle with PTSD post-service, but noted a disconcerting similarity in the Applicant's previous episodes of oppositional defiance where the Applicant has voluntarily "stopped attending therapy" because of "an incident involving actions by a therapist at the Veterans Center resulted in [the Applicant] losing trust in the provider" and now is the reason that he "has not received professional therapy since March 2019." See Applicant's Supplemental Submission. Regarding the Applicant's need for continued treatment, the Board must note that the NDRB has no authority to upgrade a discharge for the sole purpose of facilitating access to VA benefits; the VA conducts its own determination of eligibility based on service records and input from an Applicant upon their request.

## DECISION

After a thorough review of the available evidence, to include the Applicant's issues, summary of service, service record entries, and discharge process, the Board found the discharge was proper and equitable. Therefore, the awarded characterization of service shall remain **UNDER OTHER THAN HONORABLE CONDITIONS**, the narrative reason for separation shall remain **MISCONDUCT** with a corresponding separation code of **GKA1**, and the reentry code shall remain **RE-4**. The Applicant is not eligible for further reviews by the NDRB. The Applicant may petition the Board for Correction of Naval Records, 701 South Courthouse Road, Suite 1001, Arlington, VA 22204-2490 for further review using DD Form 149.

**Docket No. MD20-00489**

## ADDENDUM:  Information for the Applicant

*Complaint Procedures*: If you believe the decision in your case is unclear, not responsive to the issues you raised, or does not otherwise comport with the decisional document requirements of DoD Instruction 1332.28, you may submit a complaint in accordance with Enclosure (5) of that Instruction to the Joint Service Review Activity, OUSD (P&R) PI-LP, The Pentagon, Washington, DC  20301-4000.  You should read Enclosure (5) of the Instruction before submitting such a complaint.  The complaint procedure does not permit a challenge of the merits of the decision; it is designed solely to ensure that the decisional documents meet applicable requirements for clarity and responsiveness.  You may view DoD Instruction 1332.28 and other Decisional Documents by going online at http://boards.law.af.mil/.  More information is available at http://www.secnav.navy.mil/mra/CORB/pages/ndrb/default.aspx.

*Additional Reviews*: After a document review has been conducted, former members are eligible for a personal appearance or telephonic hearing, provided the application is received at the NDRB within 15 years of the Applicant's date of discharge.  The Applicant can provide documentation to support any claims of post-service accomplishments or any additional evidence related to this discharge.  Representation at a personal appearance hearing is recommended but not required.  There are veterans organizations such as the American Legion and the Disabled American Veterans that are willing to provide guidance to former service members in their efforts to obtain a discharge upgrade.  If a former member has been discharged for more than 15 years, has already been granted a personal appearance hearing or has otherwise exhausted their opportunities before the NDRB, the Applicant may petition the Board for Correction of Naval Records (BCNR), 701 South Courthouse Road, Suite 1001, Arlington, VA 22204-2490, or http://www.secnav.navy.mil/mra/bcnr/Pages/default.aspx for further review.

*Service Benefits:* The U.S. Department of Veterans Affairs (VA) determines eligibility for post-service benefits, not the NDRB.  There is no requirement or law that grants recharacterization solely on the issue of obtaining veterans benefits and this issue does not serve to provide a foundation upon which the Board can grant relief.

*Employment/Educational Opportunities*: The NDRB has no authority to upgrade a discharge for the sole purpose of enhancing employment or educational opportunities.  Regulations limit the NDRB's review to a determination of the propriety and equity of the discharge.

*Reenlistment/RE-code*: Effective 6 February 2015, the NDRB is authorized to change a NDRB Applicant's Reenlistment Code if related to an accompanying change in discharge characterization or narrative, but this authority is strictly limited to those cases where an applicant's narrative reason or characterization of discharge is changed and that change warrants revision of the previously issued reenlistment code.  Additionally, the NDRB has no authority to upgrade a discharge for the sole purpose of enhancing reenlistment opportunities.  An unfavorable "RE-CODE" is, in itself, not a bar to reenlistment.  A request for a waiver can be submitted during the processing of a formal application for reenlistment through a recruiter.

*Medical Conditions and Misconduct*: DoD disability regulations do not preclude a disciplinary separation.  Appropriate regulations stipulate that separations for misconduct take precedence over potential separations for other reasons.  Whenever a member is being processed through the Physical Evaluation Board, and is processed subsequently for an administrative involuntary separation or is referred to a court martial for misconduct, the disability evaluation is suspended pending the outcome of the non-disability proceedings.  If the action includes either a punitive or administrative discharge for misconduct or for any basis wherein an Other Than Honorable discharge is authorized, the medical board report is filed in the member's terminated health record.  Additionally, the NDRB does not have the authority to change a narrative reason for separation to one indicating a medical disability or other medical related reasons.  Only the BCNR can grant this type of narrative reason change.

*Automatic Upgrades*: There is no law or regulation that provides for an unfavorable discharge to be upgraded based solely on the passage of time or good conduct subsequent to leaving naval service.

*Post-Traumatic Stress Disorder and/or Traumatic Brain Injury*: For all claims involving PTSD and/or TBI, the NDRB's review implemented the guidance set forth in the SECDEF Memorandum of 3 September 2014 (Supplemental guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder).  In accordance with U.S. Code, Title X, Section 1553 (d)(1) & d(2), the NDRB included a member who is a physician, clinical psychologist, or psychiatrist and accorded the case sufficient priority to achieve an expedited resolution and a final decision.

*Post-Service Conduct*: The NDRB is authorized to consider post-service factors in the recharacterization of a discharge.  Outstanding post-service conduct, to the extent such matters provide a basis for a more thorough understanding of the Applicant's performance and conduct during the period of service under review, is considered during Board reviews.

Documentation to support a post-service conduct upgrade includes, but is not limited to: a verifiable continuous employment record; marriage and children's birth certificates (if applicable); character witness statements; documentation of community or church service; certification of non-involvement with civil authorities; evidence of financial stability or letters of good standing from banks, credit card companies, or other financial institutions; attendance at or completion of higher education (official transcripts); and documentation of a drug-free lifestyle.  The Applicant is advised that completion of these items alone does not guarantee the upgrade of an unfavorable discharge, as each discharge is reviewed by the Board on a case-by-case basis to determine if post-service accomplishments help demonstrate in-service misconduct was an aberration and not indicative of the member's overall character.

*Issues Concerning Bad-Conduct Discharges (BCD)*: Because relevant and material facts stated in a court-martial specification are presumed by the NDRB to be established facts, issues relating to the Applicant's innocence of charges for which he was found guilty cannot form a basis for relief.  With respect to a discharge adjudged by a special court-martial, the action of the NDRB is restricted to upgrades based on clemency.  Clemency is an act of leniency that reduces the severity of the punishment imposed.  The NDRB does not have the jurisdictional authority to review a discharge or dismissal resulting from a general court-martial.

*Board Membership:* The names and votes of the members of the NDRB Board are recorded on the original of this document and may be obtained from the service records by writing to: Secretary of the Navy Council of Review Boards, Attn: Naval Discharge Review Board, 720 Kennon Street SE Rm 309, Washington Navy Yard DC  20374-5023.

*Military Sexual Trauma*: The Department of Veterans Affairs (VA) uses the term "military sexual trauma" (MST) to refer to experiences of sexual assault or repeated, threatening sexual harassment experienced while on federal active duty, active duty for training, or inactive duty training.  To get confidential one-on-one help please contact the MST Coordinator at your nearest VA Medical Center or Call Safe Helpline at 1-877-995-5247 or visit www.mentalhealth.va.gov/msthome.asp.

*Reporting Military Sexual Trauma*: To report a military sexual trauma, you can make an anonymous report to the Naval Criminal Investigative Service (NCIS) by Text or Online.  The NCIS Tip Line provides service members, veterans and civilians a safe, discreet and ANONYMOUS option to report criminal and force protection threats within the USN and USMC without concerns of retaliation.  To report a crime by Text: Text  **274637** (CRIMES); Type "**NCIS**" at the top of the message; and include as much detail as possible to ensure your tip can effectively be investigated.  To send your ANONYMOUS Tip via the online, go to https://www.tipsubmit.com/webtipsNAV.aspx?AgencyID=840.

*Suicide Prevention*: Veterans in emotional crisis or their loved ones can call the free and confidential Veterans Crisis Line at 1-800-273-8255 (then press 1); or chat online at http://www.veteranscrisisline.net, or send a text message to 838255 to connect with a caring, qualified Veteran Affairs Responder who can deal with any immediate crisis.