**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TYSON MANKER, on behalf of himself and all others similarly situated, and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS, on behalf of itself, its members, and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> CARLOS DEL TORO, Secretary of the Navy, <br><br> *Defendant*. | No. 3:18-cv-372 (CSH) <br><br><br> September 16, 2021 |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement") is made and entered into by and between: (i) Mr. Robert D. Hogue, Acting Assistant Secretary of the Navy (Manpower and Reserve Affairs), duly authorized in his official capacity to execute such agreement on behalf of Defendant Carlos Del Toro[1] in his official capacity as Secretary of the Navy ( "Navy" or "Defendant"), and (ii) Tyson Manker and the National Veterans Council for Legal Redress ("NVCLR"), individually and on behalf of themselves, their members (in the case of NVCLR), and a class of persons similarly situated (the "Plaintiffs"). Plaintiffs and Defendant shall be referred to in this Settlement Agreement individually as a "Party" and collectively as the "Parties."

## I.  RECITALS

This Settlement Agreement is made and entered into with reference to the following facts:

---

[1] *See* FRCP 25(d) ("Public Officers; Death or Separation from Office. An action does not abate when a public officer who is a party in official capacity . . . otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. . . .  The court may order substitution at any time, but the absence of such an order does not affect the substitution.").

**A.** On March 2, 2018, Plaintiffs commenced this action against Defendant (then-Secretary Richard V. Spencer) to obtain judicial review of the denial by the Naval Discharge Review Board ("NDRB") of the discharge upgrade applications of Mr. Manker and NVCLR's members, (the "Complaint"), and of others similarly situated. ECF No. 1. The Complaint alleged, among other things, that since the start of military operations in Iraq and Afghanistan, the Navy and Marine Corps discharged thousands of men and women with Other Than Honorable ("OTH") or General (Under Honorable Conditions) ("GEN") characterizations of service due to misconduct attributable to post-traumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), and related mental health conditions. Specifically, the Complaint alleged that upon their return from Iraq and Afghanistan, veterans with service-connected PTSD, TBI, and other related mental health conditions received OTH and GEN discharges and were systematically denied discharge upgrades by the NDRB. Defendant has denied and continues to deny each and all allegations of wrongdoing.

**B.** On November 15, 2018, the Court granted Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2). ECF No. 33. The Court defined the class as "[v]eterans who served during the Iraq and Afghanistan Era—defined as the period between October 7, 2001, and the present—who: (a) were discharged from the Navy, Navy Reserve, Marine Corps, or Marine Corps Reserve with less-than-Honorable statuses, including General and Other-than-Honorable discharges but excluding Bad Conduct or Dishonorable discharges; (b) have not received upgrades of their discharge statuses to Honorable from the NDRB; and (c) have diagnoses of PTSD, TBI, or other related mental health conditions, or records documenting one or more symptoms of PTSD, TBI, or other related mental health conditions at the time of discharge, attributable to their military service under the Hagel Memo standards of liberal or special consideration."

**C.** The Court also named Mr. Manker and NVCLR as class representatives, and the Jerome N. Frank Legal Services Organization of Yale Law School and Jenner & Block LLP as Class Counsel.

**D.** On July 26, 2019, Defendants filed a Motion to Dismiss or, in the alternative, Motion for Voluntary Remand. ECF No. 67. On August 6, 2019, Plaintiffs opposed the motions. ECF 68. On November 7, 2019, the Court denied Defendant's Motion to Dismiss, but granted the Motion for Voluntary Remand. ECF No. 79.

**E.** On January 7, 2020, while the remanded matters were pending, the Court referred the case to United States Magistrate Judge Robert M. Spector for the purpose of considering settlement. ECF No. 94.

**F.** On March 19, 2020, Defendant noticed the Court of the remand decisions for Mr. Manker and Mr. Doe. The NDRB granted Mr. Manker partial relief and did not grant Mr. Doe relief. ECF No. 130.

**G.** On April 1, 2020, in light of the Covid-19 pandemic, the Court cancelled an in-person settlement conference set for April 14, 2020. The Court ordered that the Parties conduct the settlement conference through a series of *ex parte* telephonic conferences. ECF No. 133. In the following months, the Parties engaged in a series of *ex parte* settlement conferences with the Judge Spector. *See* ECF Nos. 135, 137, 139, 141, 154, 159, 161, 163, 166, 169, 171, 173, 177, 179, 181, 183, 184. At various times, the Parties also engaged directly with each other in settlement negotiations.

**H.** On June 18, 2021, the Parties participated in a joint settlement conference with Judge Spector. ECF No. 190. Plaintiffs and Defendant reached an agreement in principle to settle the Litigation.

**I.**    Based on Class Counsel's investigation and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel agreed to settle the Litigation pursuant to the provisions of this Stipulation after considering, among other things: (1) the substantial benefits available to the Class under the terms herein; (2) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Settlement Agreement to provide effective relief to the Class.

**J.**    Defendant has denied and continues to deny each and all of the claims and contentions alleged by Plaintiffs.  Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this Litigation.

**K.**    Nonetheless, Defendant has concluded that further defense of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.  Defendant also has taken into account the uncertainty and risks inherent in any litigation.  Defendant, therefore, has determined that it is desirable and beneficial to the Department of the Navy, as well as for its Veterans identified by the class certification, that the Litigation be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

**L.**    This Stipulation effectuates the resolution of disputed claims and is for settlement purposes only.

## II.    <u>DEFINITIONS</u>

As used in this Proposed Stipulation, the following capitalized terms have the meanings specified below.  Unless otherwise indicated, defined terms include the plural as well as the singular.

**A.** "Naval Discharge Review Board" or "NDRB" means the Naval, or Navy and Marine Corps, board that reviews discharges of former Sailors and Marines, within 15 years from the date of their discharge, on the basis of issues of propriety and equity in accordance with 10 U.S.C. § 1553 and 32 C.F.R. § 724.102.

**B.** "Applicant" means any individual who seeks a discharge review through submission of the Department of Defense Form 293 to the NDRB.

**C.** "Case Data" means any materials associated with an applicant's case file, whether submitted by the Applicant or obtained or produced by the NDRB in the course of an adjudication, that were used in NDRB's effort to identify Special Cases.

**D.** "Class" or "Settlement Class" means members and former members of the Navy, Navy Reserve, Marine Corps, and Marine Corps Reserve, who served during the Iraq and Afghanistan era—the period between October 7, 2001 to the Effective Date of Settlement—who:

    1.    were discharged with a less-than-Honorable service characterization (this includes GEN and OTH discharges from the Navy, Navy Reserve, Marine Corps, and Marine Corps Reserve, but excludes Uncharacterized, Bad Conduct, Dishonorable discharges, or Dismissals);

    2.    have not received discharge upgrades to Honorable; and

    3.    have diagnoses of PTSD, TBI, or other related mental health conditions, or records documenting one or more symptoms of PTSD, TBI, or other related mental conditions at the time of discharge, attributable to their military service under the Hagel Memo standards of liberal or special consideration.

**E.** "Class Counsel" means, collectively, the Jerome N. Frank Legal Services Organization of Yale Law School and the law firm of Jenner & Block LLP.

**F.** "Class Notice" means the notice substantially in the form attached to this Settlement Agreement as Exhibit "A", to be provided to the Class as set forth in Section IV below.

**G.** "Court" means the United States District Court for the District of Connecticut.

**H.** "DD-293" means the Department of Defense Form 293, Application for the Review of Discharge or Dismissal from the Armed Forces of the United States.

**I.** "Defendant" means the Secretary of the Navy, in his official capacity. The current Secretary of the Navy is Carlos Del Toro.

**J.** "Effective Date of Settlement" means the date of the Final Approval Order.

**K.** "Fairness Hearing" means the hearing to be held by the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to determine whether the settlement set forth in this Settlement Agreement should be approved.

**L.** "Final Approval Order" means the order by the Court, after notice and the holding of the Fairness Hearing, granting approval of this Settlement Agreement under Rule 23(a) of the Federal Rules of Civil Procedure, substantially in the form attached to this Settlement Agreement as Exhibit "B".

**M.** "GEN" means a character of service of General (Under Honorable Conditions).

**N.** "Group A Applicants" are defined below in Section IV.A.

**O.** "Group B Applicants" are defined below in Section IV.B.

**P.** "Hagel Memo" means the memorandum issued by then-Secretary of Defense Chuck Hagel on September 3, 2014, directing all military record-correction boards to give "special consideration" to PTSD diagnoses by the U.S. Department of Veterans Affairs and "liberal

consideration" to diagnoses of PTSD by civilian providers when adjudicating discharge upgrade applications submitted by veterans.

**Q.**     "Honorable" means a character of service of Honorable.

**R.**     "Kurta Memo" means the memorandum issued by then-Acting Under Secretary of Defense for Personnel and Readiness A.M. Kurta on August 25, 2017, issuing additional guidance clarifying that "[l]iberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions."

**S.**     "Kurta Factors" means the four questions provided in the Kurta Memo regarding when requests for discharge relief is appropriate in Special Cases.  (Kurta Memo, att. at 1.)

**T.**     "Litigation" means the lawsuit captioned *Manker, et. al., v. Del Toro*, Case No. 3:18-CV-372 (CSH) (D. Conn.).

**U.**     "Military Sexual Trauma" or "MST" means physical assault of a sexual nature, battery of a sexual nature, or sexual harassment that occurred during military service.

**V.**      "Other Behavioral Health" or "OBH" means a behavioral health condition other than PTSD or TBI and unrelated to MST.

**W.**     "Other-Than-Honorable" or "OTH" means a character of service of Other Than Honorable.

**X.**     "Person" means a natural person, individual, corporation, partnership, association, or any other type of legal entity.

**Y.**     "Plaintiffs" means the class representatives Tyson Manker and NVCLR, on behalf of themselves and each of the Class members.

**Z.**     "Preliminary Approval Order" means the "Order Preliminarily Approving Class Action Settlement, Conditionally Certifying the Settlement Class, Providing For Notice and Scheduling Order," substantially in the form of Exhibit "C" attached hereto, which, among other things, would preliminarily approve this Proposed Stipulation and provide for notification to the Settlement Class and set the schedule for the Fairness Hearing.

**AA.**     "PTSD" means Post-Traumatic Stress Disorder.

**BB.**     "Settled Claims" means all claims for relief that were brought on behalf of the Class based on the facts and circumstances alleged in the Complaint.  ECF No. 1.  The Settled Claims do not include Claim IV or V of the Complaint, which are brought on behalf of the named Plaintiffs individually.

**CC.**     "Special Cases" refers to the class of Veterans discharged from the Navy, Navy Reserves, Marine Corps, or Marine Corps Reserve with less-than-Honorable statuses; including General and Other-than-Honorable discharges but excluding Uncharacterized, Bad Conduct, Dishonorable discharges, or Dismissals; who have diagnoses of Post-Traumatic Stress Disorder (PTSD), Traumatic Brain Injury (TBI), or other related mental health conditions, or records documenting one or more symptoms of PTSD, TBI, or other related mental health conditions at the time of discharge, attributable to their military service under the Hagel Memo standards of liberal or special consideration.

**DD.**     "Stipulation and Agreement of Settlement" or "Stipulation" or "Settlement Agreement" means this agreement, including its attached exhibits (which are incorporated herein by reference), duly executed by Class Counsel and counsel for Defendant.

**EE.**     "TBI" means Traumatic Brain Injury.

**FF.**     "VTC" means Video-Teleconference.

**GG.** "Wilkie Memo" means the memorandum issued by then-Under Secretary of Defense Robert L. Wilkie on July 25, 2018, providing additional guidance that "[r]equests for relief based in whole or in part on a mental health condition, including [PTSD]; [TBI]; or a sexual assault or sexual harassment experience, should be considered for relief on equitable, injustice, or clemency grounds whenever there is insufficient evidence to warrant relief for an error or impropriety."

## III.    CERTIFICATION OF THE SETTLEMENT CLASS

The Parties agree that the Settlement Class shall be conditionally certified, in accordance with the terms of this Proposed Settlement Agreement, solely for purposes of effectuating the settlement embodied in this Settlement Agreement. The Settlement Class differs from the class certified by the Court on November 15, 2018 only in that it sets the end date of the Class as the Effective Date of Settlement.

## IV.    SETTLEMENT RELIEF

### A.    Reconsideration of 2012-2021 Applications

1.    The NDRB will automatically reconsider its decisions that meet all of the following three criteria: (a) Special Cases, (b) issued on or after March 2, 2012 until the Effective Date of Settlement, and (c) whose grant state indicates the applicant did not receive a full upgrade to Honorable. The applicants who are entitled to reconsideration under this paragraph are henceforth referred to as "Group A Applicants."

2.    Defendant's electronic record archives go back only to September 4, 2014, and the information capable of being entered and queried in its database has changed over time. Defendant will therefore perform two separate searches of its records to identify Group A Applicants.

a. *First*, Defendant will conduct a search of electronically-stored NDRB case files from September 4, 2014 to the Effective Date of Settlement. In this search, Defendant will first identify all individuals who cited or were otherwise identified by the NDRB as having a "Special Case" basis, such as PTSD or TBI. Defendant will review the files to determine if the applicant's record indicates they did or did not receive a full upgrade to Honorable. Any individual who a) qualifies as a Special Case, who b) did not receive a full upgrade to Honorable, and c) applied for a discharge upgrade from September 4, 2014 to present, shall be considered a Group A Applicant.

b. *Second*, Defendant will conduct a manual search of the NDRB decisional document archive files, from March 2, 2012 to September 4, 2014. Defendant will first identify all individuals who cited or are otherwise identified by the NDRB document as having a "Special Case" basis, such as PTSD or TBI. Defendant will then review the record to determine if the applicant's record indicates they did or did not receive a full upgrade to Honorable. Any individual who a) qualifies as a Special Case, who b) did not receive a full upgrade to Honorable, and c) applied for a discharge upgrade from March 2, 2012 through September 4, 2014 shall be considered a Group A Applicant.

3. Defendant will send a notice, in the form of Exhibit "D", to all Group A Applicants at their last known address on file with the NDRB. That notice, as laid out in Exhibit "D," will state that the NDRB will reconsider that individual's case without a need for further response from the Applicant; state that if the Applicant wishes to supplement their application, they should submit supplemental evidence within 60 days of the notice; state that submitting medical evidence in support of the application benefits the Applicant; and include information regarding available resources to assist Applicants in supplementing their applications, including legal and medical services.

4. Defendant will mail the notice to Group A Applicants whose cases were adjudicated between September 5, 2014 to present within 120 days of the Effective Date of Settlement. Defendant will mail the notice to Group A Applicants whose cases were adjudicated between March 2, 2012 to September 4, 2014 within 180 days of the Effective Date of Settlement. Defendant shall do so at its own cost.

5. The NDRB will make every effort to complete its reconsideration of Group A Applicants in a timely manner.

**B. Notice of Reapplication Rights for 2001-2012 Applicants**

1. Plaintiffs will mail a notice to the last known addresses of NDRB Applicants for whom the NDRB's decisions meet the following two criteria: (a) were issued between October 7, 2001 and March 1, 2012, and (b) whose "grant state" indicates the Applicant did not receive a full upgrade to Honorable. The Applicants from this group who (a) qualify as "Special Cases," and (b) did not receive a full upgrade to Honorable from the NDRB, are defined here as Group B Applicants.

2.      Aside from the ability to pull Applicant names and addresses, the NDRB's records predating March 1, 2012 are limited to paper archives only, and did not identify Applicants as having requested relief pursuant to mitigating PTSD, TBI, other mental health conditions, or MST.  The NDRB is also limited by regulation, and is only authorized to amend discharges for individuals applying within 15 years of the date of their discharge. *See* 10 U.S.C. §  1553; 32 C.F.R. § 724.202(a)(1). Because of this limitation, the NDRB will provide Plaintiffs with the names and last-known addresses (according to NDRB data) for Applicants whose cases did not receive an upgrade to honorable discharge by the NDRB between October 7, 2001 and March 1, 2012.  Plaintiffs will send a notice, in the form of Exhibit "E", to individuals on this list of names and addresses, referring them to the Class Notice and informing them of their potential right to reapply if they qualify as a Special Case member of the class.  That notice, as laid out in Exhibit "E," will state that the Applicant may reapply to the NDRB, or to the Board for Correction of Naval Records ("BCNR") if the Applicant's discharge date is beyond the NDRB 15-year statute of limitations, for reconsideration of their case; state that submitting medical evidence in support of the application benefits the Applicant; include information regarding available legal and medical services; and refer to the Class Notice.  The notices will not include the name, contact information, or return mailing address of any of Plaintiffs' counsel.

3.      Plaintiffs will bear the cost of mailing this notice to Group B Applicants, paid out of the attorneys' fees and costs set forth in Section V(A) below.

**C.      Online Notice of Reapplication Rights for 2001-2011 Applicants and Reconsideration for 2011-2021 Applicants**

1.      Defendant will post notice of reapplication rights for 2001-2012 Applicants and for its automatic reconsideration for 2012-2021 Applicants, in the form of Exhibit "F", on the

main page of its website at https://www.secnav.navy.mil/mra/CORB/ Pages/NDRB/default.aspx, within 45 days of the Effective Date of Settlement.

2.  Defendant will also include a Frequently Asked Questions ("FAQ") section, an example of which is attached in the form of Exhibit "G", on the main page of its website at https://www.secnav.navy.mil/ mra/CORB/Pages/NDRB/default.aspx.

**D.    Revised Decisional Documents & Procedures**

1.  Defendant agrees to incorporate the following language and procedure, or a reasonable equivalent, into its Naval Discharge Review Board decisional documents:

> If the Board concludes that there is insufficient evidence per the four factors in paragraph two (2) of the Kurta Memo ("Kurta Factors"), including that the evidence in mitigation does not outweigh the severity of misconduct, so as to grant a full upgrade to Honorable in any Special Case, the Board must, in the decision document sent to the Veteran: (a) respond to each of the applicant's contentions; (b) describe the evidence on which it relied on consideration of each of the applicable Kurta Factors; (c) explain why it decided against the Veteran with respect to each applicable Kurta Factor; (d) articulate a rational connection between facts found and conclusions drawn; and, (e) distinguish any prior Board decisions cited by the applicant in accordance with applicable law and regulations.

An example of the updated Naval Discharge Review Board decisional document incorporating this language is appended as Exhibit" "H."

2.  Defendant agrees to create and implement a template for an NDRB medical board member's written opinion. An example of the updated Naval Discharge Review Board decisional document incorporating this written opinion is also available in the appended Exhibit "H." The written medical board member's opinion will include (1) the identity and educational qualification of the medical board member, (2) the sources of information used by the medical board member in developing their opinion, (3) facts from the Applicant's Case File relied upon by the medical board member in developing their opinion, and (4) medical diagnoses and other

evidence of relevant medical conditions pertinent to the medical board member's opinion.  In addition, if an Applicant received an adverse discharge because of misconduct, the written opinion will opine on the relationship between any medical condition and the Applicant's behavior or misconduct that contributed to the adverse discharge.

        3.      The NDRB will aspire to match the processing timeline of the BCNR, and will aspire to decide 90% of applications within ten months of their receipt.  Defendant is not bound by this processing timeline.

        **E.**      **Universal Option for Video-Teleconference Personal Appearance Hearing**

        1.      Defendant will implement a Video-Teleconference ("VTC") Personal Appearance Hearing Program for the NDRB, which will be available to all Applicants who request a Personal Appearance hearing.  Defendant will inform Applicants of their ability to opt-in to a VTC NDRB hearing in the letter acknowledging receipt of their DD-293 application.  Applicants can participate in VTC hearings from their personal residences, or other location of their own choice.  Defendant has begun to implement this program on a limited basis and agrees to make it a universal option for all Applicants.

        **F.**      **Online Submission and Tracking for NDRB Applications**

        1.      Defendant has agreed to begin accepting NDRB petitions submitted online. Defendant shall create a web-based application portal for online submission of discharge upgrade applications and supplemental materials.  This system will also allow Applicants to track the status of their applications online and will contain accessible contact information for status checks on applications.

        2.      Defendant expects this web-based application to be operational within 24 months of the Effective Date of Settlement.  Defendant is not bound by this projection.

### G. Training

1. Defendant agrees to conduct annual training for NDRB members and staff specifically tailored to Special Cases.

2. This annual training will train attendees on all of the NDRB's obligations with respect to Special Cases, included but not limited to changes in those obligations as a result of this Settlement Agreement. Specific subjects to be addressed shall include, but not be limited to, (a) the Naval Discharge Review Board's Standard Operating Procedures with respect to Special Cases; (b) health conditions commonly cited or frequently identified in Special Cases; (c) identifying and eliminating implicit biases around mental health conditions; and (d) the presumption of regularity.

### H. Notice for New Applications

1. For all discharge upgrade applications submitted to the NDRB after the Effective Date of Settlement, when the Board writes the Applicant to acknowledge receipt of a submitted DD Form 293, the Board letter shall inform Applicants of resources available to help answer Applicants' questions about the application process or to help Applicants supplement their applications. This information shall include, but not be limited to, (a) general information regarding legal counsel that may assist with NDRB applications; (b) Veterans Service Organizations that assist with NDRB applications; (c) links for Stateside Legal, www.statesidelegal.org; and (d) information regarding potential eligibility for mental health treatment and evaluation services offered by the Department of Veterans Affairs ("VA") and a link to the VA's "Directory of Veterans Service Organizations," available at https://www.va.gov/vso/. Due to government ethical restrictions, the Navy will incorporate a non-endorsement clause into such notices to avoid the appearance of bias or partiality toward any particular organization, and

to inform applicants that additional organizations may be able to assist them. An example of this notice is appended as Exhibit "I."

2. The notice, an example of which is Exhibit "I", shall also (a) state that the Applicant may seek out and provide additional medical evidence of their Special Case condition, and state that it is to the Applicant's benefit to provide medical evidence in support of their application; (b) invite the Applicant to provide such evidence within 45 days of the date the notice is sent; and (c) advise the Applicant of their right under 38 U.S.C. § 1720I to obtain mental health evaluation and treatment at Department of Veterans Affairs facilities. Defendant agrees that an NDRB Applicant's failure to submit additional evidence shall not prejudice the Applicant's NDRB application, and shall not be referenced for the purpose of evaluating the Applicant's claims.

## I. Notice for Pending Applications

1. For all discharge upgrade applications submitted to the NDRB before the Effective Date of Settlement, but not adjudicated before the Effective Date of Settlement, Defendant shall also provide notice of the opportunity to provide supplemental evidence, in the form of Exhibit "J," to these Applicants. This notice shall inform these Applicants of the revised NDRB procedures resulting from this Settlement Agreement.

## J. Publication of the Annual President's Report

1. Defendant will make available, annually, each *NDRB President's Report.* The NDRB President's report will be released at least annually, within 30 days of the conclusion of the fiscal year, and will be posted online to the NDRB's publicly accessible online reading room.

## K. Review of NDRB Decisions by the Secretarial Review Authority

1. Defendant acknowledges that the Kurta and Wilkie memoranda apply to the exercise of Secretarial Review Authority detailed under 32 C.F.R. § 724.814.

2. Where acting to overturn a favorable NDRB decision for a Special Case, the Secretary's discussion of issues under § 724.814(d) will address each issue considered by the NDRB, including a discussion of each Kurta Factor as considered and implemented by the NDRB under Section IV.D of this agreement.

3. Persons designated to exercise Secretarial Review Authority will complete training as described in Section IV.G of this agreement.

## V.    ATTORNEYS' FEES AND COSTS

With respect to the issue of attorneys' fees and costs incurred by Plaintiffs and the payment thereof by Defendant, the Parties agree to the following as a complete resolution of the issue.

**A.**    Defendant agrees to pay $220,000.00 in attorneys' fees and costs to Class Counsel.

**B.**    Defendant agrees to submit payment of attorneys' fees to Class Counsel within 90 days of either (a) the Effective Date of Settlement, or (b) Defendant's receipt of Class Counsel information (including banking information) necessary to effectuate the attorneys' fee transfer, whichever occurs later.

## VI.    NOTICE AND APPROVAL PROCEDURE

**A.    Preliminary Approval.**    As soon as practicable after the execution of this Agreement, the Parties shall jointly move for a Preliminary Approval Order, substantially in the form of Exhibit "C," preliminarily approving this Settlement Agreement and finding this settlement to be fair, just, reasonable, and adequate; approving the Class Notice to the Class

members as described in Section VI.C, *infra*; and setting a Fairness Hearing to consider the Final Approval Order and any objections thereto.

**B.      Effect of the Court's Denial of the Agreement.**  This Settlement Agreement is subject to and contingent upon Court approval under Rule 23(e) of the Federal Rules of Civil Procedure.  If the Court rejects this Agreement, in whole or in part, or otherwise finds that the Agreement is not fair, reasonable, and adequate, the Parties agree to meet and confer to work to resolve the concerns articulated by the Court and modify the agreement accordingly.  Except as otherwise provided herein, in the event the Settlement Agreement is terminated or modified in any material respect or fails to become effective for any reason, then the Settlement Agreement shall be without prejudice and none of its terms shall be effective or enforceable; the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the execution of this Settlement Agreement; and except as otherwise expressly provided, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered.  In the event that the Settlement Agreement is terminated or modified in any material respect, the Parties shall be deemed not to have waived, not to have modified, or not be estopped from asserting any additional defenses or arguments available to them.  In such event, neither this Settlement Agreement nor any draft thereof, nor any negotiation, documentation, or other part or aspect of the Parties' settlement discussions, nor any other document filed or created in connection with this settlement, shall have any effect or be admissible in evidence for any purpose in the Litigation or in any other proceeding, and all such documents or information shall be treated as strictly confidential and may not, absent a court order, be disclosed to any person other than the Parties' counsel, and in any event only for

the purposes of the Litigation. Unless and until the Court approves the Settlement Agreement, it is without legal effect.

**C.** **Notice for Fairness Hearing.** Not later than 14 business days after entry of the Preliminary Approval Order (unless otherwise modified by the Parties or by order of the Court), the Parties shall effectuate the following Class Notice.

1. Plaintiffs shall post the Class Notice substantially in the form of Exhibit "A," as well as a copy of the Settlement Agreement, on the website www.mankersettlement.com;

2. Defendant shall post the Class Notice substantially in the form of Exhibit "A," including a copy of the Settlement Agreement, on https://www.secnav.navy.mil/mra/CORB/Pages/NDRB/default.aspx.

3. The Parties shall issue a joint press release, attached as Exhibit "K," that describes the Class Notice and provides a link to the website listed in Section VI.C.2.

4. The Plaintiffs agree to further publicize the Class Notice through outreach to individuals and organizations likely to interface with Class Members. Examples of such outreach include (a) efforts to engage national and regional news media, (b) efforts to engage military- and Veterans-specific news media, (c) requests to elected officials to distribute the Class Notice to colleagues and constituents, and (d) attempts to publicize the Class Notice through Veterans' organizations, legal services organizations, and other advocates across the country.

**D.** **Objections to Settlement.** Within 21 calendar days before the Fairness Hearing, in the above-described manner, any Class member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement or the settlement contemplated herein must file with the Clerk of Court and serve on the Parties a statement of objection setting forth the specific reason(s), if any, for the objection, including any legal support or evidence in support of

the objection, grounds to support their status as a Class member, and whether the Class member intends to appear at the Fairness Hearing. The Parties will have 14 days following the objection period in which to submit answers to any objections that are filed. The notice to the Clerk of the Court shall be sent to: Clerk of the Court, U.S. District Court of Connecticut, 141 Church Street, New Haven, CT 06510; and both envelope and letter shall state: "Attention: *Manker v. Del Toro*, Case No. 3:18-CV-372 (CSH) (D. Conn.)." Copies shall also be served on counsel for Plaintiffs and counsel for Defendants.

      **E.** **Fairness Hearing.** At the Fairness Hearing, as required for Final Approval of the settlement pursuant to Federal Rule of Civil Procedure 23(e)(2), the Parties will jointly request that the Court approve the settlement as final, fair, reasonable, adequate, and binding on the Class, all Class members, and all Plaintiffs.

      **F.** **Opt-Outs.** The Parties agree that the Settlement Class shall be certified in accordance with the standards applicable under Rule 23(b)(2) of the Federal Rules of Civil Procedure and that, accordingly, no Settlement Class member may opt out of any of the provisions of this Settlement Agreement.

      **G.** **Final Approval Order and Judgment.** At the Fairness Hearing, the Parties shall jointly move for entry of the Final Approval Order, substantially in the form of Exhibit "B," granting final approval of this Agreement to be final, fair, reasonable, adequate, and binding on all Class members; overruling any objections to the Settlement Agreement; ordering that the terms be effectuated as set forth in this Settlement Agreement; and giving effect to the releases as set forth in Section VII.

## VII. <u>RELEASES</u>

      **A.** As of the Effective Date, the Plaintiffs and the Class members, on behalf of themselves; their heirs, executors, administrators, representatives, attorneys, successors, assigns,

agents, affiliates, and partners; and any persons they represent, by operation of any final judgment entered by the Court, shall have fully, finally, and forever released, relinquished, and discharged the Defendant of and from any and all of the Settled Claims, and the Plaintiffs and the Class members shall forever be barred and enjoined from bringing or prosecuting any Settled Claim against any of the Defendants, and all of their past and present agencies, officials, employees, agents, attorneys, and successors. This Release shall not apply to claims that arise or accrue after the effective date of Agreement.

**B.** In consideration of the terms and conditions set forth herein, Plaintiffs hereby release and forever discharge Defendant, and all of his past and present agencies, officials, employees, agents, attorneys, successors, and assigns from any and all obligations, damages, liabilities, causes of action, claims, and demands of any kind and nature whatsoever, whether suspected or unsuspected, arising in law or equity, arising from or by reason of any and all known, unknown, foreseen, or unforeseen injuries, and the consequences thereof, resulting from the facts, circumstances and subject matter that gave rise to the Settled Claims, including all claims that were asserted or that Plaintiffs could have asserted on behalf of the Class in the Litigation.

**C.** For avoidance of doubt, this agreement does not resolve or release any claim that the named Plaintiffs may hold in their individual capacities, including without limitation Claim IV and Claim V of the Litigation.

**[Remainder of this page intentionally left blank. Agreement resumes on page 22, which contains only the requisite party signatures.]**

Respectfully submitted,

FOR PLAINTIFFS:

FOR DEFENDANT:

*M guh*
_____

Brandon Baum, Law Student Intern
Matthew D. Handley, Law Student Intern
Liliana L. Martinez, Law Student Intern
Michael J. Wishnie, Supervising Attorney, ct27221
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Org.
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
Michael.Wishnie@ylsclinics.org

Susan J. Kohlmann, *pro hac vice*
Jeremy M. Creelan, *pro hac vice*
Jeremy Ershow, *pro hac vice*
Thomas J. Bullock, *pro hac vice*
Jenner & Block LLP
919 Third Avenue
New York, NY 10022-3908
Tel: (212) 891-1678
SKohlmann@jenner.com

LEONARD C BOYLE
ACTING U.S. ATTORNEY

_____

David C. Nelson, ct25640
Natalie N. Elicker, ct28458
Assistant United States Attorney
157 Church Street, 25th Floor
New Haven, CT 06510
Telephone: (203) 821-3700
Fax: (203) 773-5373
Email: David.C.Nelson@usdoj.gov
Email: Natalie.Elicker@usdoj.gov

*Robt. D. Hogue*

Robert D. Hogue
Assistant Secretary of the Navy
(Manpower and Reserve Affairs)
Acting