UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYSON MANKER, on behalf of himself and all others similarly situated, and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS, on behalf of itself, its members, and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>CARLOS DEL TORO, Secretary of the Navy,<br><br>　　　　　　　Defendant. | Civil Action No.<br>3:18-CV-372 (CSH)<br><br><br><br>**FEBRUARY 15, 2022** |

### RULING AND ORDER APPROVING CLASS ACTION SETTLEMENT

**HAIGHT, Senior District Judge:**

This is a nation-wide certified class action on behalf of certain U.S. Navy and Marine Corps veterans against the Defendant Secretary of the Navy. The class complaint was filed on March 2, 2018 [Doc. 1]. The parties now move jointly [Doc. 217] for the Court to give final approval to a proposed settlement [Doc. 211-2] . The motion falls under Federal Rule of Civil Procedure 23(e), which provides that the claims of a certified class "may be settled, voluntarily dismissed, or compromised only with the court's approval."

In a prior Preliminary Ruling on Proposed Settlement and Class Notice [Doc. 215], together with a Supplemental Order [Doc. 216], both filed on October 12, 2021, the Court gave preliminary approval to the proposed settlement of this action, directed the manner of notifying class members about the settlement, and scheduled a fairness hearing concerning it. Notice to class members in

1

conformity with the Court's order was given. A fairness hearing was held on December 16, 2021. The parties now move jointly for final Court approval of the proposed settlement.

For the reasons that follow, the Court grants final approval of the comprehensive settlement proposed by the parties in this important and sensitive case.

## I. Background and Procedural History

Familiarity is assumed with the Court's simultaneous Preliminary Ruling [Doc. 215] and Supplemental Order [Doc. 216], which granted preliminary approval of the proposed settlement and issued directions for notification of class members. This Ruling reiterates certain aspects of the case's background and procedural history.

The Plaintiffs in the action are Tyson Manker and the National Veterans Council for Legal Redress ("NVCLR"). Manker is a Marine Corps veteran who developed mental health conditions during his military service and then received a less-than-Honorable discharge because of incidents related to those conditions. The same circumstances are presented by an individual referred to as "John Doe," who is a member of NVCLR, a non-profit organization that assists veterans with less-than-Honorable discharges and educates the public about veterans' issues.

Manker and Doe applied to the Naval Discharge Review Board ("NDRB") to upgrade their less-than-Honorable discharges to Honorable. The NDRB denied those applications. Manker and NVCLR on Doe's behalf contend in this action that this adverse decision by the NDRB violated the Administrative Procedure Act, 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment.

Manker and the NVCLR purported to act on behalf of a designated group of Navy and Marine Corps veterans. In an opinion reported at 329 F.R.D. 110 (D. Conn. 2018), familiarity with which is also assumed, the Court granted those Plaintiffs' motion for class certification, and certified

the following class:

> Veterans who served during the Iraq and Afghanistan Era—defined as the period between October 7, 2001, and the present—who:
>
> (a) were discharged from the Navy, Navy Reserves, Marine Corps, or Marine Corps Reserve with less-than-Honorable statuses, including General and Other-than-Honorable discharges but excluding Bad Conduct or Dishonorable discharges;
>
> (b) have not received upgrades of their discharge statuses to Honorable from the NDRB; and
>
> (c) have diagnoses of PTSD, TBI, or other related mental health conditions, or records documenting one or more symptoms of PTSD, TBI, or other related mental health conditions at the time of discharge, attributable to their military service under the Hagel Memo standards of liberal or special consideration.

*Manker v. Spencer*, 329 F.R.D. 110, 123 (D. Conn. 2018)

The Court's order designated Manker and the NVCLR as representatives of that certified class. Class counsel were identified as the Yale Law School's Veterans Legal Services Clinic, and the firm of Jenner & Block LLP.[1] The Yale Law School clinic, whose participants are current students, is directed by Michael J. Wishnie, a practitioner and Law School faculty member. Partners from the Jenner & Block firm have appeared at hearings in the case, together with Mr. Wishnie and law student interns from the clinic.

In the delineation of the Plaintiff class, "PTSD" refers to that body of symptoms collectively

---

[1] The Yale Law School Veterans Legal Services Clinic is one of eight clinics operated by Yale's "Jerome N. Frank Legal Services Organization (LSO)," which "provides legal representation to individuals and organizations in need of legal services but unable to afford private attorneys." https://law.yale.edu/studying-law-yale/clinical-and-experiential-learning/jerome-n-frank-legal-services-organization-lso.

described as post traumatic stress disorder. "TBI" refers to traumatic brain injury. "The Hagel Memo" refers to a memorandum issued in 2014 by then Secretary of Defense Charles Hagel which instructed all military review boards (including the NDRB) to give "liberal consideration" to applications for discharge reviews which indicated that PTSD or PTSD-related mental health conditions might have been "potential mitigating factors" for the misconduct that resulted in a less-than-Honorable discharge.

Plaintiffs rely on the Hagel Memo as supportive of their claim. They also rely on a subsequent memorandum issued in 2017 by Anthony M. Kurta, then-Acting Under Secretary of Defense, which stated, "Liberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions," and specifies certain conditions to be considered in implementing that principle ("the Kurta Factors"). In addition, Plaintiffs rely on a codification of these policies by Congress in 10 U.S.C. § 1553 (captioned "Review of discharge or dismissal").

The gravamen of the Plaintiff Class's complaint is that when the NDRB came to consider applications by class members for upgrades of less-than-Honorable discharges, the Board disregarded the Hagel Memo's enlightened instruction, the Kurta Factors, and the statute, and continued its prior deplorable practice of rejecting upgrades at so high a percentage that it violated the Administrative Procedure Act and the Fifth Amendment. The Complaint prays for injunctive relief.

The Defendant Secretary of the Navy denies that the NDRB's conduct has been wrongful in any way. The defense is conducted by the United States Attorney for this District and by legal officers from the Department of the Navy.

Following joinder of issues on the pleadings, the parties began to engage in extended discovery. The Court assigned the case to Magistrate Judge Robert M. Spector, who first supervised discovery. In January 2020 and thereafter, at the request of the parties and their attorneys, Judge Spector assisted them in negotiations for a possible settlement. Those efforts succeeded, and produced the joint settlement proposal which the Court preliminarily approved in the October 12, 2021, Ruling and Order, Doc. 215 and Doc. 216. Following the giving of notice of the proposed settlement and a fairness hearing, the parties now move jointly for final approval of the settlement [Doc. 217]. The question presented is whether the Court should grant final approval to the settlement.

## II. Standards of Review on Approval of Settlement

In the companion case of *Kennedy v. Whitley*, 539 F. Supp.3d 261 (D. Conn. 2021), I considered in depth the standards of review for a motion for court approval of the settlement of a class action.

I characterize *Kennedy* as a "companion case" to the case at bar because the issues and their proposed resolutions are essentially identical. Both are class actions. The class members in this case are Navy and Marine Corps veterans. In *Kennedy* they are U.S. Army veterans. Both groups served during the same period of time (between October 7, 2001, and the present), received less-than-Honorable discharges, and complain that the service review board involved improperly disregarded the upgrade applicants' service-related mental health conditions.

The class allegations in *Kennedy* are the same as those in this case. C*ompare Kennedy*, 539 F. Supp.3d at 263-64 (Army veterans) *with Manker*, 329 F.R.D. at 123 (Navy and Marine Corps veterans). It is not surprising that the plaintiffs' pleadings in these two cases are cast in the same

terms: the Yale Law School clinic directed by Mr. Wishnie and the Jenner & Block firm are the designated class counsel in both.

Moreover, as in *Kennedy*, Magistrate Judge Spector in this case conducted prolonged settlement negotiations which ultimately produced a proposed settlement, whose principal terms mirror those arrived at in the *Kennedy* settlement.

In these circumstances, this Ruling adopts the description in *Kennedy* of the standards of review, and does not restate them in full. It is sufficient for present purposes to recite again the Second Circuit's rule that "[a] court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion," a judicial function informed by "the strong judicial policy in favor of settlements, particularly in the class action context," where "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) (citations and internal quotation marks omitted).

To determine whether a proposed settlement of a class action is "fair, adequate and reasonable," a district court applies recognized criteria. The leading and oft-cited Second Circuit decision is *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974),[2] which specifies the factors a district court should assess in evaluating whether a class action settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

---

[2] *Abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

>establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted). *Wal-Mart*, one of an unbroken line of Second Circuit cases applying these criteria, refers to them as "the *Grinnell* factors," 396 F.3d at 117.

One must also consider amendments made in 2018 to Rule 23, Fed. R. Civ. P. Prior to that time, Rule 23 required in general terms that a district court find a proposed class action settlement to be "fair, reasonable and adequate," but was silent on the factors the court should assess in making that evaluation. Rule 23 was amended on December 1, 2018, "mainly to address issues related to settlement." Fed. R. Civ. P. 23 advisory committee's notes (2018 amendment).

The Advisory Committee's Notes acknowledge that "each circuit has developed its own vocabulary for expressing those concerns." Fed. R. Civ. P. 23(e)(2) advisory committee notes (2018 amendment). The Notes continue: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* The amendments address *procedural* concerns in Rule 23(e)(2)(A), requiring the court to consider whether the class representatives and class counsel have adequately represented the class, and in Rule 23(e)(2)(B), requiring consideration of whether the proposal was negotiated at arm's length. *Substantive* concerns are addressed by Rule 23(e)(2)(C), which considers whether the relief provided to the class is adequate, and by Rule 23(e)(2)(D), which asks whether the proposal treats class members equitably relative to one another.

7

In determining whether the proposed settlement of the case at bar should be finally approved, I will consider the *Grinnell* factors and the effect of the 2018 Rule 23 amendments.

### III.   The Proposed Settlement

The certified Plaintiff class is composed of Navy and Marine Corps veterans of the Iraq and Afghanistan era – the period between October 7, 2001, to the present – who developed mental health conditions during their military service, and thereafter received less-than-Honorable discharges because, Plaintiffs allege, of troublesome incidents related to those conditions.

The Settlement Agreement [Doc. 211-2] provides benefits for individuals who received less-than-Honorable discharges, applied to the NDRB for upgrades to Honorable, and the NDRB denied the applications. It also provides benefits for individuals who received a less-than-Honorable discharge, but have not yet, for whatever reason, applied for an upgrade. For those veterans whose previous applications to the NDRB for an upgrade were denied, the relief granted by the Settlement Agreement is *retroactive.* For those veterans who have not previously applied for an upgrade of their discharge from less-than-Honorable, the relief granted by the Settlement Agreement is *prospective*.

The Settlement Agreement divides veterans whose discharge upgrade applications were denied by the NDRB into two groups. Group A includes veterans whose adverse decisions were issued on or after March 2, 2012, until the effective date of the settlement. Doc. 22-1, § IV.A.1. Group B includes veterans whose adverse decisions were issued between October 7, 2001 (the beginning of the class period), and March 1, 2012. *Id.* § IV.B.1. The distinction reflects the six-year statute of limitations for filing claims under the Administrative Procedure Act, the class Complaint having been filed on March 2, 2018.

As for retroactive relief, the Settlement Agreement provides in Section IV.A. that for adverse

8

decisions received by veterans in Group A, the NDRB will *automatically* review the discharge applications, to ensure that their denial properly applied the standard of lenity articulated by the cited administrative and statutory declarations. Veterans within this group need take no action, although they may submit supplemental evidence if they wish. The Navy gives veterans in this group written notice of the NDRB's reconsideration and the veterans' rights with respect to the process.

The Settlement Agreement provides in Section IV.B. that for adverse decisions received by veterans in Group B, the veterans in question will be notified that they may *reapply* to the NDRB, or to the Board of Correction of Naval Records if an individual's discharge date is beyond the NDRB's 15-year statute of limitations, for reconsideration of their case, submitting supplemental evidence if desired.

In addition to these forms of retroactive relief, the Settlement Agreement also provides "prospective relief to all future NDRB applicants, including, but not limited to, class members." Doc. 217-1 ("Plaintiffs' Memorandum"), at 15. This relief is set forth in Sections IV.D.-IV.I. of the Agreement. With respect to all discharge upgrade applications submitted to the NDRB after the effective date of the Settlement Agreement, these sections provide a number of commitments by the Navy Department to improve or reform the manner in which applications are received, considered and processed. Specifically, in each adverse decision the NDRB issues, the effect of the "Kurta Factors" must be discussed and the denial of an upgrade explained, Section IV.D.; the NDRB must create a video-teleconference personal appearance program that will increase access for veterans to appear before the NDRB, Section IV.E.; the Navy must develop an online submission and tracking portal for NDRB applications which will make the discharge upgrade application more convenient and transparent, Section IV.F.; the Navy must conduct annual training for NDRB members which

*inter alia* focuses on cases that reference or suggest behavioral health conditions, such as PTSD and TBI, Section IV.G.; and the Navy must give all future applicants improved notice regarding legal and medical services available to them, and notice of their right to provide additional medical evidence in support of their applications, Sections IV.H. and IV.I.

### IV. Notice of Settlement Given to Class Members

Rule 23(e)(1)(B) provides that with respect to proposed settlements of class actions, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B).

I assume without deciding that the class members in the case at bar fall within that category. Accordingly, the need arises for giving notice of the proposed settlement to class members. That function is challenging because the certified class of Navy and Marine Corps veterans is nation-wide and numerous. While the record does not allow the number of class members to be stated with precision, an earlier brief for Plaintiffs stated that "*thousands* of class members will have the opportunity to ensure that the NDRB reconsiders their applications while applying the correct legal standard." Doc. 211-1, at 10 (emphasis added). It is fair to conclude that the Plaintiff Class consists of a number of thousands of Navy and Marine Corps veterans.

Mr. Wishnie's affidavit [Doc. 217-2] describes in detail the extensive and encyclopedic efforts expended by Class Counsel to inform class members about the Settlement Agreement. The Agreement itself obligated Class Counsel and the Defendant to post the Class Notice of Settlement on their class websites, issue a joint press release describing the Notice, and provide links to the websites. In addition, the Court's Preliminary Ruling on the Proposed Settlement and Class Notice directed Class Counsel to "engage with traditional and social media, request elected officials to share

the class notice with colleagues and constituents, and distribute the notice and settlement to veterans' organizations, legal services providers, and advocates across the country." Doc. 215, at 6-7.

Obedient to that direction, Class Counsel contacted 29 different veterans' service organizations, and 38 different legal or social service providers or provider networks that work with veterans (public agencies, non-profit organizations, and legal service clinics). Doc. 217-2 ("Wishnie Affidavit"), ¶¶ 5, 13. Class Counsel gave each of these entities notice of the proposed settlement, and asked that they "provide notice to their members and Class Members they serve." *Id.* ¶ 13. These overtures produced numerous responses, which Wishnie describes in summary. Class Counsel fulfilled interview requests with several media outlets, including two National Public Radio affiliates in Connecticut and a public radio and television broadcaster in San Diego. *Id.* ¶ 28. Class Counsel also sent a joint press release to over 180 reporters, and "conducted targeted outreach to over 45 national, regional, and military reporters" who had previously covered this action, the *Kennedy* action, or veterans' issues. *Id.* ¶ 26. Class Counsel published further notices through its Twitter and Facebook accounts, and worked to secure the distribution of a "Dear Colleague Letter" from a designated Member of Congress and a Senator "to over 480 U.S. Representatives and U.S. Senators to inform their veteran constituents of the Class Notice, Settlement Agreement, Settlement Website, and fairness hearing, including their opportunity to submit written comments." *Id.* ¶¶ 32-36. Class Counsel also retained JND Legal Administration, a settlement administrator, which "established and maintained email and telephone services that responded to inquires about the proposed settlement." *Id.* ¶ 38. JND Legal Administration had occasion to respond "to 31 email inquiries and 18 phone calls about the proposed settlement." *Id.* ¶¶ 38-39.

I conclude without difficulty that Class Counsel complied with Rule 23(e)(1)(B) by giving

adequate notice of the proposed settlement to Class Members. It is well-established, as the wording of the Rule itself indicates, that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness," a standard requiring that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores,* 396 F.3d at 113-14 (citations and internal quotation marks omitted). In *Handschu v. Special Services Division*, 787 F.2d 828 (2d Cir. 1986), the Second Circuit, holding that the notice given of a proposed class action was adequate, said:

> Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, and must express no opinion on the merits of the settlement. Subject to these requirements, however, the district court has virtually complete discretion as to the manner of giving notice to class members.

787 F.2d at 832-33 (citations and internal quotation marks omitted).

In view of the breadth of the district court's discretion, notice of a proposed settlement may be reasonable although it is not given directly to every class member. Representative notification will suffice. In *McReynolds v. Richards Cantave*, 588 F.3d 790, 797 (2d Cir. 2009), the Second Circuit approved the giving of notice which included publication of a notice in three newspapers, posting in government field offices, provision to executive directors of foster care agencies, and distribution to all child welfare groups known to plaintiff's counsel. In *Handschu*, a class action against the New York City Police Department for wrongful surveillance of political activity, the Second Circuit regarded notices published in several metropolitan newspapers over several weeks as constituting adequate notice of a potential settlement to class members. 787 F.2d at 833.

In the case at bar, Class Counsel sensibly chose not to purport to give notice of the settlement

to a nation-wide class of veterans by printing a notification in local newspapers. But it is difficult to imagine what further steps Counsel could have taken in addition to the varied and imaginative efforts Wishnie describes in his affidavit. It is possible to imagine, one supposes, a fleet of aircraft overflying the nation while towing informative signs, but the Rule requires only that notice to the class be "reasonably calculated, under all the circumstances," *Handschu*, 787 F.2d at 832; and the notice Class Counsel undertook to give in this case exceeds in effort, imagination and scope the notice the Second Circuit regarded as sufficient in cases like *McReynolds* and *Handschu*.

The notice of settlement given by Class Counsel to Class Members was adequate and in compliance with the Rule.

### V. Final Approval of the Settlement

The remaining question is whether the Court should grant final approval to the proposed settlement of this class action. Under the governing law discussed in Part II, that approval must be granted if the settlement is fair, adequate and reasonable in the circumstances of the case.

Preliminarily, I note that the fairness hearing produced no objections to the settlement on behalf of any class member. That is a significant silence, given the broad reach of Class Counsel's notice to class members about the settlement provisions. Objections to a class action settlement do not necessarily foreclose court approval. For example, in *Handschu,* where a number of class members vigorously opposed the settlement, the Second Circuit affirmed the district court's conclusion that it was nonetheless fair, adequate and reasonable. However, the second *Grinnell* factor is "the reaction of the class to the settlement," *Grinnell*, 495 F.2d at 463; and it is notable that the fairness hearing did not produce any expression of dissatisfaction with the benefits conferred by the settlement upon the affected veterans.

13

That endorsement *sub silentio* is not surprising, since the proposed settlement is manifestly fair, adequate and reasonable. I need not extend this discussion because the salutary aspects of the settlement of this class action involving Navy and Marine Corps veterans are precisely the same as those which led the Court to approve the settlement of the Army veterans' class action in *Kennedy*, 539 F. Supp. 3d 261, negotiated by the same Class Counsel. Just as in *Kennedy*, able and experienced attorneys for the Class and for the service department involved came together, with manifest good will, and, under the guidance of a gifted Magistrate Judge, arrived at a settlement which confers a fundamental reform and substantial benefits in favor of veterans, while avoiding the risks, delays and expense inherent in complex litigation.

The Court regards the proposed settlement of this case as an impressive example of the manner in which a class action can be made the vehicle for doing substantial justice and advancing the rule of law. The settlement satisfies the *Grinnell* factors and the recently amended provisions of Rule 23. I conclude that the proposed settlement is fair, adequate and reasonable, and should receive the final approval of this Court.

## VI. Conclusion

For the foregoing reasons, the Court makes this Order:

1. The Joint Application of the Plaintiffs and the Defendant [Doc. 217] for Final Approval by the Court of the Parties' Settlement Agreement [Doc. 211-2] is GRANTED.

2. The provisions of the Settlement Agreement are hereby incorporated into and designated as part of this ORDER OF THE COURT.

3. The Clerk of the Court is directed to discontinue the action and close the file, without costs, except as provided in the Settlement Agreement.

4. The Court retains jurisdiction over this discontinued action, in the event disputes arise over the implementation of the Settlement Agreement.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 15, 2022

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge
